No. 03-2869C
(Judge Lettow)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SOUTHERN CALIFORNIA EDISON,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARTIN F. HOCKEY, JR.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 307-6288

Attorneys for Defendant

OF COUNSEL:

JON D. WRIGHT
Office Of The General Counsel
Bonneville Power Admin.
905 N.E. 11th Avenue
Portland, OR 97208

November 29, 2004

**<u>TABLE OF CONTENTS</u>**

DEFENDANT'S BRIEF .......................................... 1

I. Nature Of The Case .................................. 1

II. Issue Presented ..................................... 2

STATEMENT OF FACTS ......................................... 3

I. Statutory Requirements: Surplus Power Sales And Rates ............................................ 3

II. Ninth Circuit Review Of Bonneville Final Actions .... 6

III. The SCE Contract And Bonneville's Rate Adjustments .. 8

IV. Procedural History .................................. 14

SUMMARY OF ARGUMENT ........................................ 18

ARGUMENT ................................................... 20

I. City Of Burbank Requires Dismissal Of The Complaint 20

A. SCE's Contract Contains A "Rate" And SCE Is A Rate-Payer As Defined By <u>City Of Burbank</u> .... 21

B. BPA's Application Of The FPS-96R To SCE's Contract Is An "Implementation" Of That Rate ........... 22

II. <u>City Of Burbank's</u> Emphasis On The Existence Of An Administrative Record Has Been Called Into Question 24

III. The Court Must Look To The Nature Of The Conduct Challenged To Determine Jurisdiction ....... 27

A. The "True Nature" of the Conduct Governs ...... 28

B. The True Nature Of SCE's Complaint Challenges The Development And Implementation Of A Rate .. 29

IV. Transfer Does Not Confer Jurisdiction In This Court 34

**TABLE OF CONTENTS**
**-continued-**

V. Bonneville Has Not Made Inconsistent Jurisdictional Arguments Or Acquiesced To Jurisdiction In This Court .................................... 35

CONCLUSION ............................................. 39

## TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

A & S Council Oil Co., Inc. v. United States,
16 Cl. Ct. 743, 749 (1989) .............................. 35

Aluminum Co. of America v. Bonneville Power Administration,
903 F.2d 585 (9th Cir. 1989) ............................ 3

Association of Public Agency Customers, et al. v. Bonneville Power Administration,
126 F.3d 1158 (9th Cir.1997) ............................ 5

Atlantic Richfield Co. v. Bonneville Power Administration,
818 F.2d 701 (9th Cir. 1987) ....................... 32, 33

CP National Corp. v. Jura,
876 F.2d 745 (9th Cir. 1989) ....................... 28, 31

Central Lincoln Peoples' Utility District v. Johnson,
735 F.2d 1101 (9th Cir. 1984) ......................... 27

City of Burbank v. United States,
273 F.3d 1370 (Fed. Cir. 2001) .................... passim

City of Seattle v. Johnson,
813 F.2d 1364 (9th Cir.1987) ...................... passim

Clark County. Transmission Agency of Northern California v. Sierra Pacific Power Co.,
295 F.3d 918 (9th Cir. 2003) ....................... 25, 26

Clark v. Busey,
959 F.2d 808 (9th Cir. 1992) ........................... 35

Confederated Tribes Of The Umatilla Indian Reservation v. Bonneville Power Administration,
342 F.3d 924 (9th Cir. 2003) ............................ 6

F. Alderete General Contractors, Inc. v. United States,
715 F.2d 1476 (Fed. Cir. 1983) ........................ 36

Forelaws on Board v. Johnson,
709 F.2d 1310 (9th Cir. 1983) ......................... 29

**TABLE OF AUTHORITIES**
**-continued-**


**Federal Cases** **Page(s)**

Kaiser Aluminum & Chemical Corp. v. Bonneville Power Admin., 261 F.3d 843 (9th Cir. 2001) ............................ 4

Pacific Power & Light v. Bonneville Power Admin., 795 F.2d 810 (9th. Cir. 1985) ...................... 28, 29

Public Utility District No. 1 of Clark County v. Johnson, 855 F.2d 647 (9th Cir. 1988) ................... 17, 25, 34

Puget Sound Energy, Inc., v. United States, 310 F.3d 613 (9th Cir. 2002) .................... 7, 26, 39

Puget Sound Energy, Inc. v. United States, 47 Fed. Cl. 506 (2000) .......................... 2, 26, 29

Southern California Edison v. United States, 58 Fed. Cl. 313 (2003) ................................ 20

Transmission Agency of Northern California v. Sierra Pacific Power Co., 295 F.3d 918, 927 (9th Cir. 2003) ........ 25, 26

**Federal Statutes** **Page(s)**

16 U.S.C. § 832 ........................................... 3, 7

16 U.S.C. § 837 ............................................. 7

16 U.S.C. § 838 ............................................. 3

16 U.S.C. § 839 .................................... passim

28 U.S.C. § 1631 .......................................... 17

**Miscellaneous**

54 F.E.R.C. ¶61,143 ..................................... 9

54 F.E.R.C. ¶61,235 ..................................... 9

**TABLE OF AUTHORITIES**
**-continued-**

**Miscellaneous** **Page(s)**

58 F.E.R.C. ¶62,101 .......................................... 9

67 F.E.R.C. ¶61,351 .......................................... 9

80 F.E.R.C. ¶61,118 ................................... 2, 9, 10

**INDEX TO APPENDIX**

**Description** **Page(s)**

Excerpt Bonneville Power Administration ("Bonneville") 1996 Final Rate Proposal, Administrators Record of Decision, Part 2, dated June 1996 .................. 1-13

Excerpt Bonneville 1996 Wholesale Power and Transmission Rates, Appendix, dated June 1996 ........ 14-21

Final Firm Power Products and Services Rate Adjustment Proposal (FPS-96R), Administrators Record of Decision, dated March 15, 2000 .................................. 22-76

Excerpt 1996 Final Rate Proposal, Development Study, dated June 1996 ....................................... 77-79

Excerpt FPS-96 Rate Schedule .............................. 80-87

Bonneville letter to Southern California Edison ("SCE"), dated February 12, 1999 .............................. 88-92

Excerpt SCE Brief re BPA Docket FPS-96R, dated December 2, 1999 ............................... 93-96

Excerpt SCE Brief of Exceptions re BPA Docket FPS-96R, dated January 10, 2000 .............................. 97-100

SCE Petition for Review before the United States Court of Appeals for the Ninth Circuit, file June 16, 2000 ................................. 101-103

SCE Response to BPA Motion to Dismiss, dated August 13, 2001 .............................. 104-113

Order of Court of Appeals, dated October 16, 2001 ................................ 114

SCE Motion for Clarification, dated December 19, 2001 ............................ 115-131

Bonneville Motion to Dismiss and Response to Motion for Clarification, dated January 22, 2002 .......... 132-144

**INDEX TO APPENDIX**
**-continued-**

**Description** **Page(s)**

Bonneville Reply to SCE Response,
dated February 8, 2002 .............................. 145-148

SCE Reply and Correction of Misstatement,
dated February 14, 2002 ............................ 149-153

Bonneville letter to SCE,
dated January 24, 2003 .............................. 154-155

SCE Administrative Claim,
dated July 19, 2002 ................................ 156-167

Bonneville Motion to Strike re BPA Docket FPS-96R,
dated November 2, 1999 .............................. 168-173

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SOUTHERN CALIFORNIA EDISON, )
)
Plaintiffs, )
)
v. ) No. 03-2869C
) (Judge Lettow)
THE UNITED STATES, )
)
Defendant. )

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant respectfully requests that this Court dismiss the complaint for lack of subject matter jurisdiction. Southern California Edison ("SCE") seeks review of the development and implementation of a rate established by Bonneville Power Administration ("Bonneville") pursuant to § 7(i) of the Pacific Northwest Electric Power Planning and Conservation Act ("Northwest Power Act"). 16 U.S.C. § 839e(i). The Northwest Power Act vests the United States Court of Appeals for the Ninth Circuit with original and exclusive jurisdiction to review such actions. 16 U.S.C. § 839f(e)(5). City of Burbank v. United States, 273 F.3d 1370 (Fed. Cir. 2001).

