UNITED STATES OF AMERICA
U.S. DEPARTMENT OF ENERGY
BEFORE THE BONNEVILLE POWER ADMINISTRATION

| | | |
|---|---|---|
| Bonneville Power Administration's FPS-96R Rate Adjustment | )<br>)<br>) | BPA Docket FPS-96R |

---

# BRIEF OF EXCEPTIONS OF SOUTHERN CALIFORNIA EDISON

---

January 10, 2000

Ann L. Fisher
1425 SW 20th Ave., Suite 202
Portland, OR 97201
(503) 721-0181

Attorney for
Southern California Edison

FPS-96R-R-SO-1

Table of Contents

1. Introduction and Summary of SCE's position. ........ 3
2. Legal Analysis........ 4
3. Southern California Edison (SCE) takes Exception to the Administrator's Draft Record of Decision in six particulars. ........ 6
4. Southern California Edison Responses to the specific determinations made. ...... 9
   a. BPA cannot adjust the rate applicable to SCE's contractual right to purchase capacity. ........ 9
   b. BPA did not, in fact, omit a rate from the 1996 FPS-96 rate schedule. ........ 12
   c. The contract demand charge under BPA's 1996 rate schedule set the rate under SCE's contract. ........ 13
   d. The rates in this proceeding are of limited application. ........ 14
   e. BPA has initiated this proceeding unilaterally to modify SCE's contract in violation of its obligation of good faith and fair dealing. ........ 15
   f. BPA's "FPS-96R marginal cost analysis" is not a reasonable proxy for BPA's costs incurred for capacity without energy. ........ 16
   g. BPA's "FPS-96R marginal cost analysis" is not an appropriate basis for pricing capacity without energy. ........ 17
   h. The rate for Option Capacity sold to SCE should not exceed the rate charged to the balance of BPA's customers for capacity without energy. ........ 24
   i. SCE's contract does not allow BPA to seasonally shape the rates applied to SCE's option contract. ........ 25
   j. It is unreasonable for the Administrator to use a single day of NYMEX upon which to base a seasonal shape. ........ 25
   k. It is not appropriate to develop a seasonal pattern to the levelized CCCT cost. ........ 25
   l. The rates set in this proceeding are not applicable to other BPA contracts . 26
   m. SCE contract terms are germane to this proceeding. ........ 27

FPS-96R-R-SO-1

n. BPA's method of establishing rates solely applicable to SCE is not a reasonable exercise of BPA's discretion in setting rates consistent with its statutory mandates.......... 27

o. The Administrator has not analyzed the rates charged to other customers to determine whether BPA's special rate to SCE exceeds the rates charges to BPA's other customers.......... 28

p. The rate BPA proposes to charge SCE for "capacity without energy" is not comparable to the rates charged to other customers for a comparable product.......... 28

q. BPA has priced the FPS-96R product prohibitively high to prevent SCE from exercising its option to purchase capacity.......... 29

r. BPA's use of an expedited rate proceeding was inappropriate under the circumstances.......... 32

s. SCE was denied meaningful discovery not allowed to present all of the relevant evidence or to raise all critical and necessary issues?.......... 34

5. Conclusion.......... 35

Appendix A (portion of materials in Record for ease of review)

FPS-96R-R-S0-1

## 1. Introduction and Summary of SCE's position.

The Administrator's Draft Record of Decision (DROD)is a carefully contrived document designed to disguise or justify BPA's discriminatory treatment of SCE and its imposition of new contractual terms on SCE (and SCE alone) by use of a 7(i) proceeding. The DROD is remarkable only in respect to the effort it goes to recharacterize SCE's and BPA's own submittals and to conveniently quote some but not all of the relevant material. To the extent that the Administrator has discretion to set rates, and to conduct rate proceedings, the discretion is not unfettered. Any discretion must be wielded fairly and in a non-discriminatory fashion. BPA cannot use a claim of "agency discretion" to avoid BPA's contractual and statutory obligations.

BPA has diverged from its methodology for developing marginal costs both in the 1996 rate proceeding and in its 2002 rate case for rates of general applicability. It submitted no analysis or hard evidence to support the change, and gives as its justification only a cursory "we think this is the right approach." BPA has failed to explain why the capacity that SCE is entitled to buy should be treated differently than other products it sells, has sold in the past, or will sell in the future. BPA's decision that the approach is reasonable is without factual or legal support and fails to meet the minimum standards required under Section 7(k) of the Regional Act (Pacific Northwest Electric Power Planning and Conservation Act, 16 USC. Chapter 12H at § 839e(k)), and BPA's own regulation. While several pages of the DROD discuss the discretion granted to BPA, the DROD ignores the most salient aspect of the Administrator's discretion—it applies only in instances of "rate schedules of general application." Here, the only application of the proposed rate schedule is to a purchase right under one provision of its contract with SCE. None of the cases relied upon by the DROD discuss anything more than rates established in general rate proceedings (which this is not) which will apply to a full class of BPA customers (which this will not). None of the cases address circumstances in which BPA attempts to wield its discretion to force a single customer to accept a change in one aspect of its contract with BPA.



