UNITED STATES COURT OF APPEALS

FILED

01 OCT 19 AM 9:50

FOR THE NINTH CIRCUIT

OCT 16 2001

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

SOUTHERN CALIFORNIA EDISON COMPANY,

Petitioner,

v.

BONNEVILLE POWER ADMINISTRATION,

Respondent.

No. 00-70720

ORDER

Before: Peter L. Shaw, Appellate Commissioner

Respondent's motion to dismiss the appeal for lack of jurisdiction is denied without prejudice to renewing the arguments in the answering brief. *See National Indus. v. Republic Nat'l Life Ins. Co.*, 677 F.2d 1258, 1262 (9th Cir. 1982) (merits panel can consider appellate jurisdiction despite earlier denial of motion to dismiss).

The briefing schedule established previously shall remain in effect.

Peter L. Shaw
General Order 6.3(e)

S:\MOATT\Cmshords\10.01\ct\00-70720.wpd

# PROOF OF SERVICE BY U.S. MAIL/COURIER

I am a citizen of the United States, over 18 years of age, employed in the City and County of Los Angeles, and not a party of the subject cause. My business address is Southern California Edison Company, Law Department, 2244 Walnut Grove Avenue, Rosemead, California 91770.

On August 13, 2001 by use of first-class mail or courier, I served a copy of the following document **RESPONSE TO BONNEVILLE POWER ADMINISTRATION'S MOTION TO DISMISS** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes as follows:

David J. Adler
Special Assistant U.S. Attorney
Department of Energy
Bonneville Power Administration
P.O. Box 3621
Portland, Oregon 97208-3621

Thomas C. Lee
Senior Assistant U.S. Attorney
U.S. Attorney's Office
1000 SW Third Avenue
Suite 600
Portland, Oregon 97204

Peter J. Burger
Attorney
Bonneville Power Administration
P.O. Box 3621
Portland, OR 97208-3621

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 13, 2001, at Rosemead, California.

Ann M. Davey

UNITED STATES COURT OF APPEALS

FILED

01 OCT 19 AM 9:50

FOR THE NINTH CIRCUIT

OCT 16 2001

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

SOUTHERN CALIFORNIA EDISON COMPANY,

Petitioner,

v.

BONNEVILLE POWER ADMINISTRATION,

Respondent.

No. 00-70720

ORDER

Before: Peter L. Shaw, Appellate Commissioner

Respondent's motion to dismiss the appeal for lack of jurisdiction is denied without prejudice to renewing the arguments in the answering brief. *See National Indus. v. Republic Nat'l Life Ins. Co.*, 677 F.2d 1258, 1262 (9th Cir. 1982) (merits panel can consider appellate jurisdiction despite earlier denial of motion to dismiss).

The briefing schedule established previously shall remain in effect.

Peter L. Shaw
General Order 6.3(e)

S:\MOATT\Cmshords\10.01\ct\00-70720.wpd

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SOUTHERN CALIFORNIA EDISON COMPANY,<br><br>Petitioner,<br><br>vs.<br><br>STEPHEN J. WRIGHT, ACTING ADMINISTRATOR, BONNEVILLE POWER ADMINISTRATION; SPENCER ABRAHAM, SECRETARY, DEPARTMENT OF ENERGY; THE UNITED STATES OF AMERICA DEPARTMENT OF ENERGY ACTING BY AND THROUGH THE BONNEVILLE POWER ADMINISTRATION,<br><br>Respondents. | CASE NO. 70720<br><br>[1] MOTION OF PETITIONER SOUTHERN CALIFORNIA EDISON COMPANY FOR CLARIFICATION OF JURISDICTION; and<br><br>[2] DECLARATIONS OF ROBERT KENDALL and LEON BASS IN SUPPORT HEREOF; and<br><br>[3] MOTION TO SUSPEND BRIEFING SCHEDULE. |

Pursuant to the Federal Rules of Appellate Procedure, Petitioner Southern California Edison Company ("SCE") hereby requests the Court for an order clarifying its jurisdiction in this case.

