**No. 03-2869C**
**(Judge Lettow)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**SOUTHERN CALIFORNIA EDISON,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**MARTIN F. HOCKEY, JR.**
**Senior Trial Counsel**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit**
**8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Telephone: (202) 307-6288**

**Attorneys for Defendant**

**OF COUNSEL:**

**JON D. WRIGHT**
**RICHARD A. GREENE**
**Office Of General Counsel**
**Bonneville Power Admin.**
**905 N.E. 11th Avenue**
**Portland, OR 97208**

**March 11, 2005**

## TABLE OF CONTENTS

**Page**

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ........ 1

I. Standard For Review ........ 3

II. This Court Lacks Jurisdiction Under Burbank II ........ 4

A. SCE Is Challenging The Development And Implementation Of A Bonneville Rate ........ 4

B. SCE's Attempt to Avoid A Plain Reading Of Burbank II Must Be Rejected ........ 6

1. The Facts In This Case Are Distinguishable From Those In Burbank II ........ 6

2. Burbank II Does Not Require A Separate Administrative Hearing To Incorporate A Preexisting Rate Into A Contract ........ 8

3. SCE's Interpretation Of Burbank II Eviscerates Ninth Circuit Jurisdiction Over Rate Making ........ 9

III. The Ninth Circuit's Transfer Order Did Not "Implicitly" Determine This Court's Jurisdiction ........ 11

IV. SCE Mischaracterizes BPA's Arguments ........ 13

V. The Ninth Circuit's Recent Pronouncements Concerning The Scope Of That Court's Exclusive Jurisdiction Should Be Considered ........ 13

VI. The True Nature of SCE's Challenge Is To Rate Implementation ........ 16

CONCLUSION ........ 19

## TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

Boston Edison Co, v. United States,
__ Fed. Cl.__, 2005 WL 375603 (2005) .................... 3

CP National Corp. v. Jura,
876 F.2d 745 (9th Cir. 1989) .................... 17

City of Burbank v. United States,
273 F.3d 1370 (Fed. Cir. 2001) .................... passim

City of Burbank v. United States,
47 Fed. Cl. 261 (2000), rev'd, 273 F.3d 1370 (Fed. Cir. 2001) .................... 14

City of Seattle, et al. v. Johnson,
813 F.2d 1364 (9th Cir. 1987) .................... 13

Clearwater Constructors, Inc. v. United States,
56 Fed. Cl. 303 (2003) .................... 3

DynCorp Information Systems, LLC v. United States,
58 Fed. Cl. 446 (2003) .................... 15, 16

Forelaws on Board v. Johnson,
709 F.2d 1310 (9th Cir. 1983) .................... 10

M-S-R v. Bonneville Power Admin.,
297 F.3d 833 (9th Cir. 2002) .................... 3, 17

Pacific Power & Light Co. v. Bonneville Power Admin.,
795 F.2d 810 (9th Cir. 1986) .................... 3, 10, 17

Public Utility District No. 1. of Clark County v. Johnson,
855 F.2d 647 (9th.Cir. 1988) .................... 12, 15

Puget Sound Energy v. United States,
303 F.3d 613 (9th Cir. 2002) .................... 11

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

Puget Sound Energy v. United States,
310 F.3d 613 (9th Cir. 2002) .......... 3, 14

Puget Sound v. United States,
47 Fed. Cl. 506 (2000) .......... 14

Transmission Agency of Northern California v. Sierra Pacific Co.,
295 F.3d 918 (9th Cir. 2002) .......... 13, 14, 15

Ramcor Services Group, Inc. v. United States,
41 Fed. Cl. 264 (1998) .......... 3

**Federal Statutes** **Page(s)**

16 U.S.C. 839c(a) .......... 9

16 U.S.C. § 839f(e)(i)(5) .......... 5, 10, 15

16 U.S.C. §§ 839f(e)(1)(G) .......... passim

16 U.S.C. § 839f(e)(5) .......... 4, 8, 10

28 U.S.C. §1631 .......... 12

**Federal Regulations** **Page(s)**

51 Fed. Reg. 47108 (1986) .......... 5

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SOUTHERN CALIFORNIA EDISON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 03-2869C** |
| | ) | **(Judge Lettow)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY**
**TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

In our moving brief, we demonstrated that Southern California Edison's ("SCE") challenge to the Bonneville Power Administration's ("Bonneville" or "BPA"), rate making decision falls outside of this Court's jurisdiction. SCE responds by attempting to characterize its challenge as grounded in contract. However, regardless of how SCE attempts to characterize its claim, SCE is challenging a rate. Specifically, SCE challenges a rate that was:

1) developed through Bonneville's statutory authorities;

2) established in a formal evidentiary hearing required by the Northwest Power Act (including the creation of an administrative record); and

3) implemented, in part, by applying it to the Option Capacity product available under SCE's Sale and Exchange Agreement with Bonneville.

This Court lacks jurisdiction to consider such a claim.

As demonstrated below, SCE fails to establish that jurisdiction lies with this Court, and, indeed, its description of the dispute supports dismissal. As stated by SCE in its response:

> Bonneville refused to apply the successor rate, which all parties agree was FPS-96, and instead sought to apply a different rate. The successor rate to SP-87 (previously found in the FPS-96 rate schedule) is still listed today in the FPS-96R rate schedule (the demand charge associated with the contract rate) and should be the price paid by SCE.

SCE's Opposition Brief ("Opp.") at 8. Thus, by SCE's own admission, the dispute centers upon

the development of Bonneville's rates and the implementation of its rate schedules.[1] SCE has every right to disagree with how Bonneville developed and implemented the rate for Option Capacity. However, the question presented is not which party is right or wrong, but which court possesses jurisdiction to resolve the dispute. Under all relevant statutory and case law, including City of Burbank v. United States, 273 F.3d 1370 (Fed. Cir. 2001) (Burbank II), the answer is plain: any dispute regarding the development and/or implementation of a Bonneville rate is within the exclusive province of the Court of Appeals for the Ninth Circuit and not this Court.

As we establish below, SCE's various responses to our motion are without merit. First, SCE's discussion of the standard for review ignores the ultimate burden that it fails to meet in this case. Second, SCE misinterprets the Federal Circuit's decision in Burbank II. Third, SCE erroneously contends that the Ninth Circuit has already established this Court's jurisdiction in this matter. Fourth, SCE's contention that we argued before the Ninth Circuit that this Court possessed jurisdiction over the issue presented in this appeal is unsupported. Finally, in contrast to SCE's suggestion, recent Ninth Circuit pronouncements concerning the interplay between the Northwest Power Act's vesting of exclusive jurisdiction with the Ninth Circuit involving Bonneville action and this Court's jurisdiction pursuant to the Tucker Act should not be ignored. As we establish once again in the final section of this response, the "true nature" of Bonneville's action must be considered and, when considered in this case, it is clear that jurisdiction to consider SCE's claim in this action must lie with the Ninth Circuit.

---

[1] As noted in the quoted passage, the initial rate for Option Capacity was a rate taken from BPA's SP-87 rate schedule. The SP-87 rate schedule, and the applicable rate, was superseded by the SP-89, SP-91, SP-93, FPS-96, and FPS-96R rate schedules, as pointed out in our moving brief. Motion to Dismiss ("Br.") at 9. Throughout the term of the Agreement, Bonneville possessed the legal authority to modify the initial rate to recover its costs, and that right was explicitly preserved by unambiguous contractual terms to which SCE agreed and is now bound.

I. Standard For Review

SCE bears the burden of proving by a preponderance of the evidence that this Court possesses jurisdiction to consider the present dispute. See Ramcor Services Group, Inc. v. United States, 41 Fed.Cl. 264, 266-67 (1998); Clearwater Constructors, Inc. v. United States, 56 Fed.Cl. 303, 307 (2003). In this case, SCE must show that the "true nature" of the BPA action being challenged is purely contractual in nature and not based on or rooted in the creation or implementation of a BPA rate. See M-S-R v. Bonneville Power Admin., 297 F.3d 833, 840 (9th Cir. 2002); Pacific Power & Light Co. v. Bonneville Power Admin., 795 F.2d 810, 816 (9th Cir. 1986). As demonstrated below, SCE cannot meet this burden.

The "true nature" of SCE's claim, even under principles articulated in Burbank II, relates to the development and implementation of a rate subject to Bonneville's statutory ratemaking authority. As discussed more fully below, SCE's Option Capacity price is a BPA rate. The "true nature" of SCE's present challenge is to the alleged misapplication of that rate – an action that is a quintessential rate implementation issue – and falls squarely within those matters explicitly listed as being subject to the Ninth Circuit's exclusive jurisdiction under Section 9(e) of the Northwest Power Act. 16 U.S.C. §§ 839f(e)(1)(G); 839f(e)(5). Accordingly, this Court lacks jurisdiction, and should grant our motion to dismiss. As this Court has recently noted, even if this claim is otherwise cognizable under the Tucker Act, "the jurisdictional terms of the Northwest Power Act displace the generally applicable provisions of the Tucker Act, and as a result this court is divested of the jurisdiction it would otherwise have." Boston Edison Co. v. United States, --- Fed. Cl. ---, 2005 WL 375603, at *5 (2005); See also Puget Sound Energy v. United States, 310 F.3d 613, 627 (9th Cir. 2002).

II. This Court Lacks Jurisdiction Under Burbank II

A. SCE is Challenging the Development And Implementation of a Bonneville Rate

The central issue before this Court is whether the price component of the Option Capacity product SCE purchased under its Sales and Exchange Agreement is a Bonneville "rate." See Opp. at 12-13; Br. at 21-22. If the Option Capacity product was sold at a Bonneville rate, then BPA was authorized by statute (and as explicitly memorialized in the Agreement) to adjust that rate by following the procedural and substantive requirements of the Northwest Power Act. Accordingly, challenges to the rate's development and implementation are subject to the exclusive jurisdiction of the Ninth Circuit under section 9(e) of the Northwest Power Act. 16 U.S.C. §§ 839f(e)(1)(G); 839f(e)(5). Based on a plain reading of Burbank II[2], and the contract language, the Option Capacity price is a rate.

In Burbank II, the Federal Circuit found that an alleged breach of contract challenges an action taken "pursuant to" the Northwest Power Act in at least two instances: "(1) when the contractual provision is mandated by the Act; or (2) when the contractual provision is a rate the BPA set by following the procedural requirements of § 839e(i), including notice-and-comment and the generation of an administrative record." Burbank II, 273 F.3d at 1379-80 (emphasis omitted). Only the second prong of this test, dealing with rates, is relevant to resolution of the instant dispute.

The Federal Circuit gave unambiguous guidance as to how to determine "when the

---

[2] Burbank II articulates a jurisdictional standard for review of Bonneville actions that may differ in some respects from the standard established by the Ninth Circuit, and may be more restrictive than the Ninth Circuit standard. Nevertheless, in the instant case, this broader issue of the scope of this Court's jurisdiction over Bonneville actions need not be resolved because, as demonstrated above, even under the standard articulated in Burbank II, this Court lacks jurisdiction over this case.

contractual provision is a rate": if the *price* in the agreement for the applicable product points the purchaser directly to a BPA rate schedule, then the contract contains a "rate." See Burbank II, 273 F.3d at 1381. Challenges to such provisions must be filed in the Ninth Circuit. Id.[3]

There can be little dispute that SCE's contract contained a BPA "rate" for Option Capacity. The contract expressly incorporates a rate from BPA's SP-87 rate schedule as the price to be paid for Option Capacity:

> Edison shall pay for Option Capacity at the demand charge associated with the contract rate of Bonneville's SP-87 rate schedule or if the SP-87 rate schedule is no longer in effect, a successor rate schedule.

Agreement § 12(a)(4) (emphasis added).

The SP-87 rate schedule was developed in a hearing pursuant to section 7(i) of the Northwest Power Act, which included the development of an administrative record. See 54 FERC ¶ 61,235; 51 Fed. Reg. 47108, 47120-21 (1986) (announcing formal evidentiary hearing); 16 U.S.C. § 839e(i)(5). BPA's flexibility to change the SP-87 rate was preserved by the express language of contract section 12(a)(4), which states that SCE is subject to "successor rate schedules." In addition, section 3(b)(1) of the General Contract Provisions ("GCPs"), which are part of the Sale and Exchange Agreement, provides:

> To the extent the contract references Bonneville rates or rate schedules of general applicability for purposes of payment for electric power, capacity or energy made available, the following provisions apply:
>
> Bonneville shall establish and periodically review and revise rates for the sale and disposition of electric power, capacity or energy sold pursuant to the terms of this contract. Such rates shall be established in accordance with applicable law.

[3] The "administrative record" prong is automatically met because every Bonneville rate and rate schedule must be developed pursuant to the procedural requirements of section 7(i) of the Northwest Power Act, which require a formal evidentiary hearing and the development of an administrative record that explains the basis for the resulting rate. 16 U.S.C. § 839e(i)(5) ("The Administrator shall make a final decision establishing a rate or rates based on the record . . .")

(Emphasis added).

SCE admits that the price in its contract is tied *directly* to a posted Bonneville rate in the SP-87 rate schedule, which could "rise or fall according to the rate cases Bonneville brought to set the successor rates." Opp. at 20-21. Thus, there is no question that the price for SCE's Option Capacity in the Sales and Exchange Agreement is tied *directly* to a posted BPA rate schedule and its successor. Because SCE is attempting to challenge a Bonneville rate and its implementation, this Court lacks jurisdiction over the present claim.

B. SCE's Attempt to Avoid a Plain Reading Of Burbank II Must Be Rejected

SCE attempts to avoid a plain reading of Burbank II in two ways. First, SCE contends that its contract did not contain a "rate" for Option Capacity. Instead, SCE maintains that pricing for Option Capacity is analogous to the pricing adjustment methodology appearing in the contractual provision relevant to the Burbank II dispute. Opp. at 13, 18-19. Second, SCE attempts to expand the holding in Burbank II by arguing that a preexisting BPA rate loses its rate characteristics when incorporated into a contract unless it is subjected to another section 7(i) evidentiary hearing process. Opp. at 21-23. SCE is mistaken. As established below, both arguments are unsupported by a plain reading of Burbank II, the Northwest Power Act, and twenty-four years of Ninth Circuit precedent. Therefore, SCE's arguments must be rejected.

1. The Facts In This Case Are Distinguishable From Those In Burbank II

SCE argues that the facts in this case are very similar to the facts in Burbank II. SCE is incorrect. The rate escalation benchmark at issue in Burbank II bears no similarity to the rates charged for Option Capacity under the SCE Agreement.

In Burbank II, the contract under review contained a price adjustment provision that

reflected the average rate increase or decrease faced by Bonneville's customers in the Pacific Northwest purchasing power under Bonneville's Priority Firm ("PF") rate schedule. 273 F.3d at 1375. The adjustment was based upon Bonneville's average PF rates. When the PF rates were adjusted in a rate proceeding, Bonneville would average its new PF rates and previous PF rates, as provided for in the contract, and then adjust the contract price by a ratio comprised of the new PF rates over the old PF rates. Id. The Court noted that the PF rate was not developed for making sales of surplus power that was being provided to the City of Burbank or other extra-regional customers. Id. at 1381. In fact, the City was not eligible to purchase power under any PF rate schedule. The PF rates were simply used as an index, or "benchmark," for adjusting the base rate. Id. The court found that resolution of the dispute, therefore, involved contract interpretation. Id.

There is no analogy to be drawn between the rate adjustment formula at issue in the contract under review in Burbank II, and the rates agreed to by SCE for the Option Capacity product. Neither the rate for Option Capacity nor the means by which it would be adjusted is a negotiated term of the SCE Agreement. The parties agreed by contract that payment for Option Capacity would be made pursuant to a specific rate appearing in a Bonneville rate schedule. Agreement § 12(a)(4). SCE was eligible to purchase under the SP-87 rate schedule and its successors, which were the only rate schedules under which SCE, an extra-regional customer, could be eligible to purchase capacity from Bonneville. The rate was to be adjusted through Bonneville's contractual and statutory authority to "review and revise" its rates by developing successor rate schedules. Agreement, Exhibit B, GCP § 3(b)(1). The initial rate schedule, and its successors, were all established pursuant to Bonneville's statutory ratemaking authority, including the creation of an administrative record.

Thus, SCE's challenge to the application (or misapplication) of the SP-87 rate schedule or any of its successors, under both Burbank II and Ninth Circuit law, is a challenge to final agency action — i.e., the implementation and development of a rate—taken pursuant to Bonneville's statutory authority. 16 U.S.C. §§ 839f(e)(1)(G); 839f(e)(5).

2. Burbank II Does Not Require A Separate Administrative Hearing To Incorporate A Preexisting Rate Into A Contract

SCE argues that challenges to a rate incorporated into a contract from an existing and already approved BPA rate schedule does not satisfy the "rate" requirement of Burbank II. Rather, SCE theorizes that BPA is required to embark upon another section 7(i) hearing, with the generation of another administrative record specific to that contract term, in order for the Ninth Circuit to obtain jurisdiction. Opp. at 21. Conveniently, since BPA did not subject section 12(a)(4) of the contract to a section 7(i) process when the contract was executed, SCE maintains that the reference to SP-87 can only be viewed as a "negotiated price" rather than an incorporation of a BPA rate. Opp. at 13, 22. Essentially, then, SCE argues that the rate from the SP-87 rate schedule was a Bonneville rate subject to the Ninth Circuit's exclusive jurisdiction until it was incorporated in the Agreement as the pricing term for Option Capacity.

This argument is wholly unsupported. Nowhere does Burbank II suggest that a contract provision which *directly* incorporates a preexisting BPA rate be subjected to a second administrative hearing to preserve the price provision's identity as a "rate" for purposes of the Ninth Circuit's exclusive jurisdiction. In fact, Burbank II stands for just the opposite. The Federal Circuit's holding states only that if the "contract provision is a rate that BPA set by following the procedural requirements of [Section 7(i)], including notice-and-comment and the generation of an administrative record," then the Ninth Circuit possesses jurisdiction. Id. at 1380

(emphasis added). This statement means only that if a litigant is challenging a pricing provision which is *itself* an existing BPA rate, then the true nature of the claim is a challenge to a rate, subject to the Ninth Circuit's exclusive jurisdiction. See Burbank II, 273 F.3d at 1381.

In this case, section 12(a)(4) of the contract provides that the SP-87 rate schedule contains the applicable rate for Option Capacity. That initial rate was subject, at all times, to Bonneville's statutory authority to review and revise its rates – including the development of successor rate schedules – in accordance with applicable law. The SP-87 rate schedule and all successor rate schedules were set pursuant to a section 7(i) hearing. Unlike the contract provision at issue in Burbank II, there are no further methodologies, price adjustments, or escalators to be found in section 12(a)(4) of the contract– only the unambiguous identification of a rate under the SP-87 rate schedule and its successors. Compare Burbank II, 273 F.3d at 1381 (discussing the "price adjustment" provision). Thus, SCE's challenge to how BPA developed or implemented the SP-87 or any of its successors, including issues related to the FPS-96R rate schedule fall within the Ninth Circuit's exclusive jurisdiction over Bonneville's rates. 16 U.S.C. §§ 839f(e)(1)(G); 839f(e)(5).

3. SCE's Interpretation Of Burbank II Eviscerates Ninth Circuit Jurisdiction Over Rate Making

SCE's interpretation of Burbank II would essentially eviscerate the Northwest Power Act's carefully crafted provisions governing the development and review of Bonneville's rates. Section 5(b) of the Northwest Power Act requires that "[a]ll power sales under this Act" shall be "at rates established pursuant to section 7." 16 U.S.C. 839c(a). Bonneville establishes rates in section 7(i) hearings, and receives FERC approval of all such rates, so that the rates are available to be charged under Bonneville's power sales contracts with its customers. BPA has hundreds of

contracts with its customers for the sale of power, all of which necessarily identify and incorporate the rate that applies to the contract. If BPA had to not only conduct a section 7(i) evidentiary hearing to first establish a rate (such hearings can take a year), but also conduct a new evidentiary hearing for each of BPA's hundreds of contracts that reference BPA's rates, BPA would not be able to conduct its business. Every transaction would become embroiled in constant and purposeless administrative processes necessary to preserve the Ninth Circuit's exclusive jurisdiction over BPA's rates under section 9(e) of the Northwest Power Act.

In essence, SCE's expansive reading of Burbank II would create a potential contract claim, cognizable under the CDA and the Tucker Act, every time Bonneville incorporated a rate schedule in its contracts. Parties would, in almost all instances, have three opportunities to challenge BPA's rate development and implementation. First, the parties could challenge the rate itself in the section 7(i) hearing BPA initiated to establish the rate. 16 U.S.C. § 839e(i). Then, the parties could challenge the rate, and the implementation of the rate, in the Ninth Circuit. 16 U.S.C. §§ 839f(e)(1)(G); 839f(e)(5). Later, the parties could challenge the rate under the theory that it is not the appropriate rate for their contract, and bring a claim in this Court.

Such bifurcated and protracted review of BPA rates and rate implementation decisions is contrary to Congress' explicit review mechanism in the Northwest Power Act. 16 U.S.C. § 839f(e)(5) ("Suits to challenge . . . final actions and decision taken pursuant to this chapter by the Administrator . . . shall be filed in the United States court of appeals for the region.") Pacific Power & Light v. BPA, 795 F.2d 810, 815 (9th Cir. 1986); Forelaws on Board v. Johnson, 709 F.2d 1310, 1312 (9th Cir. 1983). Indeed, allowing the present dispute to continue before this Court would frustrate the two-fold legislative purpose of expedited review of BPA actions in the Ninth Circuit and uniformity in interpretations of the Northwest Power Act. See Pacific Power

& Light, 795 F.2d at 815. Moreover, the Ninth Circuit has already held that to the extent that a remedy under the CDA is in conflict with those afforded under the Northwest Power Act, then the CDA is inapplicable. See Puget Sound Energy v. United States, 303 F.3d 613, 627-628 (9th Cir. 2002) (six year statute of limitations under CDA is incompatible with explicit ninety day review of BPA final actions under 16 U.S.C. 839f(e)(5) of the Northwest Power Act).

Finally, accepting SCE's expansive reading of Burbank II would create an immediate conflict between the Ninth Circuit's exclusive jurisdiction to review challenges to BPA's rates and this Court's jurisdiction to consider Bonneville contract claims. Such an expansion would effectively enable this Court to overrule prior Ninth Circuit decisions concerning the same rate. As noted above, all of Bonneville's rates are ultimately incorporated into contract provisions, many of which are very similar to the contract provision at issue here. Allowing litigants to challenge a rate's application to their respective contracts under the CDA's six-year statute of limitations period, as SCE suggests, would leave BPA with no certainty regarding its rate levels during the entire effective period for the rate, which generally cannot exceed five years.[4] SCE's interpretation of Burbank II is unsupported, contrary to law, and should be rejected.

## III. The Ninth Circuit's Transfer Order Did Not "Implicitly" Determine This Court's Jurisdiction

SCE asserts that this Court should "presume" that the Ninth Circuit's transfer order "implicitly" found jurisdiction in this Court. Opp. at 30-31. In contrast to SCE's suggestion, and as already established in our moving brief, this Court must make its own independent finding upon the jurisdictional question before it. Br. at 34-35. More importantly, this Court should not read into the one page Order any of the "implicit" findings that SCE suggests. Two reasons

[4] Hence the value of the 90-day limitations period before the Ninth Circuit.

support this latter conclusion.

First, the Ninth Circuit could not and did not rule upon the jurisdictional question before this Court. The Ninth Circuit's Order simply states in pertinent part: "Pursuant to 28 U.S.C. § 1631, this petition for review is transferred to the United States Court of Federal Claims. See Public Utility Dist. No. 1. of Clark County v. Johnson, 855 F.2d 647, 651 (9th.Cir. 1988)." (page number emphasis added). SCE has consistently misquoted the Ninth Circuit's citation to Clark County in the Order. Complaint at ¶ 4; Opp. at 11. The Ninth Circuit did not cite to Clark County for the proposition that it was a contract dispute because the claims involved alleged activities outside of an administrative record (i.e., 855 F.2d at 650). Rather, the page cite pinpointed merely describes the circumstances when transfer may be appropriate. See Clark County, 855 F.2d 647, 651 (9th Cir. 1988). Thus, this Court should reject SCE's suggestion that the Ninth Circuit "implicitly" ruled on the jurisdictional question by citing to Clark County.

Second, if anything is "implicit" in the Ninth Circuit's transfer order, it is that the jurisdictional question was left open. SCE's motion to transfer explicitly requested a finding that jurisdiction was appropriate in this Court and not the Ninth Circuit. Br. 15-17. The Ninth Circuit denied that request. Presumably, then, the cases were sent to this Court so that it could make an independent finding with respect to its own jurisdiction without assistance from the Ninth Circuit. After having its own motion for transfer granted, however, SCE declined the opportunity to pursue the clarification of jurisdictional issues that it had requested from the Ninth Circuit. Instead, SCE embarked on yet another litigation path, voluntarily dismissing its claims and presenting them, *seriatim*, as administrative claims before Bonneville. Only now has the jurisdictional issue been presented for consideration by this Court, and there is no basis to assume that such consideration should be anything other than an independent evaluation of the

jurisdictional facts.

IV. SCE Mischaracterizes BPA's Arguments

In it opposition, SCE contends that:

> Prior to its motion to dismiss, Bonneville Power Administration ("Bonneville") not only admitted, but affirmatively advocated, that the dispute now before this Court is contractual—whether Bonneville abide by the terms of the parties 1988 contract.

Opp. at 1. SCE points to no documentation to support this assertion because there is none. The only time any semblance of this issue was joined was when SCE filed this same claim in the Ninth Circuit and then requested that the case be transferred to this Court. As pointed out in our moving brief, we argued that the Ninth Circuit lacked subject matter jurisdiction at that time because the rate applicable to the SCE contract had only received FERC's interim approval, but had not yet been granted final approval, which is a statutory prerequisite for the Ninth Circuit's jurisdiction. Br. at 36-37. Until FERC grants final approval of a rate, there is no final action under the Northwest Power Act and there is no matter ripe for Ninth Circuit review. City of Seattle, et al. v. Johnson, 813 F.2d 1364, 1368 (9th Cir. 1987).

V. The Ninth Circuit's Recent Pronouncements Concerning The Scope Of That Court's Exclusive Jurisdiction Should Be Considered

Since enactment of the Northwest Power Act, the Ninth Circuit and this Court have striven to maintain a proper jurisdictional balance and avoid conflicts. In its opposition, SCE attempts to undermine this balance by essentially trivializing Transmission Agency of Northern California v. Sierra Pacific Co., 295 F.3d 918, 927, n. 5 (9th Cir. 2002) (TANC), and other Ninth Circuit case law. Opp. at 27-29. Recent opinions by the Ninth Circuit should not be disregarded at the behest of SCE. Instead, this Court should carefully consider the statements for the value they provide in avoiding jurisdictional conflicts that would only create confusion for the courts

and potential litigants.

First, SCE attempts to distinguish TANC because the Ninth Circuit relied, in part, on Puget Sound v. United States, 47 Fed. Cl. 506 (2000) (Puget I). However, the Ninth Circuit's reliance on Puget I supports our demonstration that Puget I was decided correctly, and therefore, is still good law. See TANC, 295 F.3d 918, 927, n. 5 (2002). While SCE attempts to malign the Puget I decision because of its reliance upon City of Burbank v. United States, 47 Fed. Cl. 261 (2000) (Burbank I), rev'd, 273 F.3d 1370 (Fed. Cir. 2001), SCE ignores the fact that, after this Court transferred Puget I to the Ninth Circuit, the Ninth Circuit found that Puget's challenge was to rate implementation. Puget Sound Energy v. United States, 310 F.3d 613, 621-623 (9th Cir. 2002) (Puget II). Indeed, the Ninth Circuit called Puget's challenge a "*quintessential* implementation issue." Id. at 622 (emphasis added). Simply put, this Court in Puget I was correct in finding the Ninth Circuit possessed jurisdiction, notwithstanding its reliance upon Burbank I. As such, Puget I is still relevant to this Court's disposition of the present case because the Ninth Circuit – the court Congress expressly vested with exclusive jurisdiction over BPA rate disputes – agreed that Puget's dispute challenged a BPA rate implementation. Id.[5] Thus, SCE's assertion that BPA's reliance upon Puget I is "improper" should be rejected.[6]

[5] Indeed, the Court in Puget I followed a proper model of caution by transferring the case to the Ninth Circuit for review. Had the Ninth Circuit found that the "true nature" of Puget's claim was contractual, it could have re-transferred the claim (or any part of the claim) back to this Court dispensing with *any doubt* as to which court had the appropriate jurisdiction to consider the claim.

[6] SCE also claims that the relevance of TANC to the present dispute is limited because the Ninth Circuit did not mention Burbank II. Opp. at 24. To the contrary, the fact that the Ninth Circuit has yet to mention Burbank II is a case in point as to why this Court should be cautious in accepting SCE's expansive reading of Burbank II. While BPA has cited two Ninth Circuit cases which approvingly cite to Puget I, SCE has failed to cite a single case from the Ninth Circuit which approves of Burbank II.

Second, the Ninth Circuit's reference to Clark County should be viewed for what it is – a comment on the role the administrative record plays in determining whether a challenge is to a final BPA decision or implementation. As noted above, the administrative record component of Burbank II is not particularly relevant in this instance, since it involves rates that were set according to the 7(i) process, which necessitates a decision based upon the administrative record. 16 U.S.C. §§ 839e(i)(5). However, to the extent that the Court addresses that issue, it should consider what the Ninth Circuit has to say about its own jurisdiction.

Indeed, if the Ninth Circuit had not intended the statement to provide some future help to parties in interpreting Clark County, the court would have simply left the footnote out. As SCE notes, the Ninth Circuit could have just distinguished TANC on the facts from Clark County. Opp. at 24. Instead, the Ninth Circuit went a step further by addressing the parties' concerns regarding the administrative record, stating "the key test under 9(e)(5) is whether there is a challenge to a final administrative decision or its implementation, not the existence or adequacy of an administrative record." TANC, 295 F.3d at 927, n. 5 (emphasis added). Given that the Ninth Circuit was not only responding to the parties' arguments in the footnote, but specifically clarifying how it interprets section 9(e)(5) of the Northwest Power Act – the very statutory provision at issue in the present dispute – any statement that the Ninth Circuit makes with respect to the Act, even in *dicta* in a footnote, should be afforded considerable weight.

Finally, SCE argues that BPA has already argued and lost this issue before the Board of Contract Appeals. Opp. at 24. The opinion of the board upon legal issues is not binding on this Court. See DynCorp Information Systems, LLC v. United States, 58 Fed. Cl. 446, 455 (2003). Further, the board's opinion on the merits of the case has not yet been issued and an appeal cannot be taken at this time. Moreover, the board's opinion stands for little more than that it felt

bound by Burbank II to hear the City of Burbank case, to which the cities of Glendale and Pasadena had been added as parties. More importantly, Bonneville is not asking the Court to ignore Burbank II, but to apply the decision to the particular facts of SCE's claim in a manner that is in harmony with Ninth Circuit precedent.

VI. The True Nature of SCE's Challenge Is To Rate Implementation

The parties agree that the test for whether a claim falls within the Ninth Circuit's exclusive jurisdiction is whether the "true nature" of the claim is a challenge to a Bonneville final action taken pursuant to statutory authority. Opp. at 26. SCE, however, avoids explaining how applicable Ninth Circuit precedent supports a finding that the "true nature" of the BPA action it is challenging in this case is purely contractual. Rather, SCE refers again to its position that it believes that section 12(a)(4) of the contract did not contain a rate, as defined by Burbank II. Id. As such, SCE relies upon Burbank II and no other precedent for its support that the "true nature" of its action is the enforcement of a negotiated price.[7] When considering whether SCE has met its burden of demonstrating this Court's jurisdiction, this Court should take into account that SCE has not cited a single Ninth Circuit precedent supporting its conclusory statement that the "true nature" of its claim is contractual in nature. In contrast, we have established, under both Burbank II and relevant Ninth Circuit case law, that SCE's claim falls within the Ninth

[7] SCE dismisses BPA's reliance on four key cases relevant to the Ninth Circuit's true nature test, saying they either "pre-date the Federal Circuit's decision in Burbank II, or are distinguishable on their facts." Opp. at 28. The fact that these cases pre-date Burbank II does not change their relevance for purposes of determining the "true nature" of SCE's challenge. Indeed, SCE cites *no cases* from the Ninth Circuit to support its position that the "true nature" of its present challenge is appropriately before this court. The only case SCE does cite for its support, Burbank II, did not explicitly discuss the Ninth Circuit's "true nature" test. Again, the key issue in Burbank II was related to the price adjustment provision. Thus, SCE's claim that the Ninth Circuit's "true nature" test supports its present challenge rings hollow.

Circuit's jurisdiction.

First, as established in our moving brief, at issue is not how the plaintiff may characterize a claim, but whether the gravamen of the complaint is a challenge to a final Bonneville action taken pursuant to statutory authority. Br. at 28-34. The Ninth Circuit possesses jurisdiction to review such claims even when they are characterized by petitioners as being ground in "contract, administrative law, or some other legal theory." Pacific Power & Light v. Bonneville Power Admin., 795 F.2d 810, 816 (9th Cir. 1985); M-S-R, 297 F.3d at 840. In this case, we have demonstrated that the "true nature" of the action being challenged is the creation and implementation of the FPS-96R rate schedule. While this rate is incorporated into SCE's contract, the Ninth Circuit is vested with exclusive jurisdiction to review any challenge to the development, implementation or interpretation of the rate, as well as whether SCE's contractual rights may have been implicated by the rate. See CP National Corp. v. Jura 876 F.2d 745, 747-751 (9th Cir. 1989); M-S-R Public Power Agency et al. v. Bonneville Power Admin., 297 F. 3d 833, 840 (9th Cir. 2002) ("[d]espite their contractual aspects, M-S-R's challenges to BPA's excess federal power forecasts fall within this Court's exclusive jurisdiction.")[8] As the procedural history of our moving brief established, this dispute began as a rate dispute and remains a rate dispute. Br. at 8-17. SCE bears the burden of demonstrating to this Court that

[8] CP National provides an excellent example of how the Ninth Circuit deals with the interplay between contract and rate implementation issues. In the first part of the opinion, the Ninth Circuit rejects the petitioner's request for transfer on the basis that the "true nature" of the claims are challenges to BPA ratemaking. Id. at 747-48. The Court then examined the "validity" of the petitioner's contract claim and again found that the express contract language (including the General Contract Provisions) retained BPA's flexibility to change the applicable rate. Id. at 748-51. In the end, the Court concluded that "BPA's inclusion of the 'availability charge' in its PF-83 and NR-83 rate schedules is not inconsistent with BPA's power sales contracts with petitioners." Id. at 751. The Ninth Circuit similarly can review SCE's claim that BPA has improperly applied the FPS-96R rate schedule to SCE's contract.

applicable law or fact support a finding that SCE's claims sound in contract, and does not otherwise implicate BPA's ratemaking or rate implementation. SCE has not meet this burden.

Second, SCE's interpretation of Burbank II renders the Ninth Circuit's "true nature" test utterly meaningless. If, as SCE suggests, every contract that incorporates a rate is not a "rate" unless it went through a separate section 7(i) hearing, then the Ninth Circuit's "true nature" test becomes pointless. Every contract action brought by a party that has a contract provision that incorporates a rate would automatically be deemed a "negotiated price" provision, as in SCE's situation, and purely contractual under SCE's reading of Burbank II. The "true nature" of the BPA action being challenged would not matter because, following SCE's reasoning, the only pertinent fact is whether a section 7(i) hearing was conducted with the generation of an administrative record for the particular contractual provision in question. SCE's disregard for the Ninth Circuit's jurisprudence ignores the undeniable need for the orderly, efficient, and uniform review of BPA final actions that the Ninth Circuit has sought to establish with the development of the test.

Indeed, the only way to harmonize the "rates" prong of Burbank II with the Ninth Circuit's longstanding body of case law defining the "true nature" test is to adopt our plain reading of Burbank II. This would prevent parties from avoiding the "true nature" test, as SCE is attempting to do here, while preserving the Ninth Circuit's jurisprudence upon BPA rate case litigation and avoiding intrusion into this Court's jurisdiction over purely contractual matters. In short, this Court should find that the contractual provision being challenged here is a rate, thereby satisfying the "true nature" test in favor of Ninth Circuit jurisdiction.

## CONCLUSION

For the foregoing reasons, as well as those contained in our moving brief, this Court should grant our motion, and dismiss the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

s/Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 307-6288

Attorneys for Defendant

OF COUNSEL:

JON D. WRIGHT
RICHARD A. GREENE
Office of the General
Counsel
Bonneville Power Admin.
901 N.E. 11th Avenue
Portland, OR 97232

March 11, 2005

Notice of Filing

I hereby certify that on March 11, 2005, a copy of the foregoing defendant's reply to plaintiff's opposition to defendant's motion to dismiss was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Martin F. Hockey, Jr.