# In the United States Court of Federal Claims

No. 03-2869C

(Filed: November 10, 2005)

| | |
|---|---|
| ************************************<br>SOUTHERN CALIFORNIA EDISON,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant.<br>************************************ | Motion to dismiss; Subject matter jurisdiction; Bonneville Power Administration; Northwest Power Planning Act, 16 U.S.C. §§ 839-839h; Tucker Act, 28 U.S.C. § 1491; Contract Disputes Act, 41 U.S.C. §§ 605, 609 |

Charles D. Siegal, Munger, Tolles & Olson LLP, Los Angeles, CA, for plaintiff. With him at the hearing was Marsha Hymanson, Munger, Tolles & Olson LLP, Los Angeles, CA.

Martin F. Hockey, Jr., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Peter D. Keisler, Assistant Attorney General and David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. Of counsel were Jon D. Wright and Richard A. Greene, Office of General Counsel, Bonneville Power Administration, Portland, OR.

## OPINION AND ORDER

LETTOW, Judge.

Pending before the court is defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). The plaintiff, Southern California Edison ("SCE"), is a public electric utility engaged in purchasing, transmitting, and distributing electric energy to approximately twelve million customers in central and southern California. Compl. ¶ 14. The Bonneville Power Authority ("BPA") is a federal entity within the Department of Energy engaged in generating and selling energy derived from federal hydroelectric dams in the Pacific Northwest. Compl. ¶ 15. In 1988, SCE and BPA entered into a sale and exchange agreement, Contract No. DE-MS79-88BP92275 (the "Contract"), that obligated BPA to sell or exchange energy to SCE and, if requested by SCE,

to sell capacity to SCE under specific terms and conditions. Compl. ¶ 1 & Ex. 1. In the instant complaint, SCE alleges that BPA breached the contractual provisions that govern SCE's purchases of option capacity from BPA. Compl. ¶ 1.[1]

BPA's motion to dismiss is premised on its contention that SCE's action is not a suit for breach of contract but rather actually seeks review of the development and implementation of a rate established by BPA pursuant to Section 7 of the Pacific Northwest Electric Power Planning and Conservation Act ("Northwest Power Act"), Pub. L. No. 96-501, § 7, 94 Stat. 2697 (1980) (codified at 16 U.S.C. § 839e). *See* Defendant's Motion to Dismiss ("Def.'s Mot.") at 1. Because the Northwest Power Act vests the United States Court of Appeals for the Ninth Circuit with original and exclusive jurisdiction to review "final rate determinations under section 839e of this title [the Northwest Power Act]," *see* 16 U.S.C. § 839f(e)(1)(G); *see also* 16 U.S.C. § 839f(e)(5), BPA claims that this court does not have jurisdiction to hear this case. Def.'s Mot. at 1. SCE responds that it is not challenging a rate, Hr'g Tr. 48:13 to 49:23 (Sept. 21, 2005), but rather it seeks relief for a breach of a contract term that was negotiated at arm's length. Hr'g Tr. 54:1-17. SCE maintains that the case at hand is a straightforward dispute over a contract, that belongs in the this court under the Tucker Act, 28 U.S.C. § 1491(a). Hr'g Tr. 80:19-23. The court conducted a hearing on the jurisdictional issues on September 21, 2005.

The court holds that this suit concerns an alleged breach of contractual provisions that are not statutorily mandated and does not seek review of a rate within the meaning of the Northwest Power Act. Consistently with the Federal Circuit's holding in *City of Burbank, California v. United States*, 273 F.3d 1370 (Fed. Cir. 2001), the alleged breach falls within this court's Tucker Act jurisdiction, 28 U.S.C. § 1491(a)(1), and not within the exclusive jurisdiction of the Ninth Circuit under 16 U.S.C. § 839f(e)(1)(G) and (e)(5). The court also concludes that SCE has satisfied the requirements of the Contract Disputes Act, 41 U.S.C. §§ 605, 609, in bringing this contract claim. For the reasons discussed below, the government's motion to dismiss for lack of subject matter jurisdiction is denied.

---

[1]Pending before the court are two related cases that concern other provisions of the Contract and SCE's arrangements with BPA, *Southern California Edison v. United States*, Nos. 02-1953C and 04-1716C. *See Southern Cal. Edison v. United States*, 58 Fed. Cl. 313 (2003) (denying defendant's motion to dismiss No. 02-1953C).

## BACKGROUND[2]

A. *The Bonneville Power Authority*

Under the Northwest Power Act, 16 U.S.C. §§ 839-839h, Congress declared that one of its purposes was "to assure the Pacific Northwest of an adequate, efficient, economical, and reliable power supply." 16 U.S.C. § 839(2).[3] BPA markets, transmits, purchases, exchanges, and sells electric energy in the wholesale market. *See id.* § 832a(b); Def.'s Mot. at 3-4. Federal dams in the Pacific Northwest generate the hydroelectric energy BPA sells in this market. *See* 16 U.S.C. § 832; Def.'s Mot. at 4. BPA is obligated to give a preference and priority to the power needs of utilities in the Pacific Northwest. *See* 16 U.S.C. § 839c(b); Def.'s Mot. at 3-4. When BPA generates more electric energy than is needed to satisfy the demand of its primary service area, any electric energy above the sufficient amount is defined as "surplus energy." 16 U.S.C. § 837(c). Electric peaking capacity at hydroelectric plants in the Pacific Northwest for which there is no demand at any established rate is defined as "surplus peaking capacity." *Id*. § 837(d). BPA may sell such surplus electric energy or peaking capacity outside the Pacific Northwest, subject to authorizations and restrictions. *Id*. §§ 837a, 839c(f); Def.'s Mot. at 4.

All sales of power by BPA, including sales of surplus power, are required by statute to "be at rates established pursuant to section 839e of this title [the Northwest Power Act]." 16 U.S.C. § 839c(a). The term "rate" has been administratively defined by BPA since 1986 as "the monetary charge, discount, credit, surcharge, pricing formula, or pricing algorithm for any electric power . . . service . . . including charges for capacity and energy." *See* Procedures Governing Bonneville Power Administration; Rate Hearings § 1010.2(j), 51 Fed. Reg. 7,611, 7,615 (Mar. 5, 1986). The Administrator of BPA is statutorily required to "establish[] and . . . revise[]" rates such that BPA will "recover, in accordance with sound business principles, the costs associated with the acquisition, conservation, and transmission of electric power." 16 U.S.C. § 839e(a)(1). BPA's proposed rates are subjected to a hearing process prescribed under Section 7(i) of the Northwest Power Act, after which BPA's Administrator issues a final Record of Decision. *See* 16 U.S.C. §§ 839e(i)(1)-(6). The proposed rates are then reviewed by the Federal Energy Regulatory Commission ("FERC"). *See id.* § 839e(a)(2). Excepting interim rates established pursuant to 16 U.S.C. § 839e(i)(6), BPA's rates are effective only upon approval by FERC. *Id*. § 839e(a)(2). A final rate determination is subject to judicial review in the Court of Appeals for the Ninth Circuit. *See id.* §§ 839f(e)(1)(G) (defining final rate determinations as

---

[2]The recitations that follow do not constitute findings of fact by the court. Rather, the recited factual elements are taken from the parties' filings and are either undisputed or alleged and assumed to be true for purposes of the pending motion.

[3]The "Pacific Northwest . . . means . . . the area consisting of the States of Oregon, Washington, and Idaho, the portion of the State of Montana west of the Continental Divide, and such portions of the States of Nevada, Utah, and Wyoming as are within the Columbia River drainage basin." 16 U.S.C. § 839a(14)(A).

"final actions subject to judicial review"), 839f(e)(5) (stating that suits to challenge "final actions" "shall be filed in the United States court of appeals for the region," *i.e.*, the Ninth Circuit).

B. *The Contract*

As an extra-regional purchaser of electrical power and capacity, SCE is eligible to purchase only surplus power and capacity. 16 U.S.C. §§ 837a, 839c(f); Def.'s Mot. at 4-5. Pursuant to BPA's statutory authority and in anticipation of future surplus capacity and energy, BPA negotiated and implemented the Contract at issue in this case with SCE. Contract at 3-4. This case involves a dispute regarding only the capacity provisions in the Contract, Compl. ¶¶ 1, 16; therefore only contractual elements relating to the capacity provisions will be addressed. The Contract became immediately effective after it was signed by the parties on October 18, 1988, and was to remain in force until May 31, 2009, unless terminated under a specific provision of the Contract. Contract at 4, 64. The Contract was terminated by the parties subsequent to the events alleged in this case. Hr'g Tr. 82:7-9.

Under the Contract, BPA had the obligation to provide "Option Capacity" to SCE, and in return, SCE was obligated to provide both cash and "Option Energy" to BPA. Compl. ¶ 16; Contract § 12. "Capacity" (also called "capacity without energy") in the context of the Contract was described by defendant's counsel as "the ability [of BPA] to provide energy and then get it back." Hr'g Tr. 6:25 to 7:6. "Capacity" or "capacity without energy" differs from what BPA calls a "power sale;" a power sale involves a sale of energy to a customer in exchange for cash, while capacity without energy involves a borrowing transaction in which a customer receives energy from BPA, then returns the energy to BPA at a later time. Hr'g Tr. 6:25 to 7:16; *see* Def.'s Mot. at 8 n.3. In the Contract, SCE did not pay for the option to have access to BPA's energy, but rather it was required to pay for the capacity when it was used. Contract § 12; *see* Hr'g Tr. 7:5 to 9:1. The Contract specified the rate schedule and demand charge that BPA would use for charging SCE for Option Capacity:

> (12) <u>Option Capacity and Option Energy</u>.
>
> Bonneville shall have the obligation to provide Option Capacity to Edison and Edison shall have the obligation to provide Option Energy to Bonneville.
>
> > (a) <u>Option Capacity</u>
> >
> > Upon Edison's request, and in addition to other obligations under this Agreement, Bonneville shall provide 250 MW of capacity to Edison on the same delivery terms as Peaking Energy specified in section 7(a). For any year in which such capacity is requested, Bonneville shall make option

> capacity available for the 5-month delivery period of June through October and Edison shall pay for such capacity.
>
> . . .
>
> (3) Edison shall return to Bonneville the energy provided with the Option Capacity unless Bonneville elects to have Edison pay for the energy at the rate specified in section 9(c)(1). If Edison returns the energy, Edison shall make deliveries as specified in section 7(b).
>
> (4) Edison shall pay for Option Capacity *at the demand charge associated with the contract rate of Bonneville's SP-87 rate schedule or if the SP-87 rate schedule is no longer in effect, a successor rate schedule. The Parties' Authorized Representatives may agree upon another applicable rate schedule.*

Contract § 12 (emphasis added). The SP-87 rate schedule that was incorporated into Section 12 of the Contract had previously been adopted by BPA through a formal rate-making proceeding before the Contract was drafted and came into effect. Although SCE had not participated in the rate-making proceeding in 1987 that resulted in the SP-87 rate schedule, Hr'g Tr. 55:4-15, it was aware of the terms of that rate schedule when it was incorporated by reference into the Contract as executed in October 1988.

Section 12 of the Contract remained dormant until 1999. Compl. ¶ 18; Def.'s Mot. at 9-11. In the intervening years, from 1989 to 1996, BPA developed several successor rate schedules to the SP-87 rate schedule. The FPS-96 rate schedule, which had received final FERC approval, *see* 80 FERC P 61,118, 61,371 (1997), was in effect in 1999. Compl. ¶ 17; Def.'s Mot. at 9-10.[4] In 1999, SCE notified BPA that it intended to exercise its option under Section 12 of the Contract and take delivery of the capacity product. Compl. ¶ 17; Def.'s Mot. at 10-11.

Upon receiving SCE's notice, BPA informed SCE that it did not intend to sell capacity to SCE at the demand charge listed in the FPS-96 rate schedule. Compl. ¶ 19. BPA claimed it had erred when creating the FPS-96 rate schedule, advising SCE that it had inadvertently overlooked the possibility of selling the capacity product alone when setting the FPS-96 rate schedule. *Id.*; Def.'s Mot. at 10. Based on this rationale, BPA took the position that the demand charge in the FPS-96 rate schedule did not apply to SCE's purchases of the capacity product under the

[4]FPS-96 set out a demand charge of $0.87 per kilowatt per month and an energy charge varying from 21.21 mills/kWh to 50.39 mills/kWh, depending upon the month and the particular type of rate to be applied. *See* Def.'s Mot. App. at 17 (*1996 Wholesale Power and Transmission Rates* (June 1996)).

Contract. Compl. ¶ 19; Def.'s Mot. at 10-11. In lieu of using the FPS-96 rate schedule, BPA requested that SCE negotiate a price at which to purchase the capacity product. Def.'s Mot. at 11. However, the parties could not agree upon a negotiated price. *Id*. Two salient developments follow on the heels of this failed negotiation. First, BPA allowed SCE to purchase capacity in 1999 at the demand charge listed in the FPS-96 rate, *id*. at 11-12, and second, BPA proposed and conducted a formal rate-making proceeding in August 1999 for the purpose of developing a new rate that would be applicable to purchases of capacity without energy. *Id*. at 12-13 (citing 64 Fed. Reg. 44,361, 44,363 (1999)). In 2000, when SCE sought to purchase Option Capacity under the Contract, BPA demanded that SCE pay the rate in the resulting FPS-96R rate schedule, and SCE refused to purchase at that rate. Compl. ¶ 21.[5] SCE contended that the FPS-96 rate schedule remained the successor to the SP-87 rate schedule and therefore that it was entitled to the demand charge in the FPS-96 rate schedule rather than the demand charge in the FPS-96R schedule. Compl. ¶ 24.

SCE participated in the rate-making proceeding that resulted in the FPS-96R rate schedule through the filing of data requests, testimony, and briefs. Def.'s Mot. at 13. BPA issued its final Record of Decision in the matter on March 15, 2000, and thereafter filed the rate with FERC. Def.'s Mot. at 14, App. at 30-32. FERC granted interim approval of the rate in May 2000. 65 Fed. Reg. 33,529, 33,531 (May 24, 2000).

---

[5]FPS-96R established a new "Capacity Without Energy" charge that would apply to the Contract Rate section of "contracts entered into before September 20, 1996." Def.'s Mot. App. at 82-83 (*Final Firm Power Products and Services Rate Adjustment Proposal* (*FPS-96R*)). BPA intended the new rates to apply to the demand charge in the SCE-BPA contract at issue in this case. The rates in this new section were significantly higher than those in the FPS-96 rate schedule. *See id*. at 83. BPA asserted that the new rates were necessary, over SCE's objections, because the demand charge listed in the FPS-96 rate schedule represented an unbundled product that did not exist at the time the SCE-BPA Contract was negotiated:

> Long before establishment of the FPS-96 rate schedule, BPA had entered into a small number of power sales contracts that provided for BPA to supply, under specified circumstances, capacity without energy to be priced under the Contract Rate demand charge section of the then applicable Surplus Firm Power rate schedule. As noted previously, the FPS-96 rate schedule is the nominal successor to prior Surplus Firm Power rate schedules, but it is not designed to accommodate pricing the product in that manner.

Def.'s Mot. App. at 30 (*Final Firm Power Products and Services Rate Adjustment Proposal* (*FPS-96R*), *Administrator's Record of Decision*). *See also id*. at 40 (addressing SCE's arguments related to the SP-87 and FPS-96 rate schedules).

C. *Procedural History*

SCE filed a petition for review of BPA's rate making in FPS-96R in the Court of Appeals for the Ninth Circuit on June 16, 2000 (No. 00-70720). Contemporaneously, SCE filed two further petitions for review in the Ninth Circuit regarding BPA's actions bearing on its Contract with SCE. The other petitions were No. 01-70582 (alleging that BPA violated its contractual obligation to sell energy and capacity to SCE except where there was insufficient surplus firm power) and No. 01-71406 (alleging that BPA breached the Contract by refusing to sell SCE power under the Contract, stating that it no longer intended to perform under the Contract, and failing to pay SCE the amount specified under the termination clause of the Contract). In No. 00-70720, the petition relating specifically to BPA's FPS-96R rate schedule, SCE sought "review of the Administrator's Final Record of Decision . . . for the Firm Power Products and Services Rate Adjustment Proposal (FPS-96R-A-02) and to clarify the applicability of the FPS-96R rate as applied to the [Contract] between SCE and BPA, dated October 18, 1988, Contract No. DE-MS79-88BP92275." Petition for Review, *Southern California Edison Co. v. Bonneville Power Administration*, No. 00-70720 (9th Cir. June 16, 2000) at 11.

Final FERC approval of the FPS-96R rate was granted on April 16, 2001. *See* 95 FERC P 61,082, 61,244 (2001). Subsequently, on August 3, 2001, BPA moved in the Ninth Circuit to dismiss SCE's petition for review of BPA's action promulgating FPS-96R, claiming that SCE had filed its petition before BPA's action had become final (*i.e.*, before FERC granted final approval). BPA's Motion to Dismiss, *Southern California Edison Co. v. Bonneville Power Administration*, No. 00-70720 (9th Cir. Aug. 3, 2001) at 2. SCE responded that it did not seek to challenge "the rate proceeding per se" but rather that it sought review of "BPA's right to misuse its statutory authority to unilaterally rewrite . . . a contractual arrangement." SCE's Response to BPA's Motion to Dismiss, *Southern California Edison Co. v. Bonneville Power Administration*, No. 00-70720 (9th Cir. Aug. 21, 2001) at 2. On October 16, 2001, the Ninth Circuit denied BPA's motion to dismiss without prejudice. Order of Oct. 16, 2001, *Southern California Edison Co. v. Bonneville Power Administration*, No. 00-70720 (9th Cir. Oct. 16, 2001).

On December 19, 2001, SCE filed a motion with the Ninth Circuit for clarification of jurisdiction. SCE Mot. for Clarification, *Southern California Edison Co. v. Bonneville Power Administration*, No. 00-70720 (9th Cir. Dec. 19, 2001). In this motion, SCE stated that its petition was not a challenge to a final agency action under the Northwest Power Act, and as such was not subject to the exclusive jurisdiction of the Ninth Circuit. *Id*. at 1. Relying on *Burbank*, 273 F.3d 1370, SCE requested a ruling from the Ninth Circuit that "jurisdiction properly lies in the [Court of Federal Claims]." *Id*. at 13. SCE contended that the FPS-96R rate was "not a rate of general application that was" a successor to the rate specified in SCE's Contract with BPA. SCE's Response to BPA's Renewed Mot. to Dismiss, *Southern California Edison Co. v. Bonneville Power Administration*, No. 00-70720 (9th Cir. Feb 1, 2002) at 2.

In response, on January 23, 2002, BPA renewed its motion to dismiss. Def.'s Mot. at 16; BPA's Renewed Mot. to Dismiss, *Southern California Edison Co. v. Bonneville Power Administration*, No. 00-70720 (9th Cir. Jan 23, 2002). On March 18, 2002, the Ninth Circuit denied both SCE's and BPA's motions and transferred the case to the Court of Federal Claims pursuant to 28 U.S.C. § 1631.[6] Order of Mar. 18, 2002, *Southern California Edison Co. v. Bonneville Power Administration*, No. 00-70720 (9th Cir. Mar. 18, 2002).[7] The transferred case became No. 02-709C in this court. The Ninth Circuit also transferred the two related cases, No. 01-70582 and No. 01-71406, to the Court of Federal Claims. Order of Jan. 18, 2002, *Southern California Edison Co. v. Wright*, No. 01-70582 (9th Cir. Jan. 18, 2002); Order of Mar. 18, 2002, *Southern California Edison Co. v. Wright*, No. 01-71406 (9th Cir. Mar. 18, 2002). These further transferred cases became Nos. 02-313C and 02–663C, respectively, in this court. SCE voluntarily dismissed case No. 02-313C on May 10, 2002, and voluntarily dismissed cases No. 02-709C and No. 02-663C on July 2, 2002. Pursuant to RCFC 41(a)(1), the cases in this court were dismissed without prejudice.[8]

---

[6]The transfer statute provides as follows:

> § 1631. **Transfer to cure want of jurisdiction**. Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the best interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

[7]The operative portion of the Ninth Circuit's order transferring No. 00-70720 to this court states: "Pursuant to 28 U.S.C. § 1631, this petition for review is transferred to the United States Court of Federal Claims. *See Public Utility Dist. No. 1 of Clark County v. Johnson*, 855 F.2d 647, 651 (9th Cir. 1988)." Order of Mar. 18, 2002, *Southern California Edison Co. v. Bonneville Power Administration*, No. 00-70720 (9th Cir. Mar. 18, 2002).

[8]RCFC 41(a)(1) provides in part that:

> Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States an action based on or including the same claim.

SCE avers that its rationale for dismissing voluntarily the transferred cases was to allow it to submit the underlying claim for this action to BPA's contracting officer as required by the Contract Disputes Act, 41 U.S.C. §§ 601-13. Compl. ¶ 5. The claim was submitted to BPA's contracting officer on July 19, 2002. *Id.* The contracting officer was required within sixty days to "notify the contractor of the time within which a decision will be issued." *Id.* (citing 41 U.S.C. § 605(c)). BPA's contracting officer informed SCE on September 23, 2002 that a final decision on the Option Capacity claim would be issued by January 31, 2003. Compl. ¶ 6. On January 24, 2003, however, SCE was informed by one of BPA's attorneys that BPA would not consider the Option Capacity claim because BPA viewed the claim as "not cognizable under the [Contract Disputes Act]." *Id.* BPA claimed that SCE was attempting to appeal a rate determination and therefore that the Ninth Circuit had exclusive jurisdiction. *Id.*

SCE filed its complaint in the instant case on December 30, 2003. In its complaint, SCE alleges that BPA has adopted a new rate (*i.e.*, the FPS-96R rate) that is not the successor to the demand charge in the SP-87 rate schedule and has attempted to force SCE to purchase option capacity under the Contract at this new rate. This change, SCE alleges, amounts to a unilateral modification of the terms of the Contract without consideration and beyond the authority of BPA under the Contract. *Id.* This case thus involves the same claim that SCE raised in *Southern California Edison Co. v. Bonneville Power Administration*, No. 00-70720 (9th Cir. Dec. 19, 2001), which was transferred by the Ninth Circuit to this court and became No. 02-709C here. *See supra* at 8. SCE avers that this court has jurisdiction over this matter pursuant to the Tucker Act, 28 U.S.C. §1491, and Sections 6 and 10 of the Contract Disputes Act, 41 U.S.C. § 609(a)(1). Compl. ¶ 3.

The government has responded to SCE's claim with a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Def.'s Mot. at 1. The government renews its claim made previously to the Ninth Circuit that jurisdiction is improper in this court because what SCE seeks is essentially a determination of whether the FPS-96R rate making proceeding and subsequent application of that rate to SCE's Contract was a proper exercise of BPA's statutory rate making authority. Def.'s Mot. at 19. Such a challenge, BPA maintains, is a challenge to a rate making proceeding, which is defined as a final agency action under the Northwest Power Act and is subject to the exclusive jurisdiction of the Ninth Circuit. Id.

The court held a hearing on the government's motion to dismiss on September 21, 2005.

## STANDARDS FOR DECISION

Jurisdiction must be established as a threshold matter before the court may proceed with the merits of this or any other action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998). As the plaintiff, SCE bears the burden of establishing the court's subject-matter jurisdiction over its claims. *See McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed Cir. 1988). BPA seeks to have SCE's claim dismissed under RCFC 12(b)(1). "Challenges to 'a

court's general power to adjudicate in specific areas of substantive law'" are properly raised by way of motions under Rule 12(b)(1). *Reed Island-MLC, Inc. v. United States*, 67 Fed. Cl. 27, 32 (2005) (quoting *Anderson v. United States*, 59 Fed. Cl. 451, 455-56 (2004), and *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir.1999)). When ruling on a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the court must accept as true the complaint's undisputed factual allegations and construe the facts in the light most favorable to plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Hamlet v. United States*, 873 F.2d 1414, 1415-16 (Fed. Cir. 1989). If the undisputed facts reveal any possible basis on which the plaintiff might prevail, the court must deny the motion. *See Scheuer*, 416 U.S. at 236 (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In the government's pending motion, it asserts that the general jurisdiction of the Court of Federal Claims under the Tucker Act to hear contract claims against the United States, *see* 28 U.S.C. § 1491(a)(1), is displaced by a special jurisdictional grant in the Northwest Power Act. Def.'s Mot. at 19. This is a question of mixed law and fact, requiring a careful parsing of the terms of the Contract to determine if SCE's claim falls within this special jurisdictional grant.

## ANALYSIS

### *A. The Court of Federal Claims' Tucker Act Jurisdiction*

"All federal courts are courts of limited jurisdiction." *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir. 1998). The principal statute governing this court's jurisdiction is the Tucker Act, which grants this court power to hear "any claim against the United States founded either upon . . . any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). There is no dispute that SCE has entered a contract with BPA or that this contract falls within the scope of the Tucker Act's jurisdictional grant, with common law contract principles supplying the substantive law, unless a more specific statute displaces this jurisdiction.

This court's generally applicable jurisdiction under the Tucker Act over disputes arising with contracts entered between private parties and the federal government has been displaced or modified by explicit federal statutory law or treaty on relatively few occasions. One such exception is set out in Subsection 9(e) of the Northwest Power Act, 16 U.S.C. § 839f(e). *Compare Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 925-27 (9th Cir. 2002) (claims of breach of contract and inverse condemnation could not be separated from an action of the Bonneville Power Authority subject to the Ninth Circuit's exclusive jurisdiction), *with Public Util. Dist. No. 1 of Clark County v. Johnson*, 855 F.2d 647, 650 (9th Cir. 1988) (breach of contract that was not action subject to Ninth Circuit's review jurisdiction should be heard in Claims Court). Other similar displacements have been recognized in connection with Subsection 119(a) of the Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10139(a), *see Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 174-179 (2005), with Subsections 506(d) and 508(j) of the Federal Crop Insurance Act, 7 U.S.C. §§ 1506(d), 1508(j), *see Texas Peanut Farmers v. United States*, 409 F.3d 1370, 1373-74 (Fed. Cir. 2005), and with Subsection 205(g)

of the Medicare Act, 42 U.S.C. 405(g). *See Wilson v. United States*, 405 F.3d 1002, 1012-13 (Fed. Cir. 2005). As the Federal Circuit has said, "a contract will not fall within the purview of the Tucker Act if Congress has placed jurisdiction over it elsewhere." *Massie v. United States*, 166 F.3d 1184, 1188 (Fed. Cir. 1999); *see also Matson Navigation Co. v. United States*, 284 U.S. 352, 359-60 (1932) (holding that the Court of Claims did not have jurisdiction over a contract whose subject matter was covered by the Suits in Admiralty Act, 46 U.S.C. § 742 (1932), providing for jurisdiction in federal district courts).

Thus, as this court observed in *Boston Edison*, "[t]he jurisdictional provisions in the Northwest Power Act that grant the Ninth Circuit exclusive jurisdiction to review specified actions apply *only* to those specified actions, and consequently this court's general jurisdiction under the Tucker Act is displaced *only* where the Bonneville Power Authority's actions under a contract are mandated by statute or involve a rate set by the Authority pursuant to statutory requirements." *Boston Edison*, 64 Fed. Cl. at 175 (emphasis in original) (citing *Burbank*, 273 F.3d at 1377-81; *Southern Cal. Edison v. United States*, 58 Fed. Cl. 313, 317-20 (2003)). This interpretive guide reflects several underlying principles of statutory construction. First, the language of jurisdictional statutes is to be parsed with precision and fidelity to their express terms. *See Stone v. Immigration and Naturalization Serv.*, 514 U.S. 386, 405 (1995) (jurisdictional statutes "must be construed with strict fidelity to their terms") (citing *Cheng Fan Kwok v. Immigration and Naturalization Service*, 392 U.S. 206, 212 (1968)). Second, specific statutes govern over general statutes. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384-85 (1992). Third, repeals by implication are disfavored. *See Branch v. Smith*, 538 U.S. 254, 273 (2003) ("[A]bsent 'a clearly expressed congressional intention,' . . . 'repeals by implication are not favored.'" (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974), and *Universal Interpretive Shuttle Corp. v. Washington Metro. Area Transit Comm'n*, 393 U.S. 186, 193 (1968))).

*B. Jurisdictional Provisions of the Northwest Power Act*

The court's initial focus must be on the special jurisdictional provisions of the Northwest Power Act. Paragraph (5) of Subsection 9(e) of that Act states that suits to challenge "final actions . . . or the implementation of such final actions . . . shall be filed in the United States court of appeals for the region," *i.e.*, the Ninth Circuit. 16 U.S.C. § 839f(e)(5). Paragraph (1) of Subsection 839f(e) lists eight actions that "shall be final actions subject to judicial review":

> (A) adoption of the plan or amendments thereto by the [Pacific Northwest Electric Power and Conservation Planning] Council under section 839b of this title, adoption of the program by the Council, and any determination by the Council under section 839b(h) of this title;
> (B) sales, exchanges, and purchases of electric power under section 839c of this title;

> (C) the Administrator's acquisition of resources under section 839d of this title;
> (D) implementation of conservation measures under section 839d of this title;
> (E) execution of contracts for assistance to sponsors under section 839d(f) of this title;
> (F) granting of credits under section 839d(h) of this title;
> (G) final rate determinations under section 839e of this title; and
> (H) any rule prescribed by the Administrator under section 839e(m)(2) of this title.

16 U.S.C. § 839f(e)(1). If judicial review is desired of BPA's action within any of these eight categories, jurisdiction inheres in the Ninth Circuit.

However, as the Federal Circuit noted in *Burbank*, the fact that a plaintiff's "challenge is not to one of the final [eight] actions expressly subject to judicial review under § 839f(e)(1) . . . does not end the inquiry." *Burbank*, 273 F.3d at 1378. A further portion of Section 9 of the Northwest Power Act, Section 839f(e)(3), states that "[n]othing in this section shall be construed to preclude judicial review of other final actions and decisions" undertaken by BPA, including the express list of final actions contained in Section 839f(e)(1). 16 U.S.C. § 839f(e)(3). Paragraph (3) of Subsection 839f(e) says nothing about where review of other final actions might or should take place, and thus it by itself is not preclusive of jurisdiction in this court under the Tucker Act. However, a further provision of the Northwest Power Act, Section 839f(e)(5) states:

> *Suits to challenge* the constitutionality of this chapter, or any action thereunder, *final actions and decisions taken pursuant to this chapter by the Administrator* or the Council, *or the implementation of such final actions*, whether brought pursuant to this chapter [the Northwest Power Act], the Bonneville Project Act [16 U.S.C. § 832 et seq.], the Act of August 31, 1964 (16 U.S.C. [§] 837-837h), or the Federal Columbia River Transmission System Act (16 U.S.C. [§] 838 and following), *shall be filed in the United States court of appeals for the region. . . . Suits challenging any other actions under this chapter shall be filed in the appropriate court*.

16 U.S.C. § 839f(e)(5) (emphasis added). This provision placing jurisdiction in the Ninth Circuit to review actions taken by BPA reaches more broadly than the enumerated listing of eight specific actions subject to review set out in Paragraph (1) of Subsection 839(e)(1). The jurisdictional question thus becomes one of how much paragraph (5) extends beyond the specific listing in Paragraph (1).

In *Burbank*, the Federal Circuit determined that "[i]n the context of power sales contracts, an alleged breach challenges an action taken 'pursuant to' the Northwest Power Act in one of two instances: (1) when the contractual provision is *mandated* by the Act, or (2) when the contractual provision is a rate the BPA set *by following the procedural* requirements of § 839e(i), including notice-and-comment and the generation of an administrative record." 273 F.3d at 1379 (emphasis in original).

Consistently with this framework, under Section 839f(e)(5), where disputed contractual provisions are statutorily mandated or constitute a rate developed via an administrative hearing on the record under the Administrative Procedure Act, the Ninth Circuit possesses exclusive jurisdiction. 16 U.S.C. § 839f(e)(5). This is so even where a plaintiff describes its claim as a contract claim but the challenge is in fact a collateral attack on the Act or on a regulation or rate. *Burbank*, 273 F.3d at 1380. The Federal Circuit observed that this result is consistent with Ninth Circuit precedent. *Id*. (citing *Clark County*, 855 F.2d at 650 ("We therefore hold that claims involving alleged contractual breaches by the agency and based on allegations of facts outside an administrative record must be heard in the claims court.")). The Federal Circuit noted that conferring jurisdiction in the Ninth Circuit over fact-specific contract actions would not "advance the Congressional goal of achieving uniformity in the interpretation of the Northwest Power Act, and would frustrate the grant of jurisdiction to the Court of Federal Claims, a trial court equipped to undertake *de novo* factual inquiry." *Burbank*, 273 F.3d at 1380 (citing *Clark County*, 855 F.2d at 650).

The Ninth Circuit had concluded in *Clark County* that, although the statute was ambiguous "when it provided for exclusive jurisdiction in [the Ninth Circuit] for some suits and for jurisdiction in 'an appropriate court' for other suits," Congress did not grant the Ninth Circuit jurisdiction over alleged contractual breaches based on facts not reflected in an administrative record. *Clark County*, 855 F.2d at 649-50. In sum, the Federal Circuit in *Burbank* adopted the Ninth Circuit's position as set out in *Clark County*. *See Burbank*, 273 F.3d at 1380-81.

*C. The Eight Categories of Final Actions Specified in 16 U.S.C. § 839f(e)(1)*

SCE does not challenge the FPS-96R rate as such. *See supra* at 7-9. Rather, SCE challenges whether the FPS-96R rate is the successor of the demand charge in the SP-87 rate schedule incorporated into the SCE-BPA Contract for purposes of determining the demand charge for option capacity. Compl. ¶ 24. Consequently, SCE's claim in this court does not seek review, even indirectly, of a final rate determination, and as a result the Ninth Circuit's displacing jurisdiction under 16 U.S.C. § 839f(e)(1)(G) (review of BPA's final rate determinations) is not triggered. This conclusion disposes of the government's primary ground for its motion to dismiss.

Nonetheless, consideration ought also be given to whether BPA's entry into the Contract with SCE should be deemed a final action as an instance of "sales, exchanges, and purchases of electric power under section 839c of this title" within the meaning of 16 U.S.C. § 839f(e)(1)(B).

However, to interpret 16 U.S.C. § 839f(e)(1)(B) as mandating Ninth Circuit jurisdiction over all claims involving a contract involving sales, exchanges, or purchases of energy by the BPA would wholly displace this court's jurisdiction under the Tucker Act for BPA's energy-supply contracts and contravene the teachings of *Burbank* and *Clark County*. BPA is authorized to create extra-statutory obligations for itself by a statutory provision calling upon the Administrator of BPA to include in contracts with utilities terms that are deemed "necessary, desirable or appropriate to effectuate the purposes of [the Bonneville Project Act]." 16 U.S.C. § 832d(a).[9] These extra-statutory contracting actions on the part of BPA do not fall under 16 U.S.C. § 839f(e)(1)(B).

None of the other final actions specifically set out in 16 U.S.C. § 839(e)(1) apply, and, consequently, SCE's claim does not fall into one of the eight enumerated actions that give rise to the Ninth Circuit's jurisdiction under that part of the Northwest Power Act.

*D. Final Agency Action Pursuant to 16 U.S.C. § 839f(e)(5)*

SCE's claim alleges the breach of a non-statutorily mandated provision: the demand charge for the option-capacity provision in the Contract. Compl. ¶ 30. BPA freely negotiated the disputed demand charge for option capacity in an arms-length transaction with SCE. Def.'s Mot. at 11-12. Manifestly, the demand charge in the Contract incorporates a specific rate schedule and its successors. See *supra*, at 4-5 (quoting Section 12 of the Contract). However, the effect of the incorporated rate schedules on the Contract results from a negotiated contract term. There was no administrative record associated with that incorporation, and therefore there was no trigger for exclusive Ninth Circuit jurisdiction under 16 U.S.C. § 838f (e)(5) (the catch-all provision for "final actions" taken on an administrative record), discussed *supra*, at 12-13.

Moreover, the demand-charge provision in Section 12 of the Contract does not constitute "implementation" of the FPS-96R rates, as BPA argues. *See* Def.'s Mot. at 22-24. Although BPA set the SP-87 and successor rates as well as the FPS-96R rates in accordance with the procedures mandated by 16 U.S.C. § 839e(i), incorporation by reference of those rates in a freely negotiated contract provision does not constitute "implementation" of the rates. The Federal Circuit observed in *Burbank* that the Northwest Power Act does not define the term

---

[9]The sentence in which this provision appears states in full:

> Contracts entered into with any utility engaged in the sale of electric energy to the general public shall contain such terms and conditions, including among other things stipulations concerning resale and resale rates by any such utility, as the administrator may deem necessary, desirable or appropriate to effectuate the purposes of this chapter and to insure that resale by such utility to the ultimate consumer shall be at rates which are reasonable and nondiscriminatory.

16 U.S.C. § 832d(a).

"implementation," but the word in context "is limited to applying rates to those who were contemplated as rate-payers in the administrative proceeding that determined the rates." *Burbank*, 273 F.3d at 1381. As noted *supra*, at 5, SCE did not participate in the rate-making proceeding that resulted in the SP-87 rate schedule. Moreover, the SP-87 rate schedule was applied only as a result of the contract, not as a consequence of the rate itself. Thus, in the statutory sense, BPA did not "implement" that rate for purposes of 16 U.S.C. § 839f(e)(5) when it subsequently agreed, in an arms-length negotiation, to include a reference to that rate in entering into the contract with SCE for option capacity.

Finally, the government argues that "the purported contractual issues raised by SCE are inextricably linked to challenging the development and implementation of a rate." Def.'s Mot. at 23; *see also* Hr'g Tr. 89:24 to 90:14. In short, the government makes the overarching argument that if in resolving the dispute the court must in any way "get into the rate" then jurisdiction belongs in the Ninth Circuit. Hr'g Tr. 89:24 to 90:6. This court cannot accept the displacement of its jurisdiction under the Tucker Act based upon a vague penumbra. *See Boston Edison*, 64 Fed. Cl. at 178-79. Jurisdictional statutes "must be construed with strict fidelity to their terms." *Stone v. Immigration and Naturalization Serv.*, 514 U.S. at 405.

Therefore, the court holds that SCE's claim for breach of contract does not challenge a "final action" nor does it contest the "implementation" of a rate within the meaning of 16 U.S.C. § 839f(e)(5). Where, as here, the alleged breaches of contract pertain to terms that were freely negotiated in an arms-length transaction and where the facts pertinent to those negotiations fall outside an administrative record, nothing in the Northwest Power Act grants an exclusive jurisdiction to the Ninth Circuit that displaces this court's jurisdiction under the Tucker Act.

This court's jurisdictional ruling is consistent with precedents in the Ninth Circuit as well as those in the Federal Circuit. As noted previously, the Ninth Circuit transferred to this court the protective petition for review that SCE had brought in the Ninth Circuit as case No. 00-70720. That transfer by the Ninth Circuit to this court occurred pursuant to 28 U.S.C. § 1631. Order of Mar. 18, 2002, *Southern California Edison Co. v. Bonneville Power Administration*, No. 00-70720 (9th Cir. Mar. 18, 2002) (citing *Clark County,* 855 F.2d at 651). To transfer under Section 1631, the Ninth Circuit had to have found that jurisdiction was lacking in that court and that the action could have been brought in this court. *See* 28 U.S.C. § 1631, quoted in full *supra*, at 8 n.6. Moreover, in the portion of *Clark County* cited by the Ninth Circuit in its transfer order for case No. 00-70720, the Ninth Circuit had held that transfer to this court's predecessor was appropriate under 28 U.S.C. § 1631 where a claim against BPA was ostensibly brought as a challenge to an administrative action under the Northwest Power Act but in reality was merely an alleged breach of a contractual commitment. *Clark County*, 855 F.2d at 651. The necessary conclusion to be drawn from the Ninth Circuit's actions in effecting a transfer to this court is that it decided that this court has jurisdiction over SCE's claim. Although the Ninth Circuit's position is not binding on this court, it is nonetheless confirmatory that jurisdiction rests with this court.

*E. The Contract Disputes Act*

When the Contract Disputes Act applies, it requires the exhaustion of administrative remedies before a claim may be filed in this court. *See* 41 U.S.C. § 605(a) ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer.") If the contracting officer denies the claim, the party may file an action in this court. *Id*. § 609(a). As a general rule, "[a] contracting officer's final decision is a jurisdictional pre-requisite to filing suit in this court." *United Partition Sys., Inc. v. United States*, 59 Fed. Cl. 627, 634 (2004) (citing *Buse Timber & Sales, Inc. v. United States*, 45 Fed. Cl. 258, 265 (1999)). However, as specified in 41 U.S.C. § 605(c)(5), "if a contracting officer fails to issue a final decision in a timely manner, the contractor's claim will be 'deemed' denied, and the contractor may seek relief from such deemed denial." *United Partition*, 59 Fed. Cl. at 634 (citing *Case, Inc. v. United States*, 88 F.3d 1004, 1008-09 (Fed. Cir.1996); *Southern Cal. Edison v. United States*, 58 Fed. Cl. 313, 320 (2003); *Claude E. Atkins Enters. v. United States*, 27 Fed. Cl. 142, 143-44 (1992)).

SCE submitted its claim to BPA's contracting officer, *see supra*, at 8-9, and the only response that SCE received was that its claim was not cognizable under the Contracts Disputes Act. SCE therefore has satisfied the Contract Dispute Act's requirements for bringing this claim before this court.

**CONCLUSION**

For the reasons stated, this court has jurisdiction under the Tucker Act and the Contract Disputes Act to consider SCE's claim in this case. Therefore, the government's motion to dismiss SCE's claim for lack of subject matter jurisdiction is DENIED. The defendant shall respond to the complaint within the time specified by RCFC 12(a)(2)(A).

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge