No. 03-2869C
(Judge Lettow)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

SOUTHERN CALIFORNIA EDISON,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE PAROL EVIDENCE

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARTIN F. HOCKEY, JR.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 307-6288

Attorneys for Defendant

OF COUNSEL:

JON D. WRIGHT
RICHARD A. GREENE
Office Of The General Counsel
Bonneville Power Admin.
905 N.E. 11th Avenue
Portland, OR 97208

November 15, 2006

**TABLE OF CONTENTS**


Statement of Facts . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I. Edison's Plain Language Argument Must Fail . . . . . . . . . 8

A. The FPS-96R Rate Schedule Must Be Read In Its Entirety . . . . . . . . . . . . . 8

B. Section 12 Provides Edison With An Option To Purchase Capacity Without Energy . . . . . . . . . 10

II. Edison's Contract Modification Arguments Are Without Merit . . . . . . . . . . . . . . . . . . . . 11

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

Barron Bancshares, Inc. v. United States,
366 F.3d 1360 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . 8

Cities of Burbank, Glendale and Pasadena, California v. United States, 464 F.3d 1280,
1283-85 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . 4

McAbee Constr., Inc. v. United States,
97 F.3d 1431 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . 9

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SOUTHERN CALIFORNIA EDISON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 03-2869C** |
| | ) | **(Judge Lettow)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**Defendant's Opposition**
**To Plaintiff's Motion In Limine To Exclude Parol Evidence**

Pursuant to Rule 7(b)(1) of the Rules of the Court, defendant responds to plaintiff Southern California Edison's ("Edison") motion in limine to exclude parol evidence at the trial of this matter, scheduled for December 4-7, 2006. As we establish below, Edison's motion should be denied.

Statement Of Facts

In 1988, Southern California Edison ("Edison") and the Bonneville Power Administration ("Bonneville") entered into a contract (the "Contact") primarily for the sale and/or exchange of energy. An additional feature of the Contract provided an option to Edison to purchase "capacity" from Bonneville during the five peak months of Edison's load year, corresponding with the summer months of June through October. Contract § 12, App. 7-8.[1] Specifically, Contract section 12(a) provides "Upon Edison's request, and in addition to other obligations under this Agreement, Bonneville shall provide 250 MW of capacity to Edison

---

[1] "App. __" refers to the appendix to this opposition.

on the same delivery terms as Peaking Energy specified in section 7(a). App. 7. For any year in which such capacity is requested, Bonneville shall make Option Capacity available for the 5-month delivery period of June through October and Edison shall pay for such capacity." Id. Section 12(a) further provides the following relevant guidance concerning the provision and return of the energy associated with the capacity product:

> (1) Edison shall schedule the energy associated with this Option Capacity and the return of such energy in accordance with the scheduling provisions for Peaking Energy and Peaking Replacement Energy, respectively, pursuant to section 8(a).
>
> * * *
>
> (3) Edison shall return to Bonneville the energy provided with the Option Capacity unless Bonneville elects to have Edison pay for the energy at the rate specified in section 9(c)(1). If Edison returns the energy, Edison shall make deliveries as specified in section 7(b).
>
> (4) Edison shall pay for the Option Capacity at the demand charge associated with the contract rate of Bonneville's SP-87 rate schedule or if the SP-87 rate schedule is no longer in effect, a successor rate schedule. The Parties' Authorized Representatives may agree upon another applicable rate schedule.

App. 7-8. The Contract's general provisions, App. 10, further provide at section 3:

> (a) The Contractor shall pay Bonneville for the electric power, capacity or energy made available under this contract at the rates specified in the contract.
> (b) To the extent the contract references Bonneville rates or rate schedules of general applicability for purposes of payment for electric power, capacity or energy made available, the following provisions apply:

> (1) Bonneville shall establish and periodically review and revise rates for the sale and disposition of electric power, capacity or energy sold pursuant to the terms of this contract. Such rates shall be established in accordance with applicable law.
>
> * * *
>
> (3) The purchaser shall pay Bonneville for the electric power, capacity or energy made available under this contract during the period commencing on each Rate Adjustment Date and ending at the beginning of the next Rate Adjustment Date at the rate specified in any rate schedule available at the beginning of such period for service of the class, quality, and type provided for in this contract, and in accordance with the terms thereof, and of the General Rate Schedule Provisions as changed with, incorporated in or referred to in such rate schedule. New rates shall not be effective on any Rate Adjustment Date unless they have been approved on a final or interim basis by a governmental agency designated by law to approve Bonneville rates. Rates shall be applied in accordance with the terms thereof, the General Rate Schedule Provisions as changed with, incorporated in or referred to in such rate schedule and the terms of this contract.

App. 10.

Beginning with SP-87 and continuing through its successor rate schedule, SP-93, Bonneville had employed a single demand charge in describing the pricing of the various products available pursuant to the SP rate schedule. E.g., SP-87, App. 11-12. In 1996, Bonneville reacted to the deregulation of the power industry by revising its approach to pricing its rates by

unbundling the costs of certain products to present more competitive options to would be purchasers. See FPS-96 Rate Schedule, App. 13-18. As a result of Bonneville's redesigned rate schedule, certain costs associated with the "demand charge" were unbundled and moved to other sections of the rate schedule, e.g., energy charge, transmission charge, load shaping charge, resulting in a significant decrease in the price associated with the "demand charge." Compare SP-87 (App. 12), with FPS-96 (App. 14-17). See generally, Cities of Burbank, Glendale and Pasadena, California v. United States, 464 F.3d 1280, 1283-85 (Fed. Cir. 2006) (examining the identical unbundling to the demand charge of the PF rate schedule).

In 1999, three years after the issuance of FPS-96, Edison, for the first time, requested capacity pursuant to section 12 of the Agreement. Although Bonneville ultimately sold Edison capacity pursuant to the demand charge contained in FPS-96 for the operating year 1999, Bonneville concluded that the price associated with the demand charge contained in FPS-96 failed to adequately reflect the costs of providing capacity only, in contrast to a sale of capacity with associated energy.[2]

---

[2] To be fair to the drafters of FPS-96, Bonneville anticipated making capacity without energy sales pursuant to the FPS rate schedule at negotiated prices. Unfortunately, the drafters neglected to consider that Edison's existing contract entitled Edison to demand capacity without energy at the posted price associated with the contract demand charge.

Accordingly, in 1999-2000, Bonneville engaged in a rate making proceeding to revise FPS-96 to account for the difference in costs of providing (1) capacity without associated energy and (2) capacity with associated energy. Because the pricing of the demand charge properly reflected the costs of providing capacity with associated energy, Bonneville simply added a second demand charge to reflect the appropriate costs of providing capacity without associated energy. This revised rate schedule was entitled FPS-96R. See FPS-96R, App. 19-25.

FPS-96R had a Rate Adjustment date of May 1, 2000, but did not receive interim approval from the Federal Energy Regulatory Commission until May, 19, 2000. Thus, by June 1, 2000, the date Edison would have first received capacity pursuant to the Contract, the applicable rate schedule for the Contract was FPS-96R.

The FPS-96R rate schedule contains two demand charges. The FPS-96R rate schedule's "Contract Rate" paragraph defines one demand charge to be for "capacity with no energy return product exclusively, that is a firm power sale product," and the other demand charge to be for "capacity with energy return (Capacity without energy)." See App. 20. The demand charges are further distinguished in their respective paragraph titles, with one demand charge title block containing the language "capacity without energy sales," while the other contains no further

description. Compare App. 20, § 2A 1.1.1, with § 2A 1.1.2.

Edison, which participated in the rate making proceeding, subsequently refused to purchase capacity at the demand charge for capacity without associated energy contained in the revised rate schedule, FPS-96R, resulting in the present dispute.

## Argument

Edison seeks to exclude the presentation of evidence at trial establishing the most central issue in this dispute: what was the product Edison was purchasing under the "Option Capacity" provision.[3] Once the Court resolves this issue, the application of the FPS-96R rate schedule to the Contract is self-evident. The FPS-96R rate schedule, which is the undisputed successor rate schedule to the SP-87 rate schedule referenced in the Contract, contains two demand charges - one for capacity with energy (section 1.1.1) and one for capacity without energy (section 1.1.2). App. 20. While we maintain that Edison is purchasing capacity without energy pursuant to section 12 of the Contract, Edison argues that is it purchasing capacity with energy. Thus, the Court must consider the meaning of the term "capacity" as contained in the Contract. Yet, in its motion in limine, Edison seeks to exclude the evidence that will enable the Court to

[3] Edison's motion to exclude parol evidence appears to be a veiled attempt to submit the issue of entitlement to the Court for a summary disposition, without directly violating the earlier understanding between the Court and the parties that the issue would be examined at trial.

determine this very issue. Indeed, in seeking to exclude the evidence related to the meaning of "capacity," Edison studiously avoids even mentioning this central issue. Rather, in its motion to exclude, Edison focuses upon the phrase "demand charge" in the FPS-96R rate schedule in an attempt to avoid addressing the more fundamental question of what type of capacity service was being purchased.[4]

As we establish below, the two questions presented in this case are: (1) what was the product being purchased pursuant to section 12 of the Contract; and (2) which of two demand charges contained in FPS-96R, the applicable rate schedule, should be applied to the product being purchased pursuant to section 12 of the Contract. It is apparent that the parties disagree as to the nature of the product being purchased, "capacity with energy" or "capacity without energy." Further, the parties disagree as to which of the two demand charges contained in the rate schedule apply to the product at issue in this case. Accordingly, to the extent the Court concludes that the positions of both parties on these issues are reasonable, and therefore that the provisions at issue are ambiguous, the Court is free, as the citations

[4] Edison may have avoided any attempt to address the definition of "capacity" because its attempt to define "capacity" in its Memorandum of Contentions of Fact and Law is supported, ironically, by extrinsic evidence. See Memorandum of Contentions of Fact and Law ("Memorandum") at 6 (relying upon alleged contract negotiations).

contained in Edison's motion at page 9 establish, to consider evidence outside the four corners of the Contract. As we establish below, the Government's interpretations of the disputed Contract provisions are reasonable, thus at a minimum providing the Court with a basis to consider extrinsic evidence should the Court determine that Edison's interpretations are also reasonable. Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375-76 (Fed. Cir. 2004).

## I. Edison's Plain Language Argument Must Fail

As noted above, the central issue in this case is understanding what Edison was purchasing pursuant to section 12 of the Contract, the Option Capacity section. Once the Court determines what Edison was purchasing pursuant to section 12, the determination of which of the two rates contained in FPS-96R applies will be straight forward, as the rate schedule specifically defines the rates by virtue of the product being purchased. Edison's assertions in its motion to the contrary should be rejected.

### A. The FPS-96R Rate Schedule Must Be Read In Its Entirety

Edison contends that the plain language of the Contract leads the Court to only one of the two rates in the FPS-96R rate schedule. Motion at 5-6. That is, the demand charge contained in section 1.1.1. See App. 20 at § 2A 1.1.1. To establish its point, Edison requests that the Court focus myopically on the

phrase "demand charge" in the Contract, and find the similar phrase "demand charge" in the rate schedule to identify the applicable rate. This may be the analysis if the FPS-96R contained no other language on the applicability of the various demand charges. A closer look at the rate schedule, however, reveals that this selective reading of the FPS-96R rate schedule is incorrect.

In the paragraph preceding the Contract Rate section, the FPS-96R rate schedule *defines* when the section 1.1.1 demand charge applies. Here, it is clearly stated that the section 1.1.1 demand charge (i.e., the one Edison favors) is for services of "capacity with no energy return product exclusively, that is, a firm power sale product." App. 20 at § 2A 1.1. In contrast, the rate schedule defines "capacity without energy" to be "firm capacity with energy return." Id. Since these rate and rate schedule provisions are incorporated as part of the Contract, App. 10 at ¶ 3(b)(3) ("rates shall be applied in accordance with the terms thereof"), the Court must consider this explanatory language when determining which rate in the FPS-96R rate schedule is the applicable rate. McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996).

Edison's plain language argument must fail, then, unless Edison is able to point to some contractual language which defines the product Edison is purchasing as "capacity with no

energy return" (i.e., capacity with energy, or a "firm power sale"). That, Edison cannot do. No where in the Contract is Option Capacity referred to as "capacity with energy" or a "firm power sale." To the contrary, as established below, the Contract describes the capacity product being sold pursuant to section 12 as one involving the return of energy, which is defined in the FPS-96R rate schedule as capacity without energy.[5]

B. Section 12 Provides Edison With An Option To Purchase Capacity Without Energy

Under the terms of section 12 of the Contract, Edison was provided with an option to purchase capacity; hence, the title of the contract section, "Option Capacity." The Contract defines "Option Capacity" as "the capacity made available by Bonneville to Edison pursuant to section 12." Contract § 3(l) (emphasis added), App. 2. Section 12 describes capacity as Bonneville's delivery of energy to Edison during peak use hours and Edison's return of that energy to Bonneville within 24 hours, during off-

[5] Although Edison's motion in limine is silent regarding the contractual definition of capacity, Edison attempts to define "capacity" in its memorandum of contentions of fact and law as "capacity with energy." Memorandum at 3, 6. To support this conclusion, Edison cites no provision of the Contract, but makes general statements of fact that will have to be supported with extrinsic evidence. Accordingly, Edison's own pre-trial documents anticipate the use of extrinsic evidence to establish the central issue of the case and Edison's clever attempt to preclude the Government from introducing its own evidence on the same issue by restating the central issue in this case from one involving "capacity" to one regarding "terms in the rate schedule" should be denied.

peak hours. Contract §§ 7(b), 12(a)(1), (3), App. 3-8. Thus, the transaction leaves Bonneville in an "energy-neutral" position, as any energy delivered to Edison associated with the provision of capacity is returned to Bonneville within 24 hours.

The Government's witnesses will testify that the above provisions describe a "capacity-only" or "capacity without energy" product, which was the parties' understanding at the time of contract award. Indeed, Government witnesses will establish that Edison's proffered interpretation of the term "capacity" to mean "capacity with energy" could never have been what was intended pursuant to Contract as it would have violated statutory limitations placed upon Bonneville regarding the long-term sale of power that were specifically incorporated into the Contract. See Contract § 13, App. 9. Further, the Government witnesses will describe the nature of the dispute between the parties in 1999 that directly led to the revised rate schedule at issue in this case, which dispute further supports the conclusion that, pursuant to section 12 of the Contract, Edison was purchasing capacity without energy.

II. Edison's Contract Modification Arguments Are Without Merit

As established above, Edison's motion reflects its case strategy to focus the Court's attention upon *portions* of the rate schedule, instead of addressing the larger inquiry as to what

Edison was purchasing under the Contract.[6] Edison implements its strategy by first suggesting that the Government's interpretation of the Contract and rate schedule would require the Court to add the terms "capacity without energy sales" to the language of the Contract that identifies the source of the price for the capacity product at issue to be the "demand charge associated with the contract rate." Motion at 6.[7] Edison's assertion is misleading.

Reading the plain terms of section 12(a)(4) leads to the conclusion that both of the rate schedule provisions in FPS-96R are "demand charges associated with the contract rate." See App. 20. As established above, the rate schedule's "contract rate" paragraph defines two different demand charges, one for purchase of capacity with energy, and one for purchase of capacity without energy. Moreover, the Contract provides that the rate schedules shall be applied in accordance with the terms thereof. General Provision (3)(b)(3), App. 10. So, the question once again is which one applies, i.e., what is Edison buying in section 12 of

---

[6] Ironically, Edison supports its motion with parol evidence of what it considered to be the basis for including a demand charge in the Contract. See Motion at 4 (containing extrinsic evidence concerning Edison's perceived relationship between the prices of its contract with that of prices for Bonneville's Pacific Northwest customers); Exhibit A to Edison's motion (Deposition of Robert Kendall); see also Edison's Memorandum of Contentions of Law and Fact at 4-6.

[7] Of course Edison's interpretation would require the Court to delete language from the rate schedule, i.e., the definition of section 2A 1.1.1.

the Contract, capacity with energy, or capacity without energy. That is the only contractual interpretation that needs to be made in this case, but Edison's motion ignores this question.

Edison's second "modification" argument is nothing more than the inverse of its first argument. Edison asserts that the Government's interpretation would require the Court to disregard the Contract's language "at the demand charge associated with the contract rate." Motion at 7. However, Edison fails to explain the basis for this assertion. Presumably, Edison would like the Court to conclude that since FPS-96, the rate schedule that immediately preceded the one at issue in this case, FPS-96R, contained a single "demand charge," while FPS-96R contains more than one "demand charge," a conclusion that one of the rates in FPS-96R is more reasonably applied to the Contract than the other requires the Court to read the term "demand charge" out of the Contract. This makes no sense, especially considering SP-87, the rate schedule specifically identified in the Contract, also contained more than one demand charge. See App. 12 (different demand charges depending upon contract length and time of delivery). Clearly one demand charge or the other contained in FPS-96R applies to Edison's contract. The Court's determination that one or the other applies will not result in the "exclusion" of the terms "demand charge associated with the contract rate" from the Contract.

Ultimately, the question of whether the term "capacity" is ambiguous or not is for the Court to determine. In this case, the Court is better served by considering all of the evidence related to the issue of contract interpretation and reaching its own conclusion concerning ambiguity. Moreover, none of the concerns associated with the trier of fact's exposure to potentially inadmissible pre-contract deliberations are present in this non-jury trial, in which the Court sits in judgment of both admissibility and the ultimate factual and legal decisions of the case.

## Conclusion

For the foregoing reasons, we respectfully request that the Court deny Edison's motion in limine to exclude parol evidence.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

S/David M. Cohen
DAVID M. COHEN
Director

S/Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 307-6288

Attorneys for Defendant

OF COUNSEL:

JON D. WRIGHT
RICHARD A. GREENE
Office Of The General Counsel
Bonneville Power Admin.
905 N.E. 11th Avenue
Portland, OR 97208

November 15, 2006

Notice of Filing

I hereby certify that on November 15, 2006, a copy of the foregoing Defendant’s Opposition To Plaintiff’s Motion In Limine To Exclude Parol Evidence was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Martin F. Hockey, Jr.