**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **SOUTHERN CALIFORNIA EDISON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 03-2869C** |
| | ) | **(Judge Lettow)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**Defendant's Opposition To Plaintiff's Motion In Limine To Exclude The Testimony Of Dr. Samuel Van Vactor**

Plaintiff Southern California Edison ("Edison") requests the Court to exclude the testimony and report of the Government's expert witness, Dr. Samuel A. Van Vactor, purportedly because his testimony will not aid the Court is this case. Edison contends that Dr. Van Vactor's testimony should be excluded because he does not present a specific figure representing Edison's damages and those estimates that are presented are unreliable. Edison is not only mistaken, but its reliance upon Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591, 113 S.Ct. 2786, 2795 (1993), is misplaced.

In attempting to exclude Dr. Van Vactor's testimony, Edison confuses the respective roles of the parties, imposing a duty upon the defendant to establish damages, rather than question plaintiff's damage approach. Thus, Edison's entire argument that Dr. Van Vactor's testimony is not relevant because he has not performed the calculation required of a plaintiff seeking damages is misplaced. Dr. Van Vactor's testimony provides valuable

insight to the Court as to what avenues were available to Edison in 2000 to compensate it for not purchasing capacity from the Government and that Edison's actions were inconsistent with its duty to mitigate damages.

Edison, relying upon Daubert, also mistakenly suggests that Dr. Van Vactor's specific calculations should not be admitted because the calculations reflect a mixture of forward pricing and post-breach pricing. However, Dr. Van Vactor's damage approach reflects a valid avenue of potential mitigation available to Edison in 2000 irrespective of questions concerning the sources for the prices used in his methodology. Indeed, the calculations contained in Dr. Van Vactor's August 11, 2006 report rely in many respects upon the same pricing data used by Edison to support its damages claim.

Further, Edison's suggestion that Dr. Van Vactor's calculations should be excluded is bold considering the data required to make the forward calculation was not provided to the Government until September 18, 2006, a week prior to Dr. Van Vactor's deposition. Dr. Van Vactor's supplemental report, prepared with the benefit of the data recently provided by Edison, contains the very calculations suggested by Edison during Dr. Van Vactor's deposition.

I. Dr. Van Vactor Will Provide The Court With Valuable Insight Into The California Power Market Of 2000, Assisting The Court When Examining Edison's Damage Claim

Dr. Van Vactor is a well qualified economist who has provided expert testimony in several cases involving commodity contracts. As such, Dr. Van Vactor is uniquely qualified to provide assistance to the Court regarding the appropriate steps a party faced with an alleged breach in the provision of capacity should take to mitigate its damages. In contrast to Edison's suggestion, Dr. Van Vactor's expertise is squarely founded in economics. See Exhibit A to Edison's motion at 3-5.

Dr. Van Vactor's expertise in advising parties concerning commodity contract breaches is particularly relevant in this case as Dr. Van Vactor possesses extensive experience in the California power market (the "PX") that arose in 1998 and in which Edison operated in 2000, the year of the alleged breach. Accordingly, Dr. Van Vactor can assist the Court in understanding the various opportunities available to Edison in that power market when faced with the Government's alleged breach. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150, 119 S.Ct 1176 (1999)("the relevant reliability concerns may focus upon personal knowledge or experience").

Consequently, in contrast to Edison's suggestion, Dr. Van Vactor can provide this Court with expertise essential to the resolution of key damage questions raised by Edison's selected

damage approach. What is the proper economic analysis a commodity purchaser should consider when faced with an alleged breach? In this case, what options were available to Edison within the confines of the California market within which it operated? There can be no question that Dr. Van Vactor's expertise in these areas will assist the Court in understanding Edison's damage theory, alternative damage theories, and what is the proper measure of damages in this case. See Federal Rule of Evidence 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591, 113 S.Ct. 2786, 2795 (1993).

Edison suggests that Dr. Van Vactor's testimony and report will not be of assistance to the Court as Dr. Van Vactor does not precisely identify a single damage amount. Motion at 8. As an initial matter, Edison's characterization of Dr. Van Vactor's testimony is not correct. Dr. Van Vactor presents several potential damage estimates based upon various alternative courses available to Edison in the spring of 2000. The unifying theme of Dr. Van Vactor's report is that Edison's actions when faced with the alleged breach by the Government were unreasonable. See Robinson v. United States, 305 F.3d 1330, 1333 (Fed. Cir. 2002) (requirement for non-breaching party to take reasonable steps to avoid damage).

In any event, as Dr. Van Vactor observed in his deposition, which Edison quotes in its motion, the burden is upon Edison to

establish damages. Glendale Fed. Bank v. United States, 239 F.3d 1374, 1380 (Fed. Cir. 2001); Lisbon Contractors, Inc. v. United States, 828 F.2d 759, 776 (Fed. Cir. 1987). The Government need only demonstrate that plaintiff has not satisfied its burden. See generally California Fed. Bank v. United States, 54 Fed. Cl. 704 (2002) (accepting defendant's expert's critique of plaintiff's damages model without requiring defendant's expert to offer alternative model), aff'd, 395 F.3d 1263 (Fed. Cir. 2005); Seaboard Lumber Co. v. United States, 48 Fed. Cl. 814 (2001) (accepting experts' critiques of Government's expert's damages model in counterclaim without requiring experts to offer alternative model), aff'd, 308 F.3d 1283 (Fed. Cir. 2002). Thus, Dr. Van Vactor's expert testimony, calling into question the legitimacy of Edison's damage theory, and certainly the reasonableness of its actions in 2000, is not only consistent with applicable case law, but helpful to the Court charged with the decision to determine whether plaintiff has successfully met its burden to establish damages and the related requirement to act reasonably in mitigating its potential loss.

## II. Dr. Van Vactor Presents Valid Calculations Of Potential Avenues Of Mitigation Ignored By Edison

Edison also challenges various calculations performed by Dr. Van Vactor in his August 11, 2006 expert report. Essentially, Edison suggests that because Dr. Van Vactor's damage calculations rely upon both a forward view and a past view, the calculations

should be ignored. As an initial matter, and similar to its contentions concerning the "block forward" market,[1] Edison's argument in this regard appears to address the weight that the Court should give the calculations rather than a basis to exclude the testimony of Dr. Van Vactor in its entirety. In any event, Dr. Van Vactor's calculations, to include the revised calculations responding to Edison's criticism, provide the Court with valuable insight into the unreasonableness of Edison's decision in 2000 to ignore various courses that would have dramatically limited any damages resulting from a finding of breach by the Government.

Edison's damage theory consists of a collection of paper numbers reflecting what it might have made in profits had it purchased the capacity from the Government and invested that capacity in the California power market, i.e., the PX. Rather than actually purchase an alternative product in the market place

---

[1] Edison initially questions Dr. Van Vactor's reliance upon the "block forward" market in discussing alternatives available to Edison because the block forward contracts provided 512MW of energy as compared to the 250MW of energy contained in Bonneville's capacity option, but then notes that those questions relate to the weight of the testimony. Although Edison does not rely upon this observation in moving to exclude Dr. Van Vactor's testimony, we would be remiss to not observe ourselves that Edison appears to suggest that it is a small-time power consumer unable to utilize the additional energy associated with a block forward contract, rather than one of the largest utilities in Southern California and indeed the United States. In any event, Dr. Van Vactor's approach accounted for the quantity differential by noting that Edison could have sold any excess energy into the PX day-ahead market.

to replace the 250MW of capacity it elected not to purchase from Bonneville, Edison simply followed the formula it created in 1999, when it did purchase capacity from Bonneville, to develop a summary of what it could have made in profit in the PX day-ahead market from investing the 250MW of Bonneville's supplied capacity. Thus, Edison did not actually purchase "cover" for the 250MW of capacity provided by Bonneville. Indeed, Edison did not do anything at all when faced with Bonneville's alleged breach in 2000. It simply treated the 250MW of capacity as a lost profit and calculated what it could have made in the PX day-ahead market from speculating with Bonneville's capacity.

In contrast to Edison's approach to damages, Dr. Van Vactor relies upon his expertise of the California power market to identify contract opportunities that were available to Edison that would have better served a contractor interested in obtaining cover. Kumho Tire, 526 U.S. at 150. Dr. Van Vactor also provides potential damage estimates associated with the use of these alternatives. Edison does not really challenge the first part of Dr. Van Vactor's analysis, that there were alternatives to the PX day-ahead, or spot market available to it in 2000, other than to suggest that there may be issues of weight related to this testimony. Instead, Edison suggests that the damage calculations contained in Dr. Van Vactor's August 11, 2006 report are partly based upon forward prices from the alternative

"block forward" market and partly based upon *ex post facto* prices from the PX day-ahead (or spot) market.

Specifically, Dr. Van Vactor relied upon forward prices to determine the cost of obtaining replacement capacity; however, the available replacement products provided more energy than that contained in the Bonneville product. Thus, Dr. Van Vactor calculated that Edison could have sold this excess capacity back into the PX day-ahead market to further mitigate its losses. In demonstrating this latter action, Dr. Van Vactor relied upon PX day-ahead pricing.

Edison fails to point out that in relying upon the PX day-ahead market for part of his analysis, Dr. Van Vactor was merely accepting a portion of Edison's own damage estimate related to its alleged purchases and sales into the PX day-ahead market. Attempting to use the block forward market to establish the value of the excess energy associated with the larger block forward contracts was extremely difficult for Dr. Van Vactor at the time, as he was not provided with certain data related to when, i.e., hours of purchase, Edison would have purchased replacement power. As noted above, the Government received the spreadsheets upon which plaintiff's expert, Dr. Edward Kahn, relied on September 18, 2006, the week before Dr. Kahn's deposition, which, incidentally, was the same day of Dr. Van Vactor's deposition. Further, Edison did not provide an explanation of the papers

until Dr. Kahn provided an explanation during his deposition. See Exhibit A.[2]

Thus, prior to completing his August 11, 2006 report, Dr. Van Vactor did not possess the very data upon which he could have made a forward calculation that Edison maintains should have been conducted as part of his analysis. Nevertheless, the calculations performed by Dr. Van Vactor in his August 2006 report do not suffer from Daubert-type reliability issues.

Simply stated, Edison takes issue with the sources of certain prices contained in Dr. Van Vactor's calculations, not the methodology of using mathematical calculations to identify potential loss or gain. It will be for the Court to determine whether the "block forward" pricing to establish the price of the replacement contract can be further offset with day-ahead pricing to establish additional mitigation through the sale of any excess energy purchased in the "block forward" market. Again, Edison's challenge appears to raise questions of weight, not reliability of methodology.

Moreover, and in response to the criticism raised by Edison during his deposition, Dr. Van Vactor has now conducted the calculations Edison suggests should have been conducted, which

[2] Edison has not provided the Government with the hours it purchased power in 1999, but, as noted, recently provided the Government with the hours it would have purchased power in 2000, which has enabled Dr. Van Vactor to calculate costs for 2000.

are attached to this response at Exhibit B. In those calculations, Dr. Van Vactor presents potential damage scenarios that would have enabled Edison to identify in May 2000 a reasonable mitigation alternative to the obvious alternative of simply purchasing the capacity from Bonneville and seeking the difference in price from the Government. Specifically, Dr. Van Vactor estimates not only the value of the "block forward" replacement contracts, as he did in August 2006, but also the value of the potential off-set based upon a forward valuation, as opposed to the "day-ahead market" approach of August 2006. Thus, even assuming Edison's challenge to the August 2006 calculations raises a Daubert reliability concern, Dr. Van Vactor's additional calculations eliminate any suggestion of inconsistency in pricing approach as they directly respond to the criticism raised by Edison during the deposition.

## Conclusion

For the foregoing reasons, we respectfully request that the Court deny Edison's motion in limine to exclude the report and testimony of Dr. Samuel Van Vactor from being admitted as evidence at the trial of this matter.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

S/David M. Cohen
DAVID M. COHEN
Director

OF COUNSEL:

JON D. WRIGHT
RICHARD A. GREENE
Office Of The General Counsel
Bonneville Power Admin.
905 N.E. 11th Avenue
Portland, OR 97208

S/Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 307-6288

November 15, 2006

Attorneys for Defendant

Notice of Filing

I hereby certify that on November 15, 2006, a copy of the foregoing Defendant's Opposition To Plaintiff's Motion In Limine To Exclude The Testimony Of Dr. Samuel Van Vactor was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Martin F. Hockey, Jr.