IN THE

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SOUTHERN CALIFORNIA EDISON,<br>Plaintiff,<br>vs.<br>UNITED STATES OF AMERICA,<br>Defendant. | CASE NO. 03-2869C<br>(Judge Lettow)<br><br>Hearing Date: November 27, 2006<br>Time: 10:00 a.m.<br><br>Trial Date: December 4, 2006 |

**REPLY IN SUPPORT OF PLAINTIFF'S**

**MOTION *IN LIMINE* TO EXCLUDE PAROL EVIDENCE**

# I.
# INTRODUCTION

Plaintiff Southern California Edison Company's (alternatively, "Plaintiff" or "SCE") contract with Defendant Bonneville Power Administration ("BPA") (hereinafter, the "Agreement") *expressly* required BPA to provide SCE with Option Capacity "at the demand charge associated with the contract rate of Bonneville's SP-87 rate schedule or if the SP-87 rate schedule is no longer in effect, a successor rate schedule." Agreement, Sect. 12(a)(4). In its Opening Brief, SCE demonstrated that, under clear Federal Circuit case law, Section 12(a)(4) – and the rest of the Agreement – must be interpreted according to its plain language, and parol evidence is inadmissible to supplement, modify or interpret its terms.

Recognizing that it cannot win under the express terms of the Agreement, BPA opposes SCE's Motion. However, in its Opposition ("Opp'n"), BPA fails to articulate any legal basis for the admission of parol evidence. Indeed, for the reasons set forth below, BPA's brief actually clarifies that parol evidence is not admissible in this case.

*First*, BPA does not dispute, nor could it, that parol evidence is inadmissible where the contract at issue is a full and complete expression of the parties' agreement and the terms of the contract are unambiguous.

*Second*, BPA does not dispute that the Agreement is full and complete, and that there are no oral agreements that modify the written terms of the Agreement.

*Third*, although BPA purports to argue that the Agreement is ambiguous in some way, BPA does not point to even a *single* contractual provision that is allegedly ambiguous.

Instead, BPA attempts to misdirect the Court into focusing on two issues that have nothing to do with the relevant written terms of the Agreement at all: (1) whether Option Capacity was "capacity with energy" or "capacity without energy"; and (2) the impact of rate schedule FPS-96R.

Whether Option Capacity was "capacity with energy" or "capacity without energy" is irrelevant to whether parol evidence is admissible to interpret Section 12(a)(4). The

issue is what *price* SCE was to be charged for Option Capacity under the terms of the Agreement, not what type of product Option Capacity was or was not. The price for Option Capacity is set forth *expressly* in Section 12(a)(4) of the Agreement – a provision that BPA does not even contend is ambiguous.

Similarly irrelevant to the resolution of this Motion is the parties' disagreement as to the proper charge for Option Capacity under rate schedule FPS-96R. FPS-96R is not parol evidence at all. FPS-96R was developed in the year 2000, *12 years after* the Agreement was executed. Certainly, the parties' dispute as to what charge in rate schedule FPS-96R was applicable to Option Capacity does not make the Agreement ambiguous in any way. As such, it provides no basis for the admission of parol evidence.

## II.
## ARGUMENT

### A. **The Parties Agree That Parol Evidence Is Inadmissible Unless The Contract Is Incomplete Or Ambiguous.**

The parties agree on the legal standard applicable to this Motion.

Where a written agreement is an expression of the parties' final understanding, external evidence is inadmissible to *supplement* or *modify* the terms of the contract. *Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1375 (Fed.Cir. 2004) (finding error where the trial court considered extrinsic evidence to supplement the terms of a fully integrated contract); *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434 (Fed.Cir. 1996) (holding that the parol evidence rule prohibits the use of extrinsic evidence to add or modify the terms of a fully integrated agreement).[1]

Similarly, parol evidence is not admissible to *interpret* the terms of a written contract *unless* those terms are ambiguous. *Barron Bancshares*, 366 F.3d at 1375-75 ("If the

[1] The parol evidence rule applies to both statements and course of dealing evidence. *Alves v. United States*, 133 F.3d 1454, 1459 (Fed. Cir. 1998).

terms of a contract are clear and unambiguous, they must be given their plain meaning—extrinsic evidence is inadmissible to interpret them."); *McAbee Constr.*, 97 F.3d at 1434-35 (same).

A contract term is ambiguous *only* if it is susceptible to more than one *reasonable* meaning. *Barron Bancshares*, 366 F.3d at 1375-75; *McAbee Constr.*, 97 F.3d at 1434-35 (same). The Court's duty is to "'ascertain analytically whether *vel non* an ambiguity existed' in the meaning of the contract." *Int'l Transducer Corp. v. United States*, 30 Fed. Cl. 522, 526 (1994). A party's subjective, unexpressed intent is accorded no role in this exercise. *Id.*

## B. BPA Fails To Articulate Any Basis For The Admission Of Parol Evidence.

In its Opposition, BPA fails to articulate any legal basis for the admission of parol evidence in this case. BPA does not contend that the Agreement is incomplete in any way.[2] Nor does BPA contend that there were any oral agreements between the parties that modified the terms of the Agreement.[3]

Instead, BPA appears to contend that the Agreement is ambiguous in some way. (Opp'n at 7.) However, nowhere in its Opposition does BPA set forth the specific provisions of the Agreement, if any, that it contends are ambiguous, or how those provisions are ambiguous. Indeed, as to this issue – the fundamental issue on this Motion – BPA is utterly silent.

---

[2] Even absent the implicit admission, the Agreement is integrated as a matter of law. '"[T]he written contract merged all previous negotiations, and is presumed, in law, to express the final understanding of the parties. If the contract did not express the true agreement, it was the claimant's folly to have signed it."' *California Sand and Gravel, Inc. v. United States*, 22 Cl.Ct. 19, 26 (1990), *aff'd*, 937 F.2d 624 (Fed.Cir.1991) (Table), *cert. denied*, 502 U.S. 1057 (1992) (quoting *Brawley v. United States*, 96 U.S. 168, 173, 187)." *Cooper Realty Co. v. United States*, 36 Fed. Cl. 284, 289-90 (1996).

[3] At deposition, BPA acknowledged that there were no oral agreements between the parties that varied these terms. PMK Dep., at 7:24-8:9 (attached as Exh. C to Declaration of Joseph J. Ybarra, filed concurrently with SCE's Opening Brief).

To the extent that BPA references any provisions of the Agreement at all, it cites to the General Provisions, which are set forth in Exhibit B to the Agreement. (Opp'n at 9.) But it is unclear what point BPA is making with respect to those General Provisions. BPA does not contend that the General Provisions are ambiguous, or that the General Provisions render other provisions of the Agreement (notably, Section 12(a)(4)) ambiguous in any way. Nor could BPA make this argument, as the General Provisions begin by stating that they are inapplicable if "*otherwise specifically provided for in the contract…*" (Agreement, Exh. B, ¶ 3.)[4] Curiously, BPA leaves that sentence out of its quotation of the General Provisions. (Opp'n at 2-3.)

Perhaps because it cannot point to any specific provisions of the Agreement that are ambiguous, BPA instead attempts to create ambiguity where none exists – principally by focusing on two issues that have nothing to do with the relevant terms of the Agreement at all: (1) whether Option Capacity was "capacity with energy" or "capacity without energy"; and (2) what charge in rate schedule FPS-96R was applicable to Option Capacity. As set forth below, neither issue is material to this Motion, and neither provides a basis for the admission of parol evidence.

**1. Whether Option Capacity was "capacity without energy" or "capacity with energy" is irrelevant to the proper interpretation of the Agreement.**

BPA's primary argument – that the Court must determine whether Option Capacity was "capacity without energy" or "capacity with energy" – is just wrong. SCE could have been purchasing eggs or steel: the issue here is what *price* SCE was to pay for those eggs or that steel. As to that issue, Section 12(a)(4) the Agreement pointed to a specific rate in a specific BPA rate schedule:

---

[4] The General Provisions of the Agreement are set forth in the Appendix to the Opp'n, p. 010.

> Edison shall pay for Option Capacity at the *demand charge associated with the contract rate* of Bonneville's SP-87 rate schedule or if the SP-87 rate schedule is no longer in effect, a successor rate schedule.

Agreement, Sect. 12(a)(4).

The issue whether Option Capacity is "capacity with energy" or "capacity without energy" is simply immaterial to the plain language of Section 12(a)(4). Section 12(a)(4) does not tie the price of Option Capacity to any specific product, whether "capacity with energy" or "capacity without energy." Indeed, those terms do not appear in Section 12(a)(4) at all. Certainly, the Agreement *could* have been drafted to say that SCE shall pay for Option Capacity at the rate for "capacity without energy" or "capacity with energy," but it was not. Instead, the parties chose to draft Section 12(a)(4) in a manner that tied the price of Option Capacity to a specific charge in a specific BPA rate schedule – one that was not expressly linked to the type of product being purchased by SCE. As such, whether Option Capacity is "capacity with energy" or "capacity without energy" is a red herring – an issue that is not material to the proper interpretation of Section 12(a)(4) and is injected to mislead and confuse the Court into admitting evidence aimed at changing the plain meaning of that Section.

In short, BPA does not even try to show that Section 12(a)(4) is ambiguous in any way, and thus it must be interpreted according to its plain language. According to the plain language of Section 12(a)(4), the price of Option Capacity is not tied to any standard product – whether "capacity without energy" or "capacity with energy" – and thus the meaning of those terms, whether ambiguous or not, cannot influence the interpretation of the Section.

**2. The parties' disagreement as to the applicable rate in rate schedule FPS-96R does not provide a basis for the admission of parol evidence to interpret the terms of the Agreement, which was executed 12 years earlier.**

BPA's second argument – that parol evidence is admissible because the parties disagree as to the applicable charge for Option Capacity under rate schedule FPS-96R (Opp'n at 7) – is similarly misguided.

As BPA acknowledges, FPS-96R is the successor rate schedule to SP-87. FPS-96R was developed by BPA in 1999-2000 and became effective in May 2000. (Opp'n at 5.) Rate schedule FPS-96R (like FPS-96 and SP-87, its predecessor rate schedules) contained a "demand charge." In addition, and unlike SP-87 and FPS-96, FPS-96R also included a newly-developed rate entitled "Demand Charge-Capacity without energy Sales." BPA's position is that SCE was required to purchase Option Capacity at the "Capacity without energy Sales" rate; SCE's position is that it was entitled to pay the "Demand Charge."[5]

The parties' disagreement as to which rate in FPS-96R was applicable to Option Capacity provides no legal basis for the admission of parol evidence. FPS-96R was developed 12 years after the Agreement was executed. FPS-96R is not a part of the Agreement; indeed, unlike the Agreement, the terms of FPS-96R were not mutually agreed upon by SCE and BPA – they were developed unilaterally by BPA. Surely, BPA cannot create an ambiguity in the Agreement by its unilateral creation of a new rate schedule 12 years *after* the Agreement was

[5] Although not relevant to the question before the Court on this Motion, the plain language of Section 12(a)(4) refutes BPA's position. As discussed *supra*, the Agreement could have tied the price for Option Capacity to the rate for "capacity without energy." It did not. Alternatively, the Agreement could have said that, where more than one demand charge exists (as BPA contends is the case in FPS-96R), SCE shall pay the demand charge associated with "capacity without energy." Again, it did not, despite the fact that other BPA contracts executed around the same time contained exactly this type of a provision. *See, e.g., Cities of Burbank, Glendale and Pasadena, California v. Bodman*, 464 F.3d 1280, 1286 (Fed.Cir. 2006) (describing a BPA contract executed in 1988 as having expressly contemplated "the existence of multiple PF rates and [setting] forth a procedure for their use…").

executed. *See, e.g., Cities of Burbank, Glendale and Pasadena,* 464 F.3d at 1285 ("In the most important sense, the meaning of 'PF rate' in Section 9(a)(3) [of the Agreement] did not change eight years into the Agreements due to BPA's unilateral acts.").

In short, that the parties have different positions on the applicable charge under FPS-96R does not provide a basis for the admission of parol evidence. The price that SCE was to pay for Option Capacity is determined by the express terms of Section 12(a)(4) of the Agreement – a section that was drafted and agreed-upon by the parties in 1988. BPA cannot reasonably contend that Section 12(a)(4) is ambiguous; it certainly cannot contend that Section 12(a)(4) is ambiguous by virtue of BPA's unilateral development of a new rate schedule 12 years *after* the Agreement was executed.

## III.
## CONCLUSION

For the reasons set forth herein and in SCE's Opening Brief, SCE respectfully requests that the Court grant its Motion and exclude any and all parol evidence offered by either party to interpret or supplement the express terms of the parties' Agreement .

Respectfully submitted,

s/Charles D. Siegal

Charles D. Siegal
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9181
Telephone: (213) 683-9194
Facsimile: (213) 687-3702
**COUNSEL OF RECORD FOR PLAINTIFF SOUTHERN**

**CALIFORNIA EDISON**
DATED: November 20, 2006

**OF COUNSEL:**
Leon Bass
SOUTHERN CALIFORNIA EDISON
2244 Walnut Grove Avenue, Room 359
Rosemead, CA 91770
Telephone: (626) 302-6967
Facsimile: (626) 569-4145

Joseph J. Ybarra
MUNGER, TOLLES & OLSON LLP
355 South Grand Ave.
35th Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9502
Facsimile: (213) 687-3702

NOTICE OF FILING

I hereby certify that on November 20, 2006, a copy of the foregoing **REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE PAROL EVIDENCE** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I also certify that, pursuant to General Order 2003-42, Paragraph I(5), I forwarded a courtesy copy of the Motion to the Court.

s/Joseph J. Ybarra