IN THE

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SOUTHERN CALIFORNIA EDISON,<br>Plaintiff,<br>vs.<br>UNITED STATES OF AMERICA,<br>Defendant. | CASE NO. 03-2869C<br>(Judge Lettow)<br><br>Hearing Date: November 27, 2006<br>Time: 10:00 a.m.<br><br>Trial Date: December 4, 2006 |

**PLAINTIFF SOUTHERN CALIFORNIA EDISON COMPANY'S RESPONSE TO DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Pursuant to paragraph 14 (c) of Appendix A of the Rules of the Court of Federal Claims, Plaintiff Southern California Edison ("SCE") respectfully submits its brief Response to Defendant Bonneville Power Administration's ("BPA") Memorandum of Contentions of Law and Fact ("BPA Memo.").

## CONTENTIONS OF LAW

### A. SCE's Properly Exercised Its Contractual Right to Option Capacity In 2000.

Lacking persuasive arguments that it did not breach the terms of the parties' Agreement,[1] the first argument in BPA's Memorandum of Contentions is that SCE failed to properly exercise its contractual right to Option Capacity in the year 2000. (BPA Memo. at 15.) BPA argues that SCE did not properly exercise its right to Option Capacity because SCE never asserted that it wished to receive Option Capacity *at any price offered by BPA* – whether or not that price constituted a breach of the express terms of the Agreement. As set forth below, BPA's argument relies on inaccurate assertions of law and is refuted by BPA's own contentions of fact.

Neither of the two cases relied on by BPA – *DeMarco Durazo Development Co. v. United States*, 69 Fed. Cl. 262 (2005) and *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260 (Fed. Cir. 1999) – stands for the proposition asserted by BPA. Both *DeMarco* and *Alliant* hold that the exercise of a contractual option must be made in accordance with the terms of the contract. *DeMarco*, 69 Fed.Cl. at 274; *Alliant,* 178 Fed.Cl. at 1275. The cases do not hold that, so as to sue for breach of contract with respect to a contractual option, the non-breaching party must have demonstrated its intent to exercise the option at any price demanded by the breaching party – even if that demand breached the agreement. Such a rule would make no sense, as it

[1] Indeed, BPA's arguments that it did not breach the Agreement rely entirely on inadmissible parol evidence. BPA recognizes that it cannot win on the express terms of the Agreement, which was negotiated over the course of 3 years before being executed by the parties.

would require the non-breaching party to accept the breaching party's offer and then sue for the difference, rather than permit the non-breaching party to assess the business options available to it at the time of breach and determine whether it makes sense to accept the breaching party's offer and then sue for the difference, or obtain the goods at issue from a third party and then sue to recover the difference. The law imposes no such requirement on a non-breaching party, and BPA cites no case indicating that it does.

BPA's own contentions of fact make clear that SCE exercised its right to Option Capacity in accord with the terms of the Agreement. The Agreement only required SCE to elect Option Capacity, if it so desired, at least one month before June 1st – the date on which deliveries of the energy associated with Option Capacity were to begin. BPA acknowledges that SCE timely exercised its right to Option Capacity at the only rate schedule then effective, FPS-96. (BPA Memo. ¶ 31.) BPA then attempted to compel SCE to state whether it wished to exercise its right to Option Capacity at any rate offered by BPA – whether or not that rate was a permissible price for Option Capacity under the terms of the Agreement. (BPA Memo. ¶ 32.) When SCE refused, BPA gave SCE until May 24, 2000 to inform BPA whether it wished to exercise its right to Option Capacity under the newly-developed rate for "Capacity without energy Sales" set forth in the still to-be-approved rate schedule FPS-96R. (BPA Memo. ¶ 33.) After weighing its options, on May 24, 2000, SCE informed BPA that it did not wish to receive Option Capacity at that rate, which SCE believed to constitute a breach of contract by BPA. (BPA Memo. ¶ 34.) SCE also reaffirmed its prior exercise of Option Capacity at the price for Option Capacity actually set forth in the parties' Agreement. (*Id.*). BPA was not willing to sell Option Capacity at that price.

B. **SCE Is Entitled To Damages Of $31.5 Million.**

BPA's unwillingness to provide Option Capacity at the rate set forth in the parties' Agreement caused SCE to suffer damages of $31.5 million, which, as set forth in SCE's Memorandum of Contentions at 12-13, constitutes the difference between the value on the California PX day-ahead market of the energy that BPA was to provide SCE, and the price that SCE was to pay to BPA for Option Capacity (the applicable demand charge plus the cost of purchasing an equivalent amount of energy to return to BPA in low-load hours).

In its Memorandum of Contentions, BPA makes a number of incorrect contentions of law with respect to SCE's damages. Each is discussed below.

1. **SCE is entitled to recover its expectation damages – the benefits that SCE would have earned had BPA performed under the terms of the Agreement.**

BPA's principal argument appears to be that SCE is not entitled to recover its full damages of $31.5 million because damages are to be measured at the time of notice of refusal to deliver, which BPA contends was May 22, 2000, and not the time for performance called for in the contract (June 1, 2000 – October 31, 2000).

BPA relies on *Northern Paiute Nation v. United States*, 9 Cl. Ct. 639 (1986) and *Estate of Berg v. United States*, 687 F.2d 377 (Cl. Ct. 1982). (BPA Memo. at 32-33). Neither case supports BPA. In *Northern Paiute Nation*, the United States Claims Court addressed a plaintiff's suit for breach of contract based on the government's refusal to exchange real property *in 1936*. The Court rejected the plaintiff's attempt to recover the difference in value between the properties *in 1957* – the time of judgment. *Northern Paiute Nation*, 9 Cl. Ct. at 643. The Court held that the proper measure of damages was the difference in value in 1936, which was the date when *performance* should have occurred. *Id.* at 643.

The holding of *Estate of Berg* is no different. There, the Court of Claims held that the "general rule" in breach of contract cases is that damages should place the injured party "in as good a position as he or she would have been had the breaching party fully *performed*." *Estate of Berg*, 687 F.2d at 379 (emphasis added). It computed damages as of the date of the government's failure to deliver certain bonds. *See also Bluebonnet Savings Bank, F.S.B. v. United States*, 266 F.3d 1348, 1355 (Fed. Cir. 2001) (citing RESTATEMENT (SECOND) CONTRACTS § 344(a) (1981)); *Wells Fargo Bank, N.A. v. United States*, 88 F.3d 1012, 1021 (Fed.Cir. 1996).[2]

"'One way the law makes the non-breaching party whole is to give him the benefits he expected to receive had the breach not occurred." *Bluebonnet Savings*, 266 F.3d at 1355. That is precisely what SCE seeks. Had SCE received Option Capacity from BPA in 2000, SCE was required by California law to bid the energy associated with Option Capacity into the California PX. Had SCE done so, SCE would have received over $50 million for that energy during Summer 2000, and incurred a cost to BPA of slightly under $19 million. Thus, SCE suffered a loss of over $31 million. SCE is entitled to recover this entire amount.

**2. SCE's damages were caused by BPA's breach.**

BPA also contends that SCE's damages were not caused by BPA's breach because it was SCE's decision not to take Option Capacity at the inappropriate (and much higher) price offered by BPA. . (BA Memo. pp. 25-27).

On examination, this argument does not relate to causation at all. As BPA's cases demonstrate, a defendant may argue lack of causation because the plaintiff undertook "independent and collateral undertakings" that resulted in the harm. *Myerle v. United States*, 33

[2] Both *Bluebonnet Savings* and *Wells Fargo* are relied on by BPA in its Memorandum of Contentions. (BPA Memo. at 25). Both cases support SCE's measure of damages.

Ct.Cl. 1, 26 (1897). Here, BPA focuses on SCE's asserted *failure* to act, which is not a causation argument at all, but rather one of mitigation. BPA merely tries to re-cast the issue as one of causation because BPA, not SCE, has the burden on mitigation, and the case law is clear that SCE was not required to accept BPA's offer, so long as SCE's decision was reasonable. (SCE's Memo. at 22-26).

**3. SCE's damages were foreseeable.**

BPA next argues that SCE's damages were not foreseeable because BPA could not have foreseen that SCE would sell the energy associated with Option Capacity in the California PX day-ahead market or that the PX market would be particularly volatile in the year 2000. (BPA Memo. pp. 27-29).

Neither argument is persuasive as a matter of fact or law. As a matter of fact, BPA certainly knew in 1988 that SCE would SCE would either use BPA's energy to meet its customers' needs or to sell to other entities. That is precisely what SCE did. That, in 1988, BPA did not know that SCE would sell the energy in the California PX – which did not exist at the time – is of no import.

As a matter of law, BPA's cases fail to support its position. *Hughes Communication Galaxy, Inc. v. United States*, 271 F.3d 1060 (Fed. Cir. 2002), holds only that foreseeability requires that the damages sought "'be the natural and proximate result of the breach.'" *Hughes Communications*, 271 F.3d at 1066. There can be no reasonable dispute that SCE's damages were a natural and proximate cause of the breach; indeed, they were directly caused by the breach.

The remaining cases relied on by BPA are wholly inapplicable. *Bohac v. Dep't. of Agriculture*, 239 F.3d 1334 (Fed.Cir. 2001), involved the recovery of damages for emotional distress/pain and suffering. *Bohac*, 239 F.3d at 1336. *Landmark Land Co. v. Federal Deposit*

*Insur. Corp.*, 256 F.3d 1365 (Fed.Cir. 2001), involved an issue of reliance damages – not expectation damages, which are sought here. *Landmark*, 256 F.3d at 1378. Similarly, *Prudential Ins. Co. of America v. United States*, 801 F.2d 1295 (Fed.Cir. 1986), involved a lessor's attempt to seek consequential damages by virtue for the United States's failure to timely vacate the leased property. *Prudential Insur.*, 801 F.2d at 1301. The case does not concern expectation damages or involve facts even remotely similar to those at issue here.

Finally, as to the volatility of the PX market in the year 2000, BPA cites no case holding that SCE – the *non-breaching* party – is to bear the market risk caused by BPA's breach. It is not; that risk is borne by the breaching party. This is particularly true where, as here, the product at issue was, in effect, a call option: the seller of the option – BPA – bore the risk the market would rise; SCE bought protection against just that eventuality.

**4. SCE will prove its damages with more than reasonable certainty.**

BPA's final damages argument purports to be a claim that SCE cannot prove damages with reasonable certainty. (BPA Memo. at 29-30). But BPA doesn't even truly make a certainty argument. Rather, BPA contends, curiously, that SCE cannot prove certainty because it chose not to mitigate its damages by accepting BPA's offer of Option Capacity at a higher price, or by entering into various forward contracts that BPA contends SCE should have entered.

Again, these are mitigation arguments, not ones based on whether SCE's damages will be proven with reasonable certainty. As to the latter question, SCE will more than meet the legal standard established by the Federal Circuit. *See, e.g., Bluebonnet Savings*, 266 F.3d at 1355 ("The ascertainment of damages is not an exact science, and where responsibility for damage is clear, it is not essential that the amount thereof by ascertainable with absolute exactness or mathematical precision. 'It is enough if the evidence adduced is sufficient to enable a court or jury to make a fair and reasonable approximation.'").

Respectfully submitted,

s/Charles D. Siegal

Charles D. Siegal
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
35th Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9181
Telephone: (213) 683-9194
Facsimile: (213) 687-3702
**COUNSEL OF RECORD FOR PLAINTIFF SOUTHERN CALIFORNIA EDISON**
DATED: November 20, 2006

**OF COUNSEL:**
Leon Bass
SOUTHERN CALIFORNIA EDISON
2244 Walnut Grove Avenue, Room 359
Rosemead, CA 91770
Telephone: (626) 302-6967
Facsimile: (626) 569-4145

Joseph J. Ybarra
MUNGER, TOLLES & OLSON LLP
355 South Grand Ave.
35th Floor
Los Angeles, California 90071-1560
Telephone: (213) 683-9502
Facsimile: (213) 687-3702

NOTICE OF FILING

I hereby certify that on November 20, 2006, a copy of the foregoing **PLAINTIFF SOUTHERN CALIFORNIA EDISON COMPANY'S RESPONSE TO DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. I also certify that, pursuant to General Order 2003-42, Paragraph I(5), I forwarded a courtesy copy of the Motion to the Court.

s/Joseph J. Ybarra