DEFENDANT'S BRIEF

I. Nature Of The Case

SCE is a public electric utility organized and existing under the laws of the State of California. In 1988, SCE entered into a contract with Bonneville pursuant to which Bonneville

agreed to sell or exchange power to SCE. The contract includes an option for additional capacity during the summer months ("Option Capacity"). The rate for this Option Capacity is the core of this dispute.

In 1997, the Federal Energy Regulatory Commission ("FERC") approved Bonneville's 1996 rate adjustment proposal. 80 FERC ¶ 61,118, 1997 WL 465613. However, Bonneville's 1996 rate submission neglected to incorporate "seasonally and diurnally adjusted rates for the capacity without energy product," 65 Fed. Reg. 33529, which was a rate that could potentially effect SCE's contract. Accordingly, in 2000, Bonneville supplemented its earlier proposed rate package to incorporate these rates, which had an effect upon the pricing of Bonneville's contract with SCE when SCE requested capacity. SCE now challenges this rate adjustment, alleging that the adjustment is actually a contract breach. However, the true nature of the claim is to challenge a Bonneville final action taken pursuant to statutory authority. See Puget Sound Energy, Inc. v. United States, 47 Fed. Cl. 506, 510 (2000) (holding in favor of Ninth Circuit jurisdiction and noting six of seven relevant cases so holding).

## II. Issue Presented

Whether this Court possesses jurisdiction to consider SCE's challenge to Bonneville's 2000 rate adjustment.

STATEMENT OF FACTS

I. Statutory Requirements: Surplus Power Sales And Rates

Bonneville Power Administration is a Federal power marketing agency created in 1937 to market electric power generated by the Federal Columbia River Power System. 16 U.S.C. §§ 832-832m; §838f. Bonneville's operations are supported solely through revenues derived from its own activities, primarily the sale of various power and transmission products. 16 U.S.C § 838i; Aluminum Co. of Am. v. Bonneville Power Administration, 903 F.2d 585, 588 (9th Cir. 1989). Bonneville is required to set rates for its products and services according to standards set forth in various statutes. See Northwest Power Act § 7 16 U.S.C. 839e; Federal Columbia River Transmission System Act, §§ 9-10, 16 U.S.C. 838g-h.

Bonneville is required to sell power and transmission services under written contracts, 832 U.S.C. §832d(a), at rates established by Bonneville and approved by the Federal Energy Regulatory Commission ("Commission"). 16 U.S.C. §§ 832e, 838g and h, 839e(a). Since enactment of the Northwest Power Act of 1980, all rates for the sale and transmission of power must be established through a formal administrative process known as a section 7(i) hearing. Id. at §839e(i).

Bonneville is obligated to serve, under contract, the power

requirements of utilities in the Pacific Northwest,[1] including public bodies and cooperatives, and investor-owned utilities. 16 U.S.C. § 839c(b). Bonneville is also authorized, but not required, to serve a limited portion of the power needs of a small number of direct-service industrial customers in the Pacific Northwest. 16 U.S.C. § 839c(d)(1)(A). Power in excess of Bonneville's Pacific Northwest contractual obligations is considered "surplus" and is available for sale outside the region:

> The Administrator is authorized to sell, or otherwise dispose of, electric power ... that is surplus to his obligations incurred pursuant to subsections (b), (c), and (d) of this section in accordance with this and other Acts applicable to the Administrator...

16 U.S.C. § 839c(f); Kaiser Aluminum & Chemical Corp. v. Bonneville Power Admin., 261 F.3d 843, 851 (9th Cir. 2001) (Kaiser). All Bonneville power sales, including sales of surplus power, are required to conform to preference and priority provisions specified in governing statutes and such sales must be "at rates established pursuant to section 839e [i.e., § 7(i)] of this title [the Northwest Power Act]." 16 U.S.C. § 839c(a).[2]

---

[1] The "Pacific Northwest region" is defined by statute, and does not include the geographic area served by SCE. 16 U.S.C. § 839a(14).

[2] Since 1986, Bonneville has administratively defined "rate" as meaning "the monetary charge, discount, credit, surcharge,

SCE is an extra-regional purchaser and may purchase only surplus Federal power, and such purchases must be at a rate established for such sales. 16 U.S.C. § 839e(f).

> Because Bonneville is a self-financed agency, the statutory scheme governing Bonneville's rate-making requires that Bonneville set its rates to recover the costs of doing business: [R]ates for the sale and disposition of electric energy and capacity . . . shall be established and, as appropriate, revised to recover . . . the cost associated with the acquisition, conservation, and transmission of electric power, including the amortization of the Federal investment in the Federal Columbia River Power System . . . .

16 U.S.C. 839e(a)(1) (emphasis added). Once proposed rates have been subjected to the hearing process prescribed under § 7(i) of the Northwest Power Act, the Bonneville Administrator issues a final Record of Decision. See 16 U.S.C. §§ 839e(i)(1)-(6).

---

pricing formula, or pricing algorithm for any electric power or transmission service provided by [Bonneville], including charges for capacity and energy. . . . A rate may be set forth in a contract[.]" See "Procedures Governing Bonneville Power Administration; Rate Hearings" § 1010.2(j), 51 Fed. Reg. 7611, 7615 (Mar. 5, 1986). See also Association of Public Agency Customers, et al. v. Bonneville Power Administration, 126 F.3d 1158, 1177 (9th Cir.1997)("BPA thus defines a 'rate' as a monetary charge for the sale of electric power . . . This is a reasonable interpretation, and the plain language of the Northwest Power Act supports it."); City of Seattle v. Johnson, 813 F.2d 1364, 1367 (9th Cir.1987)("Rates are simply the charges BPA imposes on its customers for the provision of service. Rates for service may be structured in many ways besides a single unchanging amount for each kilowatt-hour of supplied energy. . . . ")

Thereafter, FERC reviews Bonneville's rates. See 16 U.S.C. § 839e(a)(2). Except for interim approval, as provided for at 16 U.S.C. 839e(i)(6), Bonneville's power rates are effective only upon confirmation and approval by FERC, based on a finding that the rates:

1. are sufficient to assure repayment of the Federal investment in the Federal Columbia River Power System over a reasonable number of years after first meeting the Administrator's other costs,

2. are based upon the Administrator's total system costs, and

3. insofar as transmission rates are concerned equitably allocate the costs of the Federal transmission system between Federal and nonfederal power utilizing such system.

16 U.S.C. § 839e(a)(2)(B). After FERC grants final confirmation and approval, rates are subject to judicial review in the Ninth Circuit.

## II. Ninth Circuit Review Of Bonneville Final Actions

The Northwest Power Act defines a final rate determination as a "final action" subject to judicial review. See 16 U.S.C. 839f(e)(1); 839f(e)(1)(G). Petitions to review such final actions may be filed only in "the United States court of appeals for the region," i.e., the Ninth Circuit, and they must be "filed within ninety days of the time such action or decision is deemed final or be barred." 16 U.S.C. 839f(e)(5); Confederated Tribes

Of The Umatilla Indian Reservation v. Bonneville Power Administration, 342 F.3d 924, 929 (9th Cir. 2003).

When reviewing Bonneville final actions, the Ninth Circuit is obligated to hear claims related to the application of any of the legal standards imposed by the various statutes governing Bonneville's actions, including the Northwest Power Act (16 U.S.C. § 839 et seq.), the Bonneville Project Act (16 U.S.C. 832 et seq.), the Act of August 31, 1964 (16 U.S.C. 837-837h), the Federal Columbia River Transmission (16 U.S.C. 838 et seq.), and the Pacific Northwest Consumer Preference Act (16 U.S.C. 837 et seq.). In addition to applying a broad spectrum of legal standards, the Ninth Circuit has been given original jurisdiction to review an expansive range of actions. The Ninth Circuit reviews all "final actions" as defined at 16 U.S.C. 839f(e), which provides a non-exclusive list of actions that are deemed to be "final actions." See 16 U.S.C. §§ 839f(e)(1)-(5). Included in this list, as noted above, are "final rate determinations." 16 U.S.C. § 839f(e)(1)(G). Also included are "sales, exchanges and purchases of electric power under [16 U.S.C. 839c]," which encompass the Sale and Exchange Agreement SCE relies upon to bring the instant claim. Id., § 839e(1)(B). Moreover, the Ninth Circuit's jurisdiction extends to the "implementation of such final actions." 16 U.S.C. § 839f(e)(5); Puget Sound Energy,

Inc., v. United States, 310 F.3d 613, 617 (9th Cir. 2002).

III. The SCE Contract And Bonneville's Rate Adjustments

On October 18, 1988, BPA and SCE signed a Sale and Exchange Agreement ("Agreement") that provides an option for SCE to purchase electric peaking capacity.[3] Agreement at § 12 (attached to the complaint). The Agreement specifies the rate for capacity as follows:

> Edison shall pay for Option Capacity at the demand charge associated with the contract rate of Bonneville's SP-87 rate schedule or if the SP-87 rate schedule is no longer in effect, a successor rate schedule.

Agreement at § 12(a)(4) (emphasis added). The demand charge in the SP-87 rate schedule was a rate approved by FERC under the standards cited above, including the requirement that Bonneville recover its costs. 16 U.S.C. § 839e(a)(2)(B). Attached to the Agreement is Exhibit B, General Contract Provisions, which "shall be deemed to be a part of the contract body to which they are an exhibit." Agreement, General Contract Provisions (Exhibit B) at

[3] A sale of "capacity" differs from a power sale in terms of their basic components. A firm power sale is a transaction which requires the availability of generation capacity to produce the required energy and the provision of energy at designated times and points of delivery. A sale of firm capacity, however, requires the provider to stand ready with sufficient generation capacity to provide energy if the buyer calls upon the provider to do so. When called upon, the energy is provided at the contracted for time and place, but the energy itself is not purchased. Instead, the buyer typically returns an equivalent amount of energy to the provider, generally within 24 hours.

§ 2(a). The General Contract Provisions state further:

> To the extent the contract references Bonneville rates or rate schedules of general applicability for purposes of payment for electric power, capacity or energy made available, the following provisions apply:
>
> (1) Bonneville shall establish and periodically review and revise rates for the sale and disposition of electric power, capacity or energy sold pursuant to the terms of this contract. Such rates shall be established in accordance with applicable law.

Id. at § 3 (b)(1) (emphasis added).

While the initial rate for option capacity was the SP-87 contract demand charge, Bonneville subsequently developed several applicable successor rate schedules. The history of this ratemaking is summarized in the following table:

| Year Effective | Rate Schedule | Contract Rate demand charge | Contract Rate energy charge | FERC Final Approval Order |
|---|---|---|---|---|
| 1987 | SP-87 | $4.29/kW-mth | $24.3/kW/mth | 54 FERC ¶61,235 |
| 1989 | SP-89 | $4.29/kW-mth | $24.3/kW/mth | 54 FERC ¶61,143 |
| 1991 | SP-91 | $4.58/kW-mth | $24.3/kW/mth | 58 FERC ¶62,101 |
| 1993 | SP-93 | $5.15/kW-mth | $26.3/kW/mth | 67 FERC ¶61,351 |
| 1996 | FPS-96 | $0.87/kW-mth | $21.5/kW/mth | 80 FERC ¶61,118 |

The focus of the current dispute is the FPS-96 rate schedule, which had been developed as part of the 1996 rate proceeding. See App. 2[4] (1996 Final Rate Proposal, Administrator's Record of Decision (WP-96-A-02) § 11.7); App. 16 (1996 Wholesale Power and Transmission Rates at 61). Up until that time, SCE had not

[4] "App. __" refers to the appendix to this motion, consisting of relevant portions of the procedural history of this dispute.

exercised its option to purchase capacity from Bonneville, and SCE did not participate in the 1996 rate case. As a result, Bonneville inadvertently overlooked the need to design the FPS-96 contract demand charge in a manner that would recover the costs of providing option capacity to SCE under the Agreement. See generally, App. 30-31 (Final Firm Power Products and Services Rate Adjustment Proposal (FPS-96R), Administrator's Record of Decision).

Instead, for the ensuing rate period, Bonneville stated that the rate for capacity products would be negotiated at rates different from the demand and energy charges reflected in the FPS-96 rate schedule. App. 78-79 (1996 Final Rate Proposal, Wholesale Power Rate Development Study (WP-96-FS-BPA-05), § 4.7). Because all rates, including authorization for negotiated rates, are subject to review by FERC, the FPS-96 rate schedule established that "[d]emand and/or energy charges may be specified at a higher or lower average rate as mutually agreed by BPA and the Purchaser." App. 83 (FPS-96 Rate Schedule at § IIA, ¶1.2). Ultimately, the rate schedule, including the provisions authorizing negotiated rates, was approved by FERC and became effective on a final basis. See 80 FERC ¶ 61,118 (1997).

In 1999, SCE notified BPA that it intended to exercise the option and take delivery of the capacity product during the

upcoming delivery period. SCE also insisted that it was entitled to purchase the product at the demand charge posted in FPS-96 rate schedule ($0.87/kW-month). BPA responded by indicating that FPS-96 demand charge had not been developed to provide a cost-based rate for capacity, and no fixed rate for capacity had been posted elsewhere in the rate schedule. As Bonneville explained:

> Unlike in the FPS-96 [rate] schedule, the contract demand charge in SP-87, and for each of the three successor surplus power rate schedules up to FPS-96, was priced to provide the firm capacity without energy product Edison may purchase under section 12 as Option Capacity. Under these schedules, surplus firm power included: 1) firm energy; 2) firm energy with capacity; and 3) firm capacity without energy, and the demand charge in the contract rate was priced to reflect the value of capacity, with or without energy.
>
> . . . . [Under the FPS-96 rate schedule], [i]t was Bonneville's intent that the firm capacity without energy product would be sold at a negotiated price. This fact is demonstrated in Bonneville's 1996 Wholesale Power Rate Development Study (WPRDS). Section 4.7 of the WPRDS states:
>
> > . . . . Firm capacity without energy is also available under the FPS-96 rate schedule, at negotiated prices and terms that may vary from those in the PF and NR rate schedules.

App. 89. Bonneville also noted that, unless a mutually acceptable rate could be negotiated consistent with the provisions of the FPS-96 rate schedule, Bonneville would "use its ratemaking authorities . . . to rectify the error introduced in the FPS-96 schedule." App. 90. The parties were unable to negotiate an acceptable rate, so Bonneville finally agreed to

sell SCE the Option Capacity at the non-compensatory demand charge of $0.87/kW/month during the 1999 delivery period. Bonneville subsequently initiated a rate proceeding, docketed as the FPS-96R proceeding, to establish a posted rate for a capacity without energy product.

On August 13, 1999, Bonneville issued a Federal Register notice announcing its proposed Wholesale Power Rates Adjustment Proceeding, Docket No. FPS-96R (FPS-96R). See 64 Fed. Reg. 44361 (1999). In the Federal Register notice, Bonneville stated that the purpose and scope of the proceeding were limited to correcting an oversight that had arisen in the implementation of the FPS-96 rate schedule, which was a successor to prior Bonneville rates for surplus power (SP-93, SP-91, SP-89, and SP-86). Id. at 44363. Bonneville pointed out "that the $0.87/kW /month price does not, and did not at the time the rate schedule was developed, recover the costs to BPA associated with providing energy during high cost periods and taking energy back during lower cost periods." Id. Bonneville proposed to conduct an expedited rate proceeding that would revise the FPS-96 rate schedule "to post seasonally adjusted rates that may be used instead of negotiated rates." Id. Such rates were to be "available for those contracts in effect on or before October 1, 1996, that provide for capacity without energy to be priced at

the Contract Rate demand charge in the then applicable Surplus Firm Power rate schedule." Id.

As required by statute, a formal evidentiary hearing began on August 24, 1999, and was conducted in accordance with the procedures set forth in Section 7(i) of the Northwest Power Act. See 16 U.S.C. § 839e(i). These statutory procedures, as supplemented by Bonneville's administrative procedures, included the filing of written testimony and studies, cross-examination of witnesses, discovery, filing of briefs, release of a draft Record of Decision, and issuance of a final Record of Decision. Id. SCE participated in this rate proceeding through filing data requests, testimony and briefs. In its initial brief, SCE stated its challenge to BPA's rate development and implementation:

> The proposed rate is egregious, unfair, unreasonable, and is inconsistent with BPA's statutory obligations. BPA has departed from accepted rate making methodology to develop a rate based upon "market." By using this methodology, BPA has effectively priced SCE's option capacity above any reasonable measure. The rate is higher than the rate charged for similar products and over-recovers BPA's costs. BPA has failed to meet its statutory mandates to price the product at the lowest possible price consistent with sound business principles and in so doing, has discriminated against SCE.

App. 95-96 (Initial Brief of Southern California Edison (FPS-96R-B-SO-01) December 3, 1999). SCE raised many of the same

arguments in its Brief on Exceptions. See generally, App. 97-100 (Brief on Exceptions of Southern California Edison, (FPS-96R-R-SO-1)). On March 15, 2000, Bonneville issued its final Record of Decision ("ROD"), and filed the rate with FERC requesting interim approval and final confirmation and approval. App. 30-32. SCE intervened, protested BPA's filing, and once again raised numerous arguments regarding the methodologies and procedures used by Bonneville in developing the rate. On May 19, 2000, FERC granted interim approval of the rate subject to refund. See 65 Fed. Reg. 33529 (May 24, 2000).

IV. Procedural History

On June 16, 2000, SCE filed a petition in the United States Court of Appeals for the Ninth Circuit (No. 00-70720), challenging the FPS-96R Record of Decision and application of the rate to its contract. App. 101-103 (SCE's Petition for Review). The timing of the petition was predicated upon FERC's interim approval of the rate. Id. As stated in the petition, SCE asked "for review of the Administrator's Final Record of Decision ("Final ROD") for the Firm Power Products and Services Rate Adjustment Proposal (FPS-96R-A-02) and to clarify the applicability of the FPS-96R rate as applied to the Power Sale and Exchange Agreement between SCE and BPA, dated October 18, 1988. . ." App. 101.

Bonneville recognized that, because the petition was filed in response to interim approval of FPS-96R by FERC, SCE's challenge of the FPS-96R rate proceeding was not timely. As noted above, under the Northwest Power Act, a rate determination is not deemed to be a "final action" until final confirmation and approval is conferred by FERC. While the petition was filed on June 16, 2000, FERC approval was not granted until April 16, 2001. As a consequence, BPA filed a motion to dismiss SCE's Ninth Circuit petition on August 1, 2001.

In its Response, SCE argued that the petition was proper because it was not challenging "the rate proceeding per se," or "the methodology," but rather "BPA's right to misuse its statutory authority to unilaterally rewrite . . . a contractual arrangement." App. 105 (SCE's Response to Motion to Dismiss). Bonneville's motion was denied on October 16, 2001, but the order was "without prejudice to renewing the arguments in the answering brief." App. 114 (Order of October 19, 2001).

On December 19, 2001, SCE filed a motion for clarification of jurisdiction and a motion to suspend the briefing schedule. App. 115 (SCE Motion for Clarification). SCE repudiated its earlier arguments invoking the Ninth Circuit's jurisdiction, arguing instead that its claim "is not a challenge to a final action contemplated by the Northwest Power Act." App. 120.

Relying upon City of Burbank v. United States, 273 F.3d 1370 (Fed. Cir. 2001), SCE requested an explicit finding to the effect that "jurisdiction properly lies in the CFC [Court of Federal Claims] as under the reasoning of the Federal Circuit court in Burbank, providing SCE leave to file such claim when it is appropriate to do so, or allowing for discovery in this matter pursuant to Public Power Council v. Johnson. . ." App. 128.

In response, Bonneville renewed its motion to dismiss, noting that "the fact that this Court [the Ninth Circuit] lacks jurisdiction does not mean the Court of Federal Claims obtains jurisdiction." App. 137 (BPA's Motion to Dismiss and Response to Motion for Clarification). Bonneville also argued that transfer was inappropriate in that, prior to invoking the jurisdiction of this Court, SCE would be required to fulfill the Contract Disputes Act's jurisdictional prerequisite of filing an administrative claim with the agency. App. 138. However, given that the parties appeared to agree that the Ninth Circuit petition was not properly before that court, Bonneville also proposed that, if the Court were not inclined to dismiss, it should consider entering "an order substantially identical to the order entered in No. 01-70582," which had transferred a related petition filed by SCE. Id.

Bonneville made it clear that, by suggesting such a

resolution, it was in no way expressing its agreement with SCE's contentions regarding subject matter jurisdiction: "Bonneville expressly preserves all jurisdictional arguments made by Bonneville in its January 23, 2002 Motion To Dismiss, and in its previous Motion To Dismiss, filed August 2, 2001." App. 146 (BPA's Reply to SCE). In response, SCE filed a Further Reply To Correct Misstatement of Fact, stating that the parties were not in agreement regarding the jurisdictional issues and urging the Court as follows:

> SCE asks the Court to dismiss this Petition only on the express finding that jurisdiction lies in the Court of Federal Claims, after the prerequisites for jurisdiction in that Court have been met. . . . SCE asks the Court to expressly state whether jurisdiction is with this Court or with the Court of Federal Claims over the issues asserted in SCE's Petition.

App. 149 (SCE's Reply and Correction of Misstatement). The Court denied both Bonneville's motion to dismiss and SCE's motion for clarification, summarily transferring the case instead pursuant to 28 U.S.C. § 1631 (also citing Public Utility Dist. No. 1 of Clark County v. Johnson, 855 F.2d 647, 651 (9th Cir.)).

On July 2, 2002, SCE voluntarily dismissed the case that had been transferred to the Court of Federal Claims. On July 19, 2002, SCE filed an administrative claim with Bonneville, citing the Contract Disputes Act and naming the Bonneville Administrator

as the responsible contracting officer. Upon reviewing the claim, Bonneville corresponded with SCE on January 24, 2003, stating that the claim was subject to the original and exclusive jurisdiction of the Ninth Circuit Court of Appeals and, therefore, was not cognizable under the Contract Disputes Act. App. 154 (Letter to SCE, January 24, 2003). On December 30, 2003, SCE filed the instant complaint.

SUMMARY OF ARGUMENT

The United States Court of Appeals for the Ninth Circuit possesses original and exclusive jurisdiction to review final actions taken by the Bonneville Power Administration pursuant to statutory authority. 16 U.S.C. § 839f(e)(5). This grant of exclusive jurisdiction includes review of rates developed and established in accordance with the procedural requirements of section 7(i) of the Northwest Power Act, 16 U.S.C. § 839e(i), and the implementation of such rates. The Sale and Exchange Agreement provides that SCE shall purchase option capacity at a rate established by Bonneville in accord with such procedures, initially a rate from the SP-87 rate schedule and, thereafter, any successor rate schedules. Agreement at § 12(a)(4). Moreover, SCE agreed that such rates would be established "in accordance with applicable law" and that Bonneville would have the right to periodically "review and revise" such rates.

Agreement at Exhibit B, ¶ 3(b)(1).

Bonneville established a cost-based rate for capacity in its FPS-96R rate proceeding, and implemented that rate, in part, by designating it as the rate applicable to option capacity available under the Agreement. SCE now essentially asks this Court to determine whether Bonneville's actions were a proper exercise of Bonneville's statutory ratemaking authority. Pursuant to section 9(e) of the Northwest Power Act, such claims may be heard only by the Ninth Circuit and SCE's complaint must therefore be dismissed.

SCE argues that its claim is subject to this Court's jurisdiction under the Contract Disputes Act and the Tucker Act, based on the Federal Circuit's holding in City of Burbank v. United States, 273 F.3d 1370 (Fed. Cir. 2001). SCE Complaint at ¶ 3. SCE's reliance on City of Burbank is misplaced. Under the standard enunciated in that case and elsewhere, the underlying claim is subject to the original and exclusive jurisdiction of the Ninth Circuit.

SCE also contends erroneously that, by transferring the claim to this Court, the Ninth Circuit countenanced assertion of subject matter jurisdiction by this Court. SCE Complaint at ¶ 4. SCE attempts to bolster this argument by mischaracterizing positions previously taken by Bonneville in the Ninth Circuit.

As shown below, however, those arguments are insufficient to divest the Ninth Circuit of its original and exclusive jurisdiction over the subject matter of this dispute.

ARGUMENT

I. City Of Burbank Requires Dismissal Of The Complaint

In the complaint, SCE cites City of Burbank v. United States, 273 F.3d 1370 (Fed. Cir. 2001) in support of its contention that jurisdiction lies in the Court of Federal Claims. SCE Complaint at ¶ 4. In that case, the Federal Circuit focused on the Ninth Circuit's exclusive jurisdiction over claims against BPA in two situations: "(1) when the contractual provision is mandated by the Act, or (2) when the contractual provision is a rate the BPA set by following the procedural requirements of § 839e(i), including notice-and-comment and the generation of an administrative record." 273 F.3d at 1379-80(emphasis added); see also Southern California Edison v. United States, 58 Fed. Cl. 313, 319-20 (2003) (noting "contract claims against BPA fall within the exclusive jurisdiction of the Ninth Circuit when BPA's actions under a contract are mandated by statute or involve a rate set by BPA pursuant to statutory requirements.")

The Federal Circuit was persuaded that Burbank's complaint was properly before this Court, holding that the price component of Burbank's contract was not a "rate," but a price adjustment

negotiated at arm's length. 273 F.3d at 1381. Specifically, the Federal Circuit noted that Burbank's contract did not contain a "rate" because an administrative record was not generated to establish the price in the contract and "it was not set according to the procedures required of BPA rate-making pursuant to § 839e(i)." Id. Moreover, the Federal Circuit found that BPA's actions did not constitute "implementation" of a rate because implementation "is limited to applying rates to those who were contemplated as rate-payers in the administrative proceeding that determined the rates." Id. Since Burbank's contract did not contain a "rate," the Federal Circuit held that Burbank was not a BPA rate-payer and, therefore, not "among the class of entities . . . whom the resulting rates were intended to apply. . ." Id. Accordingly, the Federal Circuit held that dispute was a matter of contract and not subject to the exclusive jurisdiction of the Ninth Circuit. However, as shown below, a different result is required in the present case.

### A. SCE's Contract Contains A "Rate" And SCE Is A Rate-Payer As Defined By City Of Burbank

The contract provisions governing the rate for SCE's option capacity state that the initial rate for the option capacity product was "the demand charge associated with the contract rate of Bonneville's SP-87 rate schedule," which is Bonneville's rate

schedule for sales of firm surplus power. Agreement at § 12(a)(4). That rate resulted from a rate-making proceeding conducted pursuant to section 7(i) of the Northwest Power Act. The Agreement states further that "if the SP-87 rate schedule is not in effect," then "a successor rate schedule" would provide the rate for option capacity. Id. Any successor to SP-87 would also necessarily be the result of a section 7(i) proceeding.

Further, the General Rate Schedule Provisions, attached to the Agreement at Exhibit B, provide that when rates are referenced in the contract, Bonneville "will periodically review and revise rates . . . in accordance with all applicable laws." Agreement, General Contract Provisions (Exhibit B) at §§ 3(b)(1), (3). By executing the Agreement, SCE agreed that the Option Capacity product must be priced at a rate established and periodically adjusted through Bonneville's statutory rate-making procedures. Thus, the option capacity product is subject to a Bonneville rate. Further, as demonstrated below, SCE is a Bonneville rate-payer.

B. BPA's Application Of The FPS-96R To SCE's Contract Is An "Implementation" Of That Rate

As noted above, the Federal Circuit in Burbank found that implementation "is limited to applying rates to those who were contemplated as rate-payers in the administrative proceeding that

determined the rates." Id. at 1381. In this case, Bonneville announced the FPS-96R rate proceeding by posting a Federal Register notice making all interested parties aware of its intention to develop a rate that would be implemented by applying it to the all contracts executed prior to 1996, including the SCE Sale and Exchange Agreement. 64 Fed. Reg. 44361 (1999). Moreover, Bonneville defined the scope of the proceeding throughout to correct an error in the FPS-96 rate schedule by developing a rate for capacity products– such as the one sold to SCE pursuant to the option capacity provisions--in order to comply with its cost recovery obligation and other statutory requirements. App. 30-32. Thus, unlike Burbank, SCE was explicitly contemplated as a ratepayer to whom the rates resulting from the administrative proceeding would apply.

Moreover, in this case, there is an administrative record reflecting facts relevant to this dispute, i.e., the record of the FPS-96R rate proceeding, including the final Record of Decision. Id. In this instance, the purported contractual issues raised by SCE are inextricably linked to challenging the development and implementation of a rate that was established subject to Bonneville's administrative procedures. SCE itself notes that, at the core, its claim boils down to "misuse [of] statutory authority." Bonneville's reliance on its statutory

authority is thoroughly documented in the record of the FPS-96R proceeding. Thus, the administrative record contains facts that are not just relevant, but essential, to resolving this dispute.

II. City Of Burbank's Emphasis On The Existence Of An Administrative Record Has Been Called Into Question

In the complaint, SCE appears to suggest that the FPS-96R administrative record is irrelevant because the Administrator did not fully litigate and adjudicate all of the issues raised by SCE in the proceeding. Such an argument misses the point. There is nothing in Burbank, or in any other case, to suggest that alleged procedural inadequacies provide a basis for jurisdiction in this Court. To the contrary, application of Burbank requires dismissal because the claim challenges the development and implementation of a Bonneville rate, the claimant is a Bonneville ratepayer, and a formal administrative record was created pursuant to § 7(i) of the Northwest Power Act.

Moreover, recent Ninth Circuit opinions undermine any allegations by SCE pertaining to to the adequacy or existence of a formal administrative record. In Burbank, the Federal Circuit interpreted the Northwest Power Act as conferring exclusive jurisdiction over alleged breach of contract claims only "(1) when the contractual provision is mandated by the Act, or (2) when the contractual provision is a rate the BPA set by following

the procedural requirements of § 839e(i), including notice-and-comment and the generation of an administrative record." City of Burbank, 273 F.3d at 1379 (emphasis in original). The Court reasoned that such a result "is consistent with Ninth Circuit precedent." Id. (citing Pub. Util. Dist. No. 1 of Clark County v. Johnson, 855 F.2d 647, 650 ("Clark County") ("claims involving alleged contractual breaches by the agency and based on allegations of facts outside an administrative record must be heard in the Claims Court."))

Subsequent to Burbank, the Ninth Circuit issued an opinion which brings into question the Federal Circuit's reliance upon Clark County. Transmission Agency of Northern California v. Sierra Pacific Power Co., 295 F.3d 918, 927 (9th Cir. 2003) (TANC). In TANC, plaintiffs alleged, among other things, that jurisdiction should not lie exclusively with the Ninth Circuit due to the alleged inadequacy of Bonneville's administrative record. Id. at n. 5. The Ninth Circuit responded as follows:

> The parties devote much discussion to the administrative record component of the [Clark County] decision, as opposed to our holding that the oral contract claim was not a challenge to any final administrative decision. This is a plausible reading of [Clark County], but not an accurate one. The key test under 9(e)(5) is whether there is a challenge to a final administrative decision or its implementation, not the existence or adequacy of an administrative record.

Id. (emphasis added). The court also cited this Court's opinion

in Puget Sound Energy v. the United States, 47 Fed. Cl. 506 (2000), which held as follows:

> We do not find any support for the proposition that a Ninth Circuit challenge must be premised on a formal administrative record. Puget contends that the Ninth Circuit has in [Clark County] taken the position that it has initial and exclusive jurisdiction only where the claim was based on a formal administrative record. . . . We think Puget over-reads Clark County. Puget implies that Clark County's references to "final action" and "administrative record" mean the formal Record of Decision in a statutory ratemaking procedure. This case does not define "administrative record" in such a formal and limited way, and Puget has not directed us to any authority that does. . . . A formal administrative record "in accordance with this chapter" is clearly not necessary for all Ninth Circuit jurisdiction.

Puget Sound Energy, 47 Fed. Cl. 506, 512. Thus, in TANC, the Ninth Circuit confirmed that the Northwest Power Act does not require a formal administrative record in order for a claim to fall within the Ninth Circuit's jurisdiction to entertain matters involving rate implementation.[5]

Finally, to the extent that SCE takes issue with Bonneville's performance of its statutory duties under section 7(i) of the Northwest Power Act, those issues too must be raised before the Ninth Circuit. That court is charged with

[5] Indeed, the vast majority of Northwest Power Act cases heard by the Ninth Circuit are not predicated on a formal administrative record; for example, the record before the Ninth Circuit in Puget, 310 F.3d at 620, consisted of correspondence history that was collected and compiled after the petition had been filed and submitted to the Court as the administrative record.

responsibility for interpretation of the complex technical and legal framework that governs administration of the Federal Columbia River Power System. Determining whether Bonneville has properly discharged its statutory duties with regard to administration of section 7(i) is a matter for the Ninth Circuit, not this Court. Central Lincoln Peoples' Utility District v. Johnson, 735 F.2d 1101, 1116 (9th Cir. 1984) (Central Lincoln II).

III. The Court Must Look To The Nature Of The Conduct Challenged To Determine Jurisdiction

In the complaint, SCE anticipates our response to the complaint by suggesting that it is merely raising a contractual dispute. However, SCE is incorrect. Since 1980, the Ninth Circuit has developed a comprehensive body of law interpreting the scope of its exclusive jurisdiction under section 9(e) of the Northwest Power Act. In such cases, the court has uniformly asked whether the petitioner is challenging a Bonneville final action taken pursuant to statutory authority. In this case, SCE is making just such a challenge by essentially requesting this Court to review the establishment and implementation of a rate established pursuant to section 7((i) of the Northwest Power Act.

A. The "True Nature" of the Conduct Governs

Both the Ninth Circuit and this Court have repeatedly held that it is irrelevant whether a plaintiff characterizes a claim against Bonneville as a "contract" claim, or as some other type of action. If the true nature of the complaint involves an agency action reviewable by the Ninth Circuit, there can be no jurisdiction elsewhere:

> In § 839f(e)(5), Congress has decided that jurisdiction under the [Northwest Power] Act should be a function of the agency whose actions are being challenged rather than a function of the cause of action which petitioner asserts. . . .
>
> . . . . For jurisdictional purposes, therefore, it matters not whether the utilities' suit is grounded in contract, administrative law, or some other legal theory. Instead, jurisdiction arises because the actions of a particular agency are being challenged and because of the nature of the agency action at issue. The proper inquiry focuses on the agency being attacked and whether the factual basis for that attack is an agency action authorized by the Act.

Pacific Power & Light v. Bonneville Power Admin., 795 F.2d 810, 816 (9th. Cir. 1985) (emphasis added) (citations omitted).[6] This Court has endorsed this view:

> Despite Puget's characterization of its claim as one for breach of contract, it is actually a claim

[6] See also, CP Nat'l Corp. v. Jura, 876 F.2d 745, 747-48 (9th Cir. 1989), where the court held that the Ninth Circuit, not the Court of Federal Claims, has exclusive jurisdiction over challenge to final rate-making action despite assertion by the plaintiff that Bonneville's action was a breach of a power sales contract.

> challenging Bonneville's rate and its implementation. . . . Congress specifically intended in the Northwest Power Act to place review of final decisions by the BPA exclusively in the Ninth Circuit to avoid conflicting judicial interpretations among various federal courts.

Puget Sound Energy, Inc. v. United States, 47 Fed.Cl. 506, 511 (Fed. Cl. 2000).[7] Thus, it is the true nature of the claim, and not the plaintiff's characterization of the claim, that must guide the Court in determining whether jurisdiction lies here or in the Ninth Circuit.

B. The True Nature Of SCE's Complaint Challenges The Development And Implementation Of A Rate

While SCE asserts that the "present dispute relates only to the Contract provisions," SCE's own descriptions of the claim do not bear out such a characterization. SCE Complaint, ¶ 1. In the complaint, SCE describes the factual basis for its claim as follows:

> Since 1988, when the Contract was first executed, BPA has implemented several new rate schedules for surplus firm power that are successor rate schedules to the SP-87 rate schedule. . . . As of 1999, the applicable schedule was the FPS-96 rate schedule . . . .
>
> . . . BPA demanded that SCE pay at a new rate (the "Posted Rate") it had added in section 1.3.2 of the

[7] See also, Forelaws on Board v. Johnson, 709 F.2d 1310, 1313 (9th Cir.1983) (bifurcation of court review could result in the same agency decision being reviewed simultaneously at two different levels) and, Pacific Power & Light Co., 795 F.2d at 815 ("[o]riginal jurisdiction in [the court of appeals] permits uniform interpretation of the Act and promotes expedited review").

FPS-96R revised rate schedule. . . .

SCE Complaint at ¶¶ 17, 21. This statement is consistent with the background provided by SCE in its administrative filing, which states in part:

> In 2000, BPA refused to provide Option Capacity to SCE unless SCE paid a demand charge associated with a newly developed capacity without energy rate.
>
> * * *
>
> The demand charge BPA claims applies for this new product can be found in section II.A.1.3.2 of the FPS-96R rate schedule. . .

App. 158-159 (SCE Administrative Claim).

As noted above, similar themes have been echoed throughout the course of this litigation. During the FPS-96R rate proceeding, SCE argued:

> The proposed rate is egregious, unfair, unreasonable, and is inconsistent with BPA's statutory obligations. . . . The rate is higher than the rate charged for similar products and over-recovers BPA's costs. BPA has failed to meet its statutory mandates to price the product at the lowest possible price consistent with sound business practices and in so doing, has discriminated against SCE.

App. 95-96. In its Ninth Circuit petition, SCE asked the Court

> [F]or review of the Administrator's Final Record of Decision ("Final ROD") for the Firm Power Products and Services Rate Adjustment Proposal (FPS-96R-A-02) and to clarify the applicability of the FPS-96R rate as applied to the Power Sale and

> Exchange Agreement between SCE and BPA, dated October 18, 1988. . .

App. 101. Thus, based on SCE's own descriptions, the true nature of the claim, and the factual background on which it is predicated, are specific actions of the Bonneville Administrator taken pursuant to statutory authority governing the development and implementation of rates.

SCE's attempt now to plead its claim as sounding in contract must be rejected. In CP Nat'l Corp. v. Jura, 876 F.2d 745, 746, petitioners alleged that Bonneville's "availability charge" conflicted with their contract rights. The availability charge, adopted in the 1983 rate case, was a charge based on how much power a purchaser was entitled to receive, rather than how much the purchaser actually received. Id. The Ninth Circuit denied the motion to transfer the case to this Court, holding that despite the characterization of the claim as one for breach of contract, the focus of the grievance was the 1983 rates. CP Nat'l Corp., 876 F.2d at 747, 751. The Court stated

> [T]his court has exclusive jurisdiction over what is in reality a challenge to a final action of BPA taken pursuant to statutory authority. 16 U.S.C. §839f(e)(1)(G)(1982). A party wishing to challenge BPA's ratemaking activity as violating contractual provisions or any other ground should raise that challenge in the ratemaking proceedings, giving BPA the opportunity to adjust its rates, if necessary.

Id. at 748.

In Atlantic Richfield Co. v. Bonneville Power Administration, 818 F.2d 701 (9th Cir. 1987), certain BPA customers similarly challenged the application of a "customer charge" to their contracts. They argued that the charge was inconsistent with their contracts in that it was based on forecasted operating demand. Id. at 702-03. Separate petitions had been filed, both in 1983 and 1985, and they were consolidated for consideration. Similar to SCE's Ninth Circuit petition, the 1983 filing had been made prior to the rates receiving final confirmation and approval by FERC. Id. at 705. The petitioning parties, therefore, were challenging a non-final action. The Ninth Circuit noted that petitions must be filed within "90 days after the final action being challenged." Id. As a consequence, the Ninth Circuit found that it was "without jurisdiction to hear the 1983 petitions because they do not involve a final action." Id. (citations omitted).

The Ninth Circuit exercised jurisdiction over the merits of the 1985 petitions. Id. at 705. These petitions challenged the legality of the charge under both Bonneville's statutory rate-making authority and pursuant to a breach of contract claim. Id. With respect to the latter, the petitioners contended "that the customer charges were in substance a curtailment charge,

forbidden by their agreement with BPA." Id. The Ninth Circuit, however, found that the customer charge was not only a proper exercise of Bonneville's rate-making authority, but was not a curtailment charge and did not violate the customers' contract rights. Id. ("We thus reject the breach of contract challenge to the customer charge.")

The present case is similarly within the scope of the Ninth Circuit's jurisdiction under the Northwest Power Act. SCE has noted from the outset that the true nature of its dispute is a challenge to BPA's rate development and implementation. App. 107 ("What is really at issue is whether BPA misused its statutory rate making authority to unilaterally amend the Contract."). Thus, SCE's claim is not limited, as maintained, to "solely contractual provisions." Instead, the basis for the claim is a challenge to the propriety of Bonneville's exercise of statutory authority in developing a rate that was to be implemented, in part, by applying it to the option capacity product purchased under the Agreement. As SCE states: "SCE challenges whether the application of that rate determination is a breach of its Contract with BPA." Complaint at ¶ 6 (emphasis added).

Contract issues may be intertwined with SCE's claim, as they were in both CP National and Atlantic Richfield. Nonetheless, SCE's claim is primarily a challenge to the propriety of

Bonneville's development and implementation of a rate pursuant to statutory authority. Therefore, it is subject to the original and exclusive jurisdiction of the Ninth Circuit.

IV. Transfer Does Not Confer Jurisdiction In This Court

In the complaint, SCE argues that the Ninth Circuit conferred jurisdiction on this Court by transferring the case. SCE's Complaint at ¶ 5. SCE's reasoning is untenable. The Ninth Circuit denied both Bonneville's motion for dismissal and SCE's motion for clarification of jurisdiction. Nonetheless, SCE takes the position that the Ninth Circuit: (a) explicitly denied the motion for clarification of jurisdictional issues but then, (b) implicitly provided (by citing to Clark County) exactly the jurisdictional finding that SCE had requested in the motion that was explicitly denied. To suggest that the Ninth Circuit crafts its orders in such cryptic fashion is absurd.[8] By expressly denying the motion for clarification, the Ninth Circuit indicated that it was not making the jurisdictional findings sought by SCE, or any other jurisdictional finding.

Moreover, the law is clear that the transfer statute is not

[8] It would be equally logical to argue that, by denying Bonneville's motion to dismiss, the Ninth Circuit was indicating that it may, in fact, have jurisdiction over the underlying claim. After all, Bonneville's original motion to dismiss had been denied without prejudice, a briefing schedule had been set, and the Ninth Circuit appeared ready to address the merits.

a jurisdiction granting statute and cannot be used to bestow jurisdiction on the transferee court. The Federal transfer statute "does not itself establish jurisdiction, but rather corrects lack of jurisdiction only in cases that are actually transferred . . ." Clark v. Busey, 959 F.2d 808, 812 (9th Cir. 1992). Thus, transfer in and of itself does not provide a basis for jurisdiction in this court. Rather, the court must determine its own jurisdiction independently. E.g., A & S Council Oil Co., Inc. v. United States, 16 Cl. Ct. 743, 749 (1989).

V. Bonneville Has Not Made Inconsistent Jurisdictional Arguments Or Acquiesced To Jurisdiction In This Court

Finally, in the complaint, SCE alleges incorrectly that Bonneville has taken inconsistent positions with regard to proper jurisdiction over this dispute. SCE Complaint at ¶¶ 6, 11. The purpose of the rate proceeding was to develop a cost-based rate for the sale of capacity. App. 30-32. Bonneville made it clear from the outset that the rate, if approved, would be applied to SCE's contract. Id. Although Bonneville argued at the time, and the hearing officer agreed, that questions regarding the applicability of the rate to SCE's contract should be raised in the proper forum, App. 171, to the extent that SCE disagreed, the matter should have been taken up before the Ninth Circuit. Should the Ninth Circuit have agreed with SCE's contentions, it

could have remanded the case back to Bonneville for further administrative proceedings or taken some other appropriate action. The fact remains that the parties to a dispute are not free to establish the jurisdiction of the reviewing court.

Moreover, Bonneville's arguments have consistently focused upon the fact that the Ninth Circuit lacked jurisdiction over this dispute because SCE was seeking review of a non-final action. Bonneville argued that the petition filed by SCE was jurisdictionally defective, based on the principle that jurisdiction must exist as of the date of filing. F. Alderete General Contractors, Inc. v. United States, 715 F.2d 1476, 1480, (Fed. Cir. 1983). A petition under § 9(e)(5) of the Northwest Power Act must be filed within ninety days of the action being "deemed" final. SCE's petition explicitly challenged the Administrator's Record of Decision in FPS-96R. At the time of filing, the FPS-96R rate schedule had not been confirmed and approved by FERC and, therefore, it was not "deemed" final at the time SCE filed its petition.

Bonneville's arguments are in concert with the Ninth Circuit's holding in City of Seattle , et al. v. Johnson, 813 F.2d 1364 (9th Cir. 1987). Petitioners in that case contended that their filing was timely because they were not challenging a rate but rather were challenging the adoption of a charge which

allegedly violated their contracts. Id. at 1368. The Court rejected petitioner's arguments, saying:

> Petitioners attempt to evade the jurisdictional bar by contending that their claim is not that BPA exceeded its ratemaking authority by imposing the availability charge but that BPA breached its contractual obligations to them. Because their claim is one for breach of contract, they argue it is of no consequence that the charge is a rate. A careful reading of the contracts, however, indicates that the parties understood that the contracts were being entered into in light of BPA's obligation to review and publish rates periodically. It is equally clear that any rate changes would not be final until after confirmation and approval by FERC. Any alleged contract breach resulting from a change in rates would therefore not occur until after such action by FERC. Thus, casting the complaint in terms of a breach of contract does not avoid the jurisdictional bar.

813 F.2d at 1368 (emphasis added). At the Ninth Circuit, BPA noted the similarities to the arguments raised by SCE, and Bonneville argued that, as in City of Seattle, the petition was jurisdictionally barred because it had been filed prior to FERC confirmation and approval of the rate-making process. Under the holding in City of Seattle, the earliest that a claim related to implementation of a rate can be filed is immediately after confirmation and approval by FERC. Otherwise, the action is not final, the petition is subject to the jurisdictional time bar, and the Ninth Circuit is without power to hear the claim.

At this point, the case presents an entirely different jurisdictional question: whether the underlying claim is subject to the Ninth Circuit's exclusive jurisdiction under section 9(e) of the Northwest Power Act. As discussed above, SCE is challenging a rate established by Bonneville to apply to capacity products such as the option capacity available under the SCE Sale and Exchange Agreement. As in City of Seattle, "the parties understood that the contracts were being entered into in light of BPA's obligation to review and publish rates periodically." 813 F.2d at 1368. Thus, it should not be surprising that such a claim is within the exclusive jurisdiction of the Ninth Circuit under section 9(e) of the Northwest Power Act.

There is no tension between such a conclusion and Bonneville's prior arguments in the Ninth Circuit. A petition can be jurisdictionally defective as filed at the Ninth Circuit, due to timing or other issues, while the underlying claim is still subject to the exclusive jurisdiction of the Ninth Circuit, thus precluding review in this Court. In this case, the underlying claim is a challenge to the implementation of a Bonneville rate established pursuant to statutory authority. Such claims fall within the original and exclusive jurisdiction of the Ninth Circuit and cannot be litigated under the Contract Disputes Act, given the Ninth Circuit's finding that review under

the Northwest Power Act "is incompatible with the remedies afforded by the CDA." Puget Sound Energy, Inc. v. United States, 310 F.3d 613, 628 (9th Cir. 2002).

CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant its motion to dismiss for lack of subject matter jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

s/Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 307-6288

OF COUNSEL:

JON D. WRIGHT
Office Of The General Counsel
Bonneville Power Admin.
Portland, OR

November 29, 2004

Notice of Filing

I hereby certify that on November 29, 2004, a copy of the foregoing defendant's unopposed motion to dismiss and appendix was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I also certify that, pursuant to General Order 2003-42, Paragraph I(5), I forwarded a courtesy copy of the motion and appendix to the Court.

s/ Martin F. Hockey, Jr.