FPS-96R-R-S0-1

Sharon

FILED
JUN 16 2000
CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| SOUTHERN CALIFORNIA EDISON COMPANY,<br><br>Petitioner,<br><br>v.<br><br>BONNEVILLE POWER ADMINISTRATION,<br><br>Respondent. | CASE NO.<br>**PETITION FOR REVIEW**<br>UNDER THE PACIFIC NORTHWEST POWER AND PLANNING CONSERVATION ACT<br><br>Case 70720 |

Southern California Edison Company ("SCE") a California investor-owned utility and a direct purchaser of electric energy and capacity, and transmission from the Bonneville Power Administration ("BPA"), hereby petitions the Court, pursuant to the Pacific Northwest Power and Planning and Conservation Act, 16 USC § 839e (1994) ("Northwest Power Act"), for review of the Administrator's Final Record of Decision ("Final ROD") for the Firm Power Products and Services Rate Adjustment Proposal (FPS-96R-A-02) and to clarify the applicability of the FPS-96R rate as applied to the Power Sale and Exchange Agreement between SCE and BPA, dated October 18, 1988, Contract No. DE-MS79-88BP92275. Notice of BPA's Final Decision occurred on May 24, 2000, at 65 FR 33529.

LW003681116.doc

This petition is filed with the Ninth Circuit pursuant to 16 U.S.C. §§ 839f(e)(5), Rule 15 of the Federal Rule of Appellate Procedure, and Circuit Rule 15-2.

DATED: June 15, 2000

Respectfully Submitted,

Ann L. Fisher (JB)

Ann L. Fisher
AF Legal Consulting Services
1425 SW 20th, Suite 202
Portland, OR 97201
(503) 721-0181 (phone)
(503) 223-2305 (fax)
enerGlaw@aol.com

Leon Bass, Jr.

Leon Bass, Jr., Senior Attorney
Southern California Edison Company
2244 Walnut Grove Avenue
Rosemead, CA 91770
(626) 302-6967 (phone)
(626) 302-1922 (fax)
bassl@sce.com

~~Attorneys for Petitioners~~
SOUTHERN CALIFORNIA EDISON COMPANY

LW003681116.doc

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct fopy of SCE's PETITION FOR REVIEW was served upon the official service list for this matter and upon the following persons by placing it in the United States Mail, postage prepaid.

DATED at Rosemead, California this 15th day of June, 2000.

Ms. Judith A. Johansen
Administrator and Chief Executive Officer
Bonneville Power Administration
P.O. Box 3621
Portland, OR 97208-3621

Peter Burger
Office of General Counsel
Bonneville Power Administration
Routing LP-7
95 NE 11th Avenue
Portland, OR 97208-3621

Stephanie A. Clemons
Stephanie A. Clemons

LW003681116.doc

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | | |
|---|---|---|
| SOUTHERN CALIFORNIA EDISON COMPANY, | ) | Case No.: 00-70720 |
| Petitioner, | ) | Response to Bonneville Power Administration's Motion to Dismiss |
| and | ) | |
| BONNEVILLE POWER ADMINISTRATION, | ) | |
| Respondent | ) | |

Pursuant to Rule 27 of the Federal Rules of Appellate Procedure (FRAP, and the Northwest Power Planning and Conservation Act, 16 USC Sec 839 et seq. (hereafter the Northwest Power Act), Southern California Edison Company (SCE) hereby responds to Bonneville Power Administration's (BPA) Motion to Dismiss. As more fully described below, BPA's Motion mischaracterizes SCE's case in an attempt to avoid review of its actions with respect to the implementation of certain contractual arrangements by and between BPA and SCE pursuant to the Power Sale and Exchange Agreement dated October 18, 1988, Contract No. DE-MS79-88BP92275 (hereafter, "the Contract").

## I.

## INTRODUCTION

In January 1999, SCE gave notice to BPA regarding its intent to purchase 250 MW of capacity for which SCE held an option to purchase ("Option Capacity") under Section 12 of the Contract. The Contract sets forth the terms, including the price to be

paid, for the Option Capacity. The demand charge applicable to the pricing terms for the Option Capacity purchase is the demand charge in the FPS 96, a rate schedule approved by FERC in 1996 for a ten-year term. Because FPS 96 is the replacement of the SP-87 rate schedule and a rate of general application, the demand charge in the FPS-96 is the rate applicable to the Contract pursuant to the express language in the Contract,. The Contract contemplated a demand charge for Firm Power that was charged to *all* of BPA's customers, not one developed to be applied solely to the Contract.

Upon SCE's election to purchase the Option Capacity, BPA indicated that it was unwilling to sell the Option Capacity to SCE at the price and terms required by the Contract. It provided notice in the Federal Register on August 13, 1999 of the initiation of an "expedited rate proceeding" to correct a purported "error" in the 1996 FPS rate schedule, specifically to develop a new and different rate which it stated would apply to the Contract, thereby modifying its terms. This new rate proceeding was a unilateral attempt to modify the contractual agreement by applying a new and never before contemplated rate schedule to price SCE's Option Capacity despite clear language in the Contract respecting the pricing terms. This is the basis of SCE's Petition for Review – not the rate proceedings per se, not the methodology, and not BPA's right to generally conduct rate proceeding but rather BPA's right to misuse its statutory authority to unilaterally rewrite (over the strenuous objections of SCE) a contractual arrangement. What BPA did was to use its statutory authority to initiate a rate proceeding solely intended to amend the price charged to SCE. (See, Federal Register Notice, 64 Fed. Reg.

44361 (1999).[1] BPA's determination that it would apply the FPS 96R rate schedule to the Contract, thereby ignoring its express contractual obligations, is a final action contemplated by the Northwest Power Act and is ripe for review by this Court.

## II.

## ARGUMENT

### A. The Contract

The Contract specifically identifies the price SCE is to pay for Option Capacity. In particular, section 12(a)(4) of the Contract states:

> "Edison [SCE] shall pay for Option Capacity at the demand charge associated with the contract rate of the Bonneville's [BPA] SP-87 rate schedule or, if the SP-87 rate schedule is no longer in effect, a successor rate schedule. The Parties' Authorized Representative may agree upon another applicable rate schedule."

The SP-87 schedule was superseded by the SP-93 schedule. In turn, the SP-93 schedule was superseded by the FPS-96 schedule. Each of these rate schedules was a schedule of general, not specific or limited, application. The reason that the Option Capacity was priced as it was in the Contract (that is, to refer to a rate of general application) was to assure that SCE would receive the same treatment as BPA's Northwest customers. In addition, Exhibit B of the contract clearly states that rates under

---

[1] The representatives of BPA attending the prehearing conference in this matter confirmed this. Not until SCE raised the contractual terms did BPA change its story, in the middle of the expedited rate case and without notifying any party, and claim FPS 96R was a rate of general application and would apply to future unidentified contracts

the Agreement must be rates of general applicability. A simple comparison shows that the FPS 96R rate cannot apply to the Contract since it is a rate developed for limited application, not a rate of general applicability and is not the replacement for the SP-87 rate. The rate proceeding was initiated solely to modify a contractual arrangement without regard to the Contract terms or the give and take of negotiations that occurred when the Contract was executed.

## B. Applicable Law

BPA's unilateral modification of the Contract by the application of the FPS-96R rate to the price of SCE's Option Capacity is a final action for the purposes of the Northwest Power Act. BPA has mischaracterized the final action as one pertaining to the development of a rate or BPA's general authority to develop rates. What is really at issue is whether BPA has misused its statutory rate making authority to unilaterally amend the Contract.

In addition, BPA's decision to apply a new rate to an existing contract is an implementation of the contractual terms and therefore itself a final action. The Contract was entered into under the auspices of the Pacific Northwest Consumer Power Preference Act, 16 USC 837 et seq (hereafter the "Preference Act") and the Northwest Preference Act. 839f(e)(1) lists those actions deemed to be final actions. They include "sales, exchanges, and purchases of electric power under section 839c" of the Act, as well as several other actions (only one of which relates to rate determinations.

Section f (e)(3) states explicitly that nothing in the preceding section is to be construed, as BPA apparently has done, to preclude judicial review of other final actions – such as the one at issue here. Finally, Section 839f(e)(5) references the scope of petitions for review as follows:

> "839f(e)(5). Suits to challenge the constitutionality of this Chapter, or any action thereunder, *final actions and decisions taken pursuant to this chapter by the Administrator...or the implementation of such final actions*...shall be filed in the United States court of appeals for the region." (Emphasis added.)

C. **SCE's Basis for its Petition Is Not Solely an Appeal of a Rate Proceeding**

BPA's entire argument rests upon a supposition that this is an appeal of a rate proceeding and therefore that SCE's claim is based upon a non-final action. In so doing it ignores the expansive approach taken by the Northwest Power Act vesting authority in this Court to review actions taken by the Administrator. BPA's suggestion that this matter is a traditional appeal of a rate reviewed by the FERC is disingenuous. The Petition identifies the final action as being the effort by BPA to unilaterally modify an existing contract through the artifice of a rate proceedings – SCE has stated it many times before, most recently in its response to BPA's Motion to Vacate the Briefing Schedule, a copy of which is attached hereto and incorporated herein as if fully set forth. SCE said it below; it said it during arbitration proceedings related to the Option Capacity, and at FERC. No one could seriously argue that there is any mystery about SCE's complaint or take the position that this is a traditional appeal to a rate proceeding of general application.

BPA seeks to use the timing of SCE's petition to defeat jurisdiction. SCE filed within ninety days of the Administrator's final decision, which was affirmatively articulated in the final Record of Decision filed in the Federal Register with FERC's interim approval. Had SCE waited until the rates themselves were finally approved to file a complaint against BPA's modification of the Contract as stated in the Final Record of Decision, BPA would surely have argued that any complaint about that specific decision was untimely because the Petition for Review would have been filed more than ninety days after the decision evidenced by the final Record of Decision was made. The central issue is not and has not been BPA's rates but rather whether BPA can unilaterally, and in contradiction to the Contract, apply those rates to the sale of Option Capacity under the agreement. Unlike other of BPA's contracts, which provide for periodic price revisions without limitation as to the rate or its development, the Contract is narrowly written to allow such a price change only upon certain conditions. BPA failed to meet those conditions and it is that failure that is seen in the final Record of Decision. Therefore, the final Record of Decision, not FERC approval, which triggers the ninety-day period in which to seek judicial review.

Use of the rate proceeding for that purpose that BPA did is inconsistent with SCE's contractual rights, inconsistent with the law of contracts and inconsistent with BPA's statutory authority. To argue, as BPA has, that SCE's cause of action is merely an ordinary appeal of rates of general application or that BPA is unfamiliar with the nature of SCE's claims is without any basis in fact or law.

## III.

## CONCLUSION

In this case, BPA has attempted to avoid its obligations under the Northwest Power Act and the Contract by taking an action inconsistent with the Contract. It has taken this action apparently without developing a full and complete administrative record with respect to its decision to breach its contractual and statutory obligations to SCE. It now asks this Court to shield it from any review of its actions by mischaracterizing the nature of the Petition for Review and complaining that the record is incomplete. The Northwest Power Act clearly provides for review of BPA's actions. If there is an incomplete record, it reflects only that BPA has failed its statutory obligations to develop a full and complete record and otherwise comply with the obligations of the Northwest Power Act prior to acting as it did. Neither basis for BPA's Motion to Dismiss is well founded and BPA's motion should be denied.

Dated this 13th day of August 2001.

Respectfully submitted,

Ann L. Fisher (LB)

BY: Ann L. Fisher
AF LEGAL & CONSULTING SERVICES
1425 SW 20th Street, Suite 202
Portland, Oregon 97201
Telephone: (503) 721-0181
Facsimile: (503) 223-2305
E-mail: energlaw@aol.com

Leon Bass, Jr.

BY: Leon Bass, Jr.
SOUTHERN CALIFORNIA EDISON CO.
2244 Walnut Grove Avenue, Room 359
Rosemead, California 91770
Telephone: (626) 302-6967
Facsimile: (626) 302-3990
E-mail: leon.bass@sce.com

# PROOF OF SERVICE BY U.S. MAIL/COURIER

I am a citizen of the United States, over 18 years of age, employed in the City and County of Los Angeles, and not a party of the subject cause. My business address is Southern California Edison Company, Law Department, 2244 Walnut Grove Avenue, Rosemead, California 91770.

On August 13, 2001 by use of first-class mail or courier, I served a copy of the following document **RESPONSE TO BONNEVILLE POWER ADMINISTRATION'S MOTION TO DISMISS** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes as follows:

David J. Adler
Special Assistant U.S. Attorney
Department of Energy
Bonneville Power Administration
P.O. Box 3621
Portland, Oregon 97208-3621

Thomas C. Lee
Senior Assistant U.S. Attorney
U.S. Attorney's Office
1000 SW Third Avenue
Suite 600
Portland, Oregon 97204

Peter J. Burger
Attorney
Bonneville Power Administration
P.O. Box 3621
Portland, OR 97208-3621

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 13, 2001, at Rosemead, California.

Ann M. Davey