In particular, SCE moves the Court to dismiss this matter under the same reasoning of the Federal Circuit in *City of Burbank v. United States*, ___F.3d___, 2001 U.S. App. LEXIS 26688 (Fed. Cir. Dec. 17, 2001) ("*Burbank*"), by finding that this is an action for a breach of contract, outside any administrative record, which does not arise under the Pacific Northwest Electric Power Planning and Conservation Act ("Northwest Power Act"), 16 U.S.C. § 839f(e)(5). SCE's claim relates solely to contractual provisions outside the specific requirements of the Northwest Power Act and thus resolution of these contractual disputes lie within the exclusive jurisdiction of the Court of Federal Claims ("CFC") under *Burbank*. Alternatively, SCE moves the Court for an Order accepting jurisdiction over the specific contract claims at issue, and thus specifically allowing SCE discovery and an evidentiary hearing with respect to its claims.

SCE moves the Court for a continuance of the briefing schedule. SCE's brief is due on December 19, 2001. However, if the Court does determine that jurisdiction is more properly before the Court of Federal Claims, a briefing schedule would not be necessary in this court. If the Court determines that jurisdiction is proper here, and consequently allows discovery and an evidentiary hearing, SCE requests that the briefing schedule be set such that no brief is due until thirty days following such hearing.

## I. NATURE OF THE CASE

In this proceeding, SCE seeks damages from BPA for BPA's breach of specific contractual provisions of an agreement between SCE and BPA relating

to an annual option to purchase 250 MW of capacity under specified terms and conditions from June through October under a contract for the sale and exchange of electric power.

In bringing this action, SCE is not seeking review of a final agency action or decision as those terms are used in the Northwest Power Act. BPA did not issue a Record of Decision respecting the amendment of SCE's Contract, did not provide Federal Register Notice of the proposed modifications to SCE's Contract, and did not establish an administrative record that purported to authorize the amendment of SCE's Contract. Instead, BPA, simply decided to apply a new rate not contemplated by the Contract on a take it or leave it basis.

The factors of an administrative record, notice in the Federal Register, and a final Record of Decision are necessary for jurisdiction to reside with this Court under the Northwest Power Act. None are available here to explain the rationale for BPA's effort to unilaterally amend the Contract. In fact, the only thing that the record does disclose is that SCE was expressly prevented from raising the contractual issues alleged in this matter during the rate proceeding that BPA claims makes up the complete record. BPA successfully resisted consideration of these issues throughout the administrative rate proceedings. When SCE challenged BPA's proposed rate at the Federal Energy Regulatory Commission ("FERC"), it argued again that the contractual issues were outside the scope of the action. Having taken the position that these contractual issues are outside the rate proceeding and thus the record in the proceedings below, BPA cannot now argue that this dispute is a review of a rate or that the record submitted herein reflects the matters in dispute.

As this Court has previously recognized, an interpretation that required virtually any case to be heard in this Court would make a nullity out of language in the Northwest Power Act requiring that actions not arising out of the

claims identified in the Act would be brought in "other courts." 16 U.S.C. § 839f(e)(5). The Federal Circuit came to the same conclusion as has this Court after looking at the language in 16 U.S.C. § 839f(e)(5). It therefore declined "to render this language [suits challenging other actions rests with the appropriate courts] superfluous." ___F.3d ___, 2001 U.S. App. LEXIS at *25. The Federal Circuit then considered which action would be exclusive to the Ninth Circuit and determined that Section 839f(e)(5) contemplates that "where disputed contract provisions are statutorily mandated or are arrived at via an administrative hearing under the APA in which the pertinent facts are reflected in an administrative record, the Ninth Circuit possesses exclusive jurisdiction. In contrast, where, as here, the alleged breaches were freely negotiated in an arms-length transaction .... Such claims must be brought in the Court of Federal Claims." *Id.* at *25. In this case, there is no administrative record following an administrative hearing addressing BPA's amendment of SCE's contract, the appropriateness of amending it or the basis of that decision. There is no statutory mandate for the contractual provisions at issue. The only administrative record addressing this case purposely limits its scope to the correction of errors BPA purports to have made to the FPS-96 rate schedule. However, the issue before this Court is *not* the development of a rate but what the *Contract requires* with respect to purchasing (and pricing) capacity under the option to purchase capacity and whether BPA has breached those provisions by unilaterally applying a different price to the capacity which SCE is entitled to purchase.

## II. BACKGROUND

BPA markets electric power generated in federally owned hydroelectric facilities in the Pacific Northwest. BPA is statutorily required to give preference to customers, including cooperatives, public utilities and "direct service industries," in the Pacific Northwest pursuant to Public Law No. 88-552, known as

the Regional Preference Act, 16 U.S.C.§ 837 *et seq*. BPA is authorized to sell Surplus Energy and Surplus Peaking Capacity to entities outside the region. Regional Preference Act, 16 U.S.C. § 837(a) and the Northwest Power Act.[1] Section 2 of the Regional Preference Act specifically addresses the arrangements by which BPA may enter into sales and exchanges with non-regional entities. These provisions are not at issue here. The only issue is this matter is the meaning to be given to contract provisions regarding an option to purchase, provisions not required or implicated by the Northwest Power Act.

**A. The 1988 Sale And Exchange Agreement**

In 1988, following lengthy negotiations, SCE and BPA entered into a 20-year Sale and Exchange Agreement, Contract No. DE-MS79-88BP 92275 (the "Contract" as referenced above). BPA went through an extensive administrative process regarding the Contract, culminating in formal approval by the Federal Energy Regulatory Commission. FERC Docket No. EF89-2061-000 and ER89-52-000 (1989). As part of the negotiations of the Contract, BPA agreed to give SCE an option to purchase an additional 250 MW of capacity during specified periods of the year and under negotiated pricing terms. These considerations were expressly acknowledged by FERC in approving the contract. EF89-2061-000 and ER89-52-000.

SCE insisted on specific language in the Contract to provide an objective standard to be applied to the price-setting process. Kendall Declaration, ¶ 5. The pricing mechanism provided assurance to SCE that the price under the

[1] Section 12 (a) of the Contract states, in pertinent part: "Upon [SCE's] request, and in addition to other obligations under this Agreement, [BPA] shall provide 250 MW of capacity to [SCE] on the same delivery terms as Peaking Energy specified in section 7(a)."

option would be equivalent to that being charged to BPA's regional customers for the purchase if surplus firm power. Kendall Declaration ¶5.

In 1999, BPA decided that it would not charge for capacity under the Contract using the designated pricing mechanism. Instead, BPA initiated a "special rate making" process by notice in the Federal Register on August 19, 1999 which was by its very terms inconsistent with the Contract. The process was an expedited proceeding designed to alter the essential structure of the Contract's option for the purchase of additional capacity. BPA asserted a right to unilaterally amend the contract by way of this "special rate proceeding." BPA stated that the new price developed in the proceeding would apply only to contracts entered into prior to 1996 and identified only one contract to which the rate would apply – SCE's contract. Thus, while BPA proceeded under the cover of a rate proceeding, it was in fact only changing one contract and the proposed rate had completely different characteristics than the negotiated pricing mechanism in the Contract. This is precisely the antithesis of what SCE bargained for.

**B. BPA's Breach.**

The issue before this court is a simple one. BPA has unilaterally altered the pricing structure agreed upon in a bilaterally negotiated contract. Such a contract cannot be amended except by mutual agreement of the parties.

BPA's attempt to unilaterally amend the contract gives rise to a contract action that is not addressed by BPA's enabling statutes. Therefore, SCE's claim is not a challenge to a final action contemplated by the Northwest Power Act. SCE has a right to damages resulting from BPA's action and to a declaration that BPA cannot avoid its contractual obligations by use of its general rate making authority. The lack of record and the absence of any administrative hearing

identifying why or how BPA is authorized to amend the Contract, are strong evidence that the CFC should have jurisdiction over this type of claim.

Compare what BPA did with respect to modifying the Contract to what it did when the Contract was executed in 1988. BPA's entry into the Contract in 1988 was considered a "final action." It was attended by a number of other steps. For example, at that time BPA prepared an extensive record of decision, including an environmental impact analysis. BPA requested and obtained Federal Energy Regulatory Commission approval. January 10, 1989, Order granting approval, EF89-2061-000; ER89-52-000. Bass Declaration. On the other hand, when BPA unilaterally amended the Contract by use of a rate proceeding, it did no environmental assessment with respect to the modification of contract. It did not submit the modification to FERC and it prepared no Federal Register Notice detailing its authority to unilaterally modify a contract. Nothing in the rate proceeding addressed these issues and SCE was prevented from raising them in those proceedings.

### C. BPA's claim that this amendment reflects a need to recover costs is a red herring.

BPA implicitly claimed a right to unilaterally amend the Contract by asserting an obligation to collect sufficient revenues to cover costs. BPA stated in the Initial Proposal that over time, costs associated with this provision of the Contract require a different rate than one contemplated by the parties at the time of execution In order for BPA to recover its costs. While ordinarily BPA has a general obligation to set rates sufficient to assure treasury repayment, that is not an issue for resolution here since BPA agreed not to do so pursuant to the Contract. BPA expressly stated this in its filing with FERC:

> Finally, the transaction with SCE will allow BPA to sell surplus power at a rate higher than it otherwise might

> receive. The short-term economy energy market is BPA's most reasonable alternative to long-term sales. The proposed rate is set above the opportunity cost. ROD, 14. *To the extent that full costs are not recovered, BPA will adjust rates to other customer classes in the future to assure full recovery of BPA's full revenue requirement. ROD, 16.* (Emphasis added.)

Bonneville Power Administration Memorandum in Support of Request For Approval of Modified Rate Schedule filed in support of the approval for SCE Contract quoting the Final Record of Decision respecting the SCE Contract, a copy of which is attached to and incorporated in the Declaration of Leon Bass filed herewith.

In approving the Contract, FERC acknowledged the possibility that the Contract would not recover all costs and that other customers, not SCE, would bear the burden: Docket no. EF89-2061-000 and ER-52-000, pages 6 and 7. Bass Declaration. Thus, it was the parties' intent that the price for the capacity described in the Contract would continue to be priced as described in the Contract and that BPA would not later try to revise it in order to recover costs or otherwise.

Nothing in the Contract, the accompanying negotiations, or the submittals for approval authorizes BPA to collect any actual or perceived shortfall from SCE. The application of the new rate is not authorized by the Contract nor is it authorized or required by any of the statutes applicable to BPA. There is not one statute, including those conferring substantial discretion in carrying out BPA's stated duties, which authorizes BPA to unilaterally amend any contracts, including those originally entered into under the Northwest Power Act.

This court should therefore defer to the CFC for development and resolution of these contractual issues consistent with the Federal Circuit's ruling,

particularly since it will be necessary to fully develop an evidentiary record.[2] In light of the significant damages arising as a result of BPA's breach, if this court accepts jurisdiction over these contract issues, the development of the evidentiary record and potentially an award of damages resulting from BPA's breach will be required. This is particularly necessary since BPA did not develop an administrative record related to the contract provisions that it seeks to modify. It took no steps to seek approval for any contract amendment. It only filed a "special rate proceeding" specifically limited to rate issues and expressly did not address the contract Issues. The Northwest Power Act gives broad, but circumscribed, jurisdiction to this Court and as a result, this Court should defer to the CFC for final resolution.

**D. Northwest Power Act Limitations Period**

SCE filed its Petition in this matter on June 16, 2000. It did so as a protective measure to avoid the running of the jurisdictional statute of limitations. Section 839f(e)(5) of the NW Power Act requires that suits seeking review of certain defined BPA "final actions and decisions and the implementation of such final decisions" be filed in this Court. Parties seeking review under that section must file such suits "within ninety days of the time such action or decision is deemed final." This Court has itself commented that, "The language in section 839f(e)(5) has proved troublesome, in part because Congress did not explain what it meant when it provided for exclusive jurisdiction in this court for some suits and for jurisdiction in 'an appropriate court' for other suits." *Public Utilities District No. 1 of Clark County v. Johnson*, 855 F.2d 647, 649 (9th Cir. 1988) ("*Clark County*"). Because the Northwest Power Act has a short 90-day limitations period, SCE filed the instant action. 16 U.S.C. § 839f(e)(5). Without conceding that an

2 If the Court retains jurisdiction, SCE requests that it permit discovery and an evidentiary hearing.

event has occurred to trigger that limitations period, SCE filed this action to ensure compliance with the required limitations period in the Northwest Power Act.

**E. BPA's Prior Motion to Dismiss.**

BPA previously moved to dismiss SCE's petition on the ground that the petition did not allege a "final action based upon its assertion that SCE was challenging BPA's rate authority and the FPS 96R rate which had not yet received final approval from FERC." SCE opposed the motion on the ground that it was not challenging a final action *as described by BPA*, since SCE was not challenging the original contract execution in 1987 nor was it challenging to BPA's general authority to set rates. In addition, the remedy BPA sought was to dismiss SCE's claims in a way that would have prevented SCE from bringing its claims to a proper tribunal for resolution.

## III. THE TUCKER ACT AND THE CONTRACT DISPUTES ACT VEST THE CFC WITH JURISDICTION OVER CONTRACT ACTIONS AGAINST THE UNITED STATES.

The Tucker Act vests jurisdiction in the CFC for actions against the United States for breach of contract that are in excess of $10,000. 28 U.S.C. § 1346(a)(1). The Contract Disputes Act establishes a procedure for pursuing such a claim. Briefly, a party that asserts the United States has breached a contract may file a claim with the contracting officer of the relevant agency. 41 U.S.C. § 605(a). If the contracting officer denies the claim, the party may appeal either to the agency's contract appeals board or to the CFC, where it is entitled to a *de novo* trial, albeit without a jury. 41 U.S.C. § 609(a).

BPA has conceded from virtually the start of this dispute that the disagreement regarding the Contract is distinct from the rate case it initiated and litigated through the FERC. SCE attempted to raise the breach of contract claim during the expedited rate proceeding and was summarily told by the administrative

law judge handling the matter, without objection or modification by BPA, that those claims were inappropriate for the rate case and must be brought elsewhere:

> Now its application to the contract with Southern California Edison may be a matter of dispute, which it obviously is and is going to turn upon a legal interpretation of the contract terms and conditions of that contract and the application of the superseding rate schedule. That in and of itself is not an issue we're here to resolve today. ... *That is something that you are going to have to do at another time and place.*

Transcript of Proceedings, at 139, lines 8-18, November 22, 1999 (emphasis added). Indeed, BPA's counsel stated, "...Whether we terminated the agreement is strictly a contract matter..." *Id.* at 171, lines 17-21. To the same effect, *see id.* At 137 (lines 7-14); 138 (lines 2-8); and 140 (lines 23-25, page 141, (lines 1-12); 163 (lines 9-23); 164 (lines 9-25). Accordingly, the proper forum for this action, in which SCE seeks damages from BPA, is the CFC.

This action is the "other action" contemplated by the Northwest Power Act and therefore should be heard in the court with which the United States has delegated the authority to adjudicate contract disputes. There is no administrative record in this matter reflecting the basis of BPA's decision to reprice the Option Capacity, thereby amending the contract provisions as it did. Under these circumstances, the CFC is the more appropriate court, particularly in light of the Northwest Power Act's recognition that certain "other actions" are better brought in other courts than the Ninth Circuit.

This is consistent both with the Federal Circuit Court's decision in the *Burbank*, and with a prior ruling of this Court in which it recognized that certain contract claims such as SCE's are not properly in the Ninth Circuit:

> "We therefore hold that claims involving alleged contractual breaches by the agency based on allegation of

> facts outside an administrative record must be heard in the Claims Court...

*Pub. Util. Dist. No. 1 of Clark County v. Johnson*, 855 F.2d at 650.

In the cases in which this Court has found insufficient contractual issues to relinquish jurisdiction to the CFC, the provisions at issue were specific to the Northwest Power Act. *E.g.*, *CP National v. Jura*, 876 F2d 745 (9th Cir 1989) (contract claims arose out of contract provisions required by the Northwest Power Act); *Central Montana Electric Power Cooperative v. Bonneville Power Administration*, 840 F.2d 1472 (9th Cir. 1988) (issue originated under the rights afforded cooperatives under the Northwest Power Act); and *Pacific Power & Light v BPA*, supra, (Issue related to the contracts offered to DSIs under the authority of the Northwest power Act). Here, SCE's claims relate to contractual terms covering an option to purchase additional capacity which, were not required by the Northwest Power Act.

This Court's cases establish the scope of § 838*f*(e)(5). In *Clark County*, this Court considered the interplay between the Tucker Act and the Regional Act's jurisdictional provisions. There, the complaint purported to set forth claims against BPA for (1) breach of an oral or implied in fact contract; (2) negligence in failing to fulfill duties under the NW Power Act requiring BPA to execute an oral or implied in fact contract; and (3) arbitrarily and capriciously deciding not to purchase power from the plaintiff. The alleged oral or implied-in-fact contract was BPA's alleged commitment to purchase power from the plaintiff that was generated by a third party. This Court held that jurisdiction over the breach of contract claims lay in the Claims Court (the predecessor to the CFC) and jurisdiction over the negligence claim lay in the district court. 855 F.2d at 651. It reasoned that "Congress did not contemplate that all actions against the BPA would be filed in this court." The Court